Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Tel: (415) 869-2873
Fax: (415) 869-2873
Email: legal@danbalsam.com

Jacob Harker (State Bar No. 261262)
LAW OFFICES OF JACOB HARKER
582 Market Street, Suite 1007
San Francisco, CA 94104
Tel: (415) 624-7602
Fax: (415) 684-7757
Email: jacob@harkercounsel.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

| | |
|---|---|
| MARTA GREENBERG *et al*, | ) Case No.        3:19-cv-00355-VC |
| | ) |
| Plaintiffs, | ) **PLAINTIFFS' NOTICE OF MOTION** |
| | ) **AND MOTION TO REMAND** |
| v. | ) **28 U.S.C. § 1447(c)** |
| | ) |
| DIGITAL MEDIA SOLUTIONS LLC *et al*, | ) Date:          March 28, 2019 |
| | ) Time:          10:00 am |
| Defendants. | ) Courtroom:   4 – 17th Floor |
| | ) Judge:         Hon. Vince Chhabria |

## NOTICE OF MOTION AND MOTION TO REMAND

PLAINTIFFS HEREBY PROVIDE NOTICE that on March 28, 2019, in Courtroom 4 of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102 at 10:00 a.m., or as soon thereafter as the matter may be heard, Plaintiffs Marta Greenberg *et al* will and hereby do move the Court for an Order remanding the Action to California state court pursuant to 28 U.S.C. § 1447(c) based on lack of Article III standing.

1
2
3
4
5
6

        The Motion will be based on this Notice of Motion and Motion; the Memorandum of
Points and Authorities; the Declaration of Daniel Balsam; documents from *Soriano v. Lending Tree LLC et al.*, No. 3:17-cv-07078-MMC (N.D. Cal.); *Blanchard v. Fluent LLC et al.*, No. 3:17-cv-04497-MMC (N.D. Cal.); and *Silverstein v. Keynetics Inc. et al*, No. LA CV18-04100 JAK (AGRx) (C.D. Cal.); and oral argument and any additional material that may be elicited at the hearing on the Motion.

7
8
9
10
11

                                        THE LAW OFFICES OF DANIEL BALSAM

Date:_____Feb. 12, 2019_____     BY:___*/s/ Daniel Balsam*_____
                                        Daniel Balsam
                                        Attorney for Plaintiffs

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

Table of Contents ...................................................................................................... iii

Table of Authorities ................................................................................................ iv

I.      INTRODUCTION AND PROCEDURAL HISTORY ..................................1

II.     STATEMENT OF ISSUE TO BE DECIDED............................................1

III.    STATEMENT OF RELEVANT FACTS.....................................................1
        A. California's Anti-Spam Statute is Punitive in Nature and Does Not
           Require Alleging or Proving Actual Damages ................................1
        B. The Complaint Sufficiently Alleges Violations of Section 17529.5 ...........2
        C. The Allegations in the Instant Action are Virtually Identical to Two Other
           Section 17529.5 Spam Cases That Were Recently Remanded from the
           Northern District ...........................................................................2
        D. DMS's Motion to Dismiss Admits that Plaintiffs Did Not Allege Injury in
           Fact...............................................................................................3

IV.     LEGAL STANDARD ...................................................................................3

V.      DISCUSSION .................................................................................................5
        A. Plaintiffs Do Not Allege Actual Damages, and Only Seek Statutory
           Liquidated Damages ......................................................................5
           1.  Plaintiffs are the Master of the Complaint .............................5
           2.  Plaintiffs Seek Punitive Liquidated Damages that Have Nothing to Do
               With Actual Damages .....................................................6
           3.  Plaintiffs' Complaint Does Not Meet Article III's Two-Prong Test.......6
        B. The Limited Case Law on Point Supports Lack of Article III Standing and
           Remand in the Instant Action ........................................................7
           1.  Soriano v. Lending Tree LLC (N.D. Cal.) – Remanded..................7
           2.  Blanchard v. Fluent LLC (N.D. Cal.) – Remanded .....................8
           3.  Silverstein v. Keynetics Inc. (C.D. Cal.) – Not Remanded..............10
        C. This Court Should Remand Rather than Dismiss Because California has
           Broader Standing Requirements than Federal Courts...................11

VI.     CONCLUSION ...............................................................................................11

1

## <u>TABLE OF AUTHORITIES</u>

2

3

**Page**

4

<u>Federal Cases</u>

5

*Allen v. Wright*,
    468 U.S. 737 (1984)..........................................................................................5

6

*Blanchard v. Fluent LLC et al.*,
    No. 3:17-cv-04497-MMC (N.D. Cal.) ................................................... *passim*

7

*California Consumers v. BMG*,
    No. C-97-2734-VRW, 1997 U.S. Dist. LEXIS 20658 (N.D. Cal. Dec. 22,

8

    1997) ...........................................................................................4, 5, 11

9

*California ex rel. Lockyer v. Dynegy Inc.*,
    375 F.3d 831 (9th Cir. 2004) ...........................................................................4

10

*Campbell-Ewald v. Gomez*,
    136 S. Ct. 663 (2016)......................................................................................8

11

*Caterpillar Inc. v. Williams*,
    482 U.S. 386 (1987)........................................................................................5

12

*Fraser v. Wal-Mart Stores, Inc.*,
    No. 2:13-cv-00520-TLN-DB, 2016 U.S. Dist. LEXIS 144351 (E.D. Cal.

13

    Oct. 18, 2016) ...............................................................................................8

14

*Gaus v. Miles*,
    980 F.2d 564 (9th Cir. 1992) ...........................................................................4

15

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) .........................................................................3

16

*Kantor v. Wellesley Galleries Ltd.*,
    704 F.2d 1088 (9th Cir. 1983) .........................................................................4

17

*Metro One Telecommunications Inc. v. Commissioner of Internal Revenue*,
    704 F.3d 1057 (9th Cir. 2012) ......................................................................6, 7

18

*Phillips Petroleum Co. v. Texaco Inc.*,
    415 U.S. 125 (1974)........................................................................................5

19

*Polo v. Innoventions International LLC*,
    833 F.3d 1193 (9th Cir. 2016) .........................................................................4

20

*Reid v. Johnson & Johnson*,
    780 F.3d 952 (9th Cir. 2015) ......................................................................7, 10

21

*Robins v. Spokeo Inc.*,
    867 F.3d 1108 (9th Cir. 2017) ......................................................................4, 6

22

*Silverstein v. Keynetics Inc*¨
    No. LA CV18-04100 JAK (AGRx), 2018 U.S. Dist. LEXIS 189114 (C.D.

23

    Cal. Nov. 5, 2018).........................................................................................10

24

*Soriano v. Lending Tree LLC et al.*,
    No. 3:17-cv-07078-MMC (N.D. Cal.) ................................................... *passim*

25

*Spokeo Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..................................................................... *passim*

26

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
    653 F.3d 820 (9th Cir. 2011) .........................................................................10

27

28

iv

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF AUTHORITIES (cont.)</u>

**Page**

**<u>Federal Cases (cont.)</u>**
*Van Patten v. Vertical Fitness Group LLC*,
    847 F.3d 1037 (9th Cir. 2017) ...................................................................8, 9, 10
*Wilshire Westwood Associates v. Atlantic Richfield Corp.*,
    881 F.2d 801 (9th Cir. 1989) ............................................................................7

**<u>California Cases</u>**
*Balsam v. Trancos Inc.*,
    203 Cal. App. 4th 1083 (1st Dist. 2012)......................................................2, 11
*Hypertouch v. ValueClick Inc.*,
    192 Cal. App. 4th 805 (2d Dist. 2011)......................................................1, 6, 11

**<u>Federal Statutes and Constitution</u>**
15 U.S.C. § 7701 *et seq.* (CAN-SPAM Act) .............................................................9
28 U.S.C. § 1332.......................................................................................................3
28 U.S.C. § 1447(c) ..................................................................................................3
47 U.S.C. § 227 (Telephone Consumer Protection Act)................................. *passim*
U.S. Constitution, Article III .......................................................................... *passim*

**<u>California Statutes and Constitution</u>**
Cal. Bus. & Prof. Code §§ 17529, 17529.5 (Anti-Spam Law) ............................ *passim*
Cal. Civ. Code § 1747.08 (Song-Beverly Act) ........................................................8
Cal. Constitution, Art. I, Section 1...................................................................7, 9

1

## I.  <u>INTRODUCTION AND PROCEDURAL HISTORY</u>

2

"Spamvertiser" Defendant Digital Media Solutions LLC ("DMS") advertised in nearly

3  300 unlawful unsolicited commercial email advertisements (aka "spams") sent to California

4  residents Plaintiffs Marta Greenberg *et al*.  The spams all contained false and deceptive

5  information in the email headers that violated California's robust anti-spam statute, Cal. Business

6  & Professions Code § 17529.5 ("Section 17529.5").  Plaintiffs filed this Action in the Superior

7  Court of California, County of San Francisco, and DMS timely removed it to the Northern

8  District of California.  However, as explained herein, Plaintiffs lack Article III standing

9  necessary for federal jurisdiction, so this Court should remand the Action.

10  DMS also filed a Motion to Dismiss ("MTD") (Dkt. No. 9), but the Court granted (Dkt.

11  No. 13) the Parties' stipulation (Dkt. No. 12) to continue Plaintiffs' deadline to file an

12  Opposition to the MTD until 14 days after (if) this Court rules to retain jurisdiction.

13

14

## II.  <u>STATEMENT OF ISSUES TO BE DECIDED</u>

15  1.  Should this Court remand the Action based on lack of Article III standing?

16

17

## III.  <u>STATEMENT OF RELEVANT FACTS</u>

18  ### A.  <u>California's Anti-Spam Statute is Punitive in Nature and Does Not Require Alleging or Proving Actual Damages</u>

19

20  Section 17529.5 authorizes liquidated damages of $1,000 per false and deceptive spam

21  without the recipient needing to allege or prove reliance or actual damages.  Cal. Bus. & Prof.

22  Code § 17529.5(b)(1)(A)(iii) and (b)(1)(B)(ii).  The statute is punitive in nature, *Hypertouch v.*

23  *ValueClick Inc*., 192 Cal. App. 4th 805, 842 (2d Dist. 2011), designed for the purpose of

24  "regulating spammers," Cal. Bus. & Prof. Code § 17529 (i), (j), and (k).

25  By authorizing a liquidated damages remedy, Section 17529.5 focuses on a spammer's

26  conduct, not a recipient's damages.  For example, the statute provides that a spammer who

27  establishes and implements, with due care, practices and procedures designed to prevent the

28  transmission of unlawful spam is eligible for a 90% reduction in statutory damages.  Cal. Bus. &

Prof. Code § 17529.5(b)(2).  Therefore, if the same unlawful spam can trigger liquidated damages of $1,000 or $100 based solely on whether it was "ordinary business" or an "aberration," the liquidated damages remedy has no connection to any actual damages the recipient might have suffered.

**B.  The Complaint Sufficiently Alleges Violations of Section 17529.5**

Plaintiffs allege that they collectively received at least 282 spams advertising DMS's "platinum auto warranty" product.  Complaint at ¶¶ 1, 29.  Plaintiffs allege that all 282 materially violated Section 17529.5(a)(2) due to generic text in the From Name field ("Vehicle Service Plan") that misrepresented *who* the spams are from, and 229 (81%) were sent from domain names registered to a non-existent entity and a false/incomplete address such that the domain names could not be traced back to the sender.  Complaint at ¶¶ 39-40, 45-47.  These claims are almost identical to those in *Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083 (1st Dist. 2012), in which the appellate court affirmed the trial court's judgment in all respects, including a finding that such spams are unlawful, and awarding $1,000 per spam to the plaintiff, plus attorneys' fees.

Plaintiffs also allege that 279 of the spams materially violate Section 17529.5(a)(2) because the Subject Lines claim that Plaintiffs have (or at a minimum have applied for) extended warranty plans with DMS, requested to extend such plans, and/or the plans' contract terms are about to expire; all of those claims are false.  Complaint at ¶¶ 50-51.

**C.  The Allegations in the Instant Action are Virtually Identical to Two Other Section 17529.5 Spam Cases That Were Recently Remanded from the Northern District**

As shown in <u>Exhibit A</u>, Plaintiffs' allegations as to damages – other than paragraph numbering and the actual number of spams/amount of the Prayer – in the operative Complaint (Dkt. No. 1-1) are very similar to: a) the allegations in the Complaint (Dkt. No. 1-1) in *Soriano v. Lending Tree LLC et al.*, No. 3:17-cv-07078-MMC (N.D. Cal.); and b) the allegations in the First Amended Complaint ("FAC") (Dkt. No. 1) in *Blanchard v. Fluent LLC et al.*, No. 3:17-cv-04497-MMC (N.D. Cal.) when removed and the operative Third Amended Complaint ("3AC") (Dkt. No. 67) when the court remanded it.  Balsam Decl. at ¶ 2.  In fact, the only significant differences between the instant Complaint and *Blanchard* and *Soriano* are the *elimination* of the

affirmative allegations contained in *Soriano* at ¶¶ 4 and 37, and *Blanchard* at ¶ 5 (FAC and 3AC) and ¶¶ 85 (FAC), 99 (3AC) (highlighted in blue) that Plaintiffs suffered actual damages, Balsam Decl. at ¶ 3, which further demonstrates the lack of Article III standing here.

The instant Complaint is included as <u>Exhibit A</u> to the Balsam Decl.  The *Soriano* Complaint is included as <u>Exhibit B</u> to the Balsam Decl.  The *Blanchard* FAC is included as <u>Exhibit C</u> to the Balsam Decl.  The *Blanchard* 3AC is included as <u>Exhibit D</u> to the Balsam Decl.

**D.  <u>DMS's Motion to Dismiss Admits that Plaintiffs Did Not Allege Injury in Fact</u>**

DMS's MTD relies heavily on its misunderstanding of *Gordon v. Virtumundo, Inc.* 575 F.3d 1040 (9th Cir. 2009).  In that case, the Ninth Circuit held that Washington's anti-spam law was preempted by the federal CAN-SPAM ACT.  *Id*. at 1064.  Without delving into the merits – or lack thereof – of DMS's preemption argument at this time, by virtue of making that argument, DMS concedes that Plaintiffs do not allege any facts giving rise to injury – let alone particularized, concrete injuries – for Article III purposes.  Indeed, DMS goes to great lengths to argue that Plaintiffs' claims and allegations do not constitute material falsity or deception.  MTD at § III(A).  In fact, DMS goes so far as to argue that Plaintiffs have not even alleged a violation of Section 17529.5.  MTD at § III(B).

# IV.  <u>LEGAL STANDARD</u>

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

Federal Courts have diversity jurisdiction over civil actions in which the amount in controversy exceeds $75,000 and the matter is between citizens of different states.  28 U.S.C. § 1332.

However, even when a case meets those criteria, a plaintiff who does not sufficiently allege "injury in fact" caused by the allegedly wrongful conduct of the defendant lacks standing under Article III of the United States Constitution, and, consequently, the district court lacks subject matter jurisdiction over the claim.  *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1547-1548 (2016).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of

a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (citations omitted).

"For an injury to be 'particularized,' it "must affect the plaintiff in a personal and individual way. [ ] Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Id.* at 1548 (citations omitted). "[A] plaintiff [does not] automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. To establish such an injury, the plaintiff must allege a statutory violation that caused him to suffer some harm that actually exists; the injury must be real and not abstract or merely procedural. *Id.* at 1548-49. "In other words, even when a statute has allegedly been violated, Article III requires such violation to have caused some real – as opposed to purely legal – harm to the plaintiff." *Robins v. Spokeo Inc.*, 867 F.3d 1108, 1112 (9th Cir. 2017).

"Article III standing requirements are absolute limitations on federal jurisdiction that are not subject to waiver or lapse." *California Consumers v. BMG*, No. C-97-2734-VRW, 1997 U.S. Dist. LEXIS 20658, at *4 (N.D. Cal. Dec. 22, 1997).

If there is no plaintiff with Article III standing, removal is improper and the case should be remanded. *Polo v. Innoventions International LLC*, 833 F.3d 1193, 1197 (9th Cir. 2016).

Any doubt as to whether jurisdiction exists is normally resolved *against* a finding of such jurisdiction. *Kantor v. Wellesley Galleries Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983). "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *California ex rel. Lockyer v. Dynegy Inc.*, 375 F.3d 831, 838 (9th Cir. 2004). Federal jurisdiction must not be asserted if there is any doubt as to the right of removal. *Gaus v. Miles*, 980 F.2d 564, 566-67 (9th Cir. 1992).

//

//

//

//

# V. <u>DISCUSSION</u>

## A. <u>Plaintiffs Do Not Allege Actual Damages, and Only Seek Statutory Liquidated Damages</u>

Plaintiffs' Complaint against DMS does not allege any damages, let alone concrete and particularized damages necessary to support Article III standing in federal court. Plaintiffs only seek liquidated damages for violations of Section 17529.5. In fact, DMS agrees and argues that Plaintiffs did not allege any material facts that could give rise to *any* injury (under Section 17529.5 or any other law). *See* Motion to Dismiss (Dkt. No. 9).

### 1. *Plaintiffs are the Master of the Complaint*

Plaintiffs are the "Master of the Complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Phillips Petroleum Co. v. Texaco Inc.*, 415 U.S. 125, 127-28 (1974). Therefore, for purposes of determining federal jurisdiction, this Court must carefully examine the allegations as pled in the complaint to determine if removal is proper. *Allen v. Wright*, 468 U.S. 737, 752 (1984); *California Consumers*, 1997 U.S. Dist. LEXIS 20658, at *6-7.

Although Plaintiffs assert that DMS violated their statutory rights under Section 17529.5, *see* Complaint, generally, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo,* 136 S. Ct. at 1549.

In *Soriano* and *Blanchard*, Plaintiffs alleged that they had suffered damages, but those references were vague and abstract. *See* <u>Exhibit A</u>. The *Soriano* and *Blanchard* plaintiffs never specified or identified their actual damages, or stated how those particular alleged unlawful spams harmed them, and certainly did not quantify any actual damages in order to make them "real" injuries in fact for purposes of Article III standing. Rather, they merely stated that they were generally damaged and that they were foregoing their rights to recovery of any actual damages, and sought statutory damages instead. *See* <u>Exhibit A</u>.

Here, the Complaint is even farther away from establishing Article III standing, because it does *not* include the acknowledgment of damages. That is, unlike in *Soriano* and *Blanchard*, the instant Complaint does not allege that Plaintiffs suffered any damages whatsoever – only that they seek the statutory damages remedy.

Because Plaintiffs are the "Masters of the Complaint" and the instant allegations as to damages are even more remote from Article III standing than were the allegations in *Soriano* and *Blanchard*, and since this Court cannot read allegations of actual damages into the Complaint that aren't there, this Court should remand this Action, just as another Northern District court recently remanded *Soriano* and *Blanchard.*

### 2. *Plaintiffs Seek Punitive Liquidated Damages that Have Nothing to Do With Actual Damages*

In *Hypertouch*, the California court of appeal held that Section 17529.5 is penal in nature because "nothing in the text of the statute indicates that the amount of the liquidated damages – $1,000 per e-mail or $1 million per incident – is in any way based on the actual injury suffered by the entity seeking redress."  192 Cal. App. 4th at 842-843. (citations omitted).

Thus, the fact that Plaintiffs seek the liquidated damages remedy, which is totally unrelated to compensatory/actual damages, further supports Plaintiffs' argument herein that seeking the punitive statutory damages remedy, without pleading actual damages at all, is simply not "concrete" enough for Article III standing.

### 3. *Plaintiffs' Complaint Does Not Meet Article III's Two-Prong Test*

The dispositive inquiries before this Court are whether: a) the statutory provisions at issue were established to protect the plaintiffs' concrete interests; and b) the specifically alleged violations actually harm or present a material risk of harm to those interests.  *Robins*, 867 F.3d at 1115-1116.

The California Legislature did identify certain harms arising from spam: economic and technical harm, using up storage space in email inboxes, annoyance, lost productivity, cost-shifting, and a threat to email usage. Cal. Bus. & Prof. Code § 17529.  However, those harms relate to *all* spams, regardless of content.  Also, invasion of privacy; nuisance; and threat to public health, safety and welfare are not on that list.

### a.  The Right to be Free from "Annoying" Emails is Not a Concrete Interest

Pursuant to the "plain meaning rule" of statutory construction, words of a statute are to be given their common and ordinary meanings. *Metro One Telecommunications Inc. v.*

**6**

*Commissioner of Internal Revenue*, 704 F.3d 1057, 1063 (9th Cir. 2012); *Wilshire Westwood Associates v. Atlantic Richfield Corp.*, 881 F.2d 801, 803-804 (9th Cir. 1989).  To annoy means to "[m]ake (someone) a little angry; irritate."  *See* Oxford Dictionary, https://en.oxforddiction aries.com/definition/annoy.

　　If the California Legislature wanted to elevate the right to be free from unsolicited emails to a concrete interest, it would have made findings consistent with Congress' findings in the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and used the words "privacy" and "nuisance" to describe the harm, rather than merely referring to spams as "annoying." California certainly knows how to protect a privacy interest; indeed, Article I, Section 1 of the California Constitution includes the inalienable right of privacy.

### b.　Plaintiffs Do Not Allege, Much Less Quantify, Any Monetary or Other Tangible Harms Arising From Receipt of the DMS Spams

　　Plaintiffs never alleged economic or technical harm, loss of storage space in their email inboxes, lost productivity, harm from cost-shifting, or threat to their email usage resulting from these particular DMS spams.  Therefore, even if these problems were considered "concrete" harms, Plaintiffs are Masters of the Complaint, and Plaintiffs never alleged any such harms.

　　And, not only did Plaintiffs fail to plead specific monetary harms arising from receipt of these particular DMS spams, Plaintiffs could not plead specific monetary harms, because they do not know how to quantify them.

### B.　**The Limited Case Law on Point Supports Lack of Article III Standing and Remand in the Instant Action**

　　"To establish standing to bring a claim [for false advertising], plaintiffs must meet an economic injury-in-fact requirement, which demands no more than the corresponding requirement under Article III of the U.S. Constitution."  *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015).

### 1.　*Soriano v. Lending Tree LLC (N.D. Cal.) – Remanded*

　　In *Soriano*, a spam case removed to the Northern District, the court *sua sponte* issued an Order to Show Cause to Defendant Lending Tree LLC to justify Article III jurisdiction in light of *Spokeo*.  *Soriano*, Order to Show Cause (May 22, 2018) (Dkt. No. 26).

1    In its Response to the OSC (Dkt. No. 27), Defendant Lending Tree LLC relied almost

2    exclusively on *Fraser v. Wal-Mart Stores, Inc*., No. 2:13-cv-00520-TLN-DB, 2016 U.S. Dist.

3    LEXIS 144351 (E.D. Cal. Oct. 18, 2016).  *Fraser* concluded that the Song-Beverly Credit Card

4    Act confers standing on plaintiffs who "sufficiently allege violations of [Cal. Civ. Code] Section

5    1747.08."  *Id*. at 12.  But *Fraser* is distinguishable; it has nothing to do with Section 17529.5.

6    In their Reply to Lending Tree's Response to the OSC (Dkt. No. 28), plaintiffs pointed

7    out that they had not alleged *how* those particular unlawful spams and statutory violations had

8    harmed them, nor *how much* in monetary terms.  Rather, plaintiffs merely stated that they were

9    generally damaged and that they forewent their rights to recovery of any actual damages and

10   sought statutory damages instead.

11   In remanding the action, the court cited to *Spokeo* and the plaintiffs' Reply when it ruled

12   that plaintiffs lacked Article III standing and that Lending Tree had improperly removed the

13   Action.  *Soriano,* Order Remanding Action to State Court (N.D. Cal. July 11, 2018) (Dkt. No.

14   31).

15   ### 2.  *Blanchard v. Fluent LLC (N.D. Cal.) – Remanded*

16   In *Blanchard*, another spam case removed to the Northern District, plaintiffs similarly

17   never quantified any damages and sought only statutory, liquidated damages; i.e., they did not

18   allege concrete damages.  The plaintiffs filed a Motion to Remand (Dkt. No. 77).

19   Most of defendants' argument for Article III standing in their Opposition (Dkt. No. 82)

20   relied on *Van Patten v. Vertical Fitness Group LLC* for the premise that the Ninth Circuit noted

21   that in the TCPA, Congress made findings that telemarketing – including text messages[1] –

22   invaded recipients' privacy and were a nuisance.  847 F.3d 1037, 1043 (9th Cir. 2017).

23   But Section 17529.5 is not the TCPA, and spams are not calls (or text messages).  *Van

24   Patten* had nothing to do with spams; rather, the allegations were that unsolicited calls violated

25   the TCPA.  847 F.3d 1040.  Plaintiffs concede that certain language in the TCPA and Section

26   17529.5 is similar, but that does not automatically lead the same result as to Article III standing.

27

28   [1] Text messages are "calls" for purposes of the TCPA.  *Van Patten*, 847 F.3d at 1041-1042; *Campbell-Ewald v. Gomez*, 136 S. Ct. 663, 667 (2016).

**8**

First, Congress indicated its intent to treat spam differently than calls, as shown by the fact that the TCPA authorizes a private right of action, 47 U.S.C. § 227(b)(3).  On the other hand, the CAN-SPAM Act does not let spam recipients sue to vindicate their rights, 15 U.S.C. § 7706. This Court could interpret Congress' refusal to create a private right of action as an indication that Congress did not believe that recipients of unlawful spams who seek statutory liquidated damages suffer Article III damages.

Second, Congress described invasion of privacy as the driving force behind the TCPA. *Van Patten* found that there is Article III standing where Congress (or a state legislature) enacted a law for the express purpose of protecting consumers' privacy interests.  847 F.3d at 1043. However, in contrast to Congress' enactment of the TCPA, the California Legislature prohibited false and deceptive spamming but it did not invoke privacy, nuisance, public welfare, security, or safety when it enacted Section 17529.  As far as intangible harms are concerned, the Legislature referred to spam as merely "annoying."  Cal. Bus. & Prof. Code § 17529(b), (c), (g).  As described above, the California Constitution begins with privacy; if the Legislature intended to invoke privacy to support Section 17529.5, it would have been easy for it do so.  The Legislature's decision to *not* invoke privacy, nuisance, etc. suggests that while the Legislature intended to grant spam recipients the right to sue for liquidated damages under a penal statute, it did not intend that such lawsuits implicate Article III standing.

The *Blanchard* court carefully analyzed the statutory language and found that Section 17529.5 does not prohibit all spamming, only false and misleading spamming, and therefore claims under Section 17529.5 would requires a showing of economic injury-in fact to create Article III standing.

> Irrespective of whether the sending of unsolicited commercial emails likewise can be deemed an invasion of privacy or a nuisance, however, *§ 17529.5(a)*, by contrast, does not prohibit such activity. Consequently, the reasoning set forth in *Van Patten* is inapplicable to *§ 17529.5(a)*, which only prohibits false or misleading advertising. In other words, its purpose is to protect against harm caused by the content of commercial speech, not the willingness with which it is received.
>
> Where, as here, a plaintiff brings a claim under a statute prohibiting the making of false or misleading commercial speech, courts have found the plaintiff, to have

standing, must allege an injury caused by such speech. See, e.g., *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (holding, to establish Article III standing under California statutes prohibiting "false advertising," plaintiff "must meet an economic injury-in-fact requirement," such as by showing product was purchased in reliance on challenged advertisement); *TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (holding, for plaintiff/competitor to have standing to bring claim for "false advertising" under Lanham Act, plaintiff must show defendant's advertising has or could "harm plaintiff's business") [ ].

*Blanchard v. Fluent LLC et al*, No. 3:17-cv-04497-MMC, 2018 U.S. Dist. LEXIS 156546, at *5-6 (N.D. Cal. Sep. 13, 2018) (Order Granting Plaintiffs' Motion to Remand, Dkt. No. 86).  Noting that Plaintiffs never alleged injury from receiving the spams at issue as required by *Reid* and *TrafficSchool.com*, the court remanded the case.  *Id.* at *6.

Plaintiffs submit that the facts alleged in the instant case are analogous to those in *Soriano* and *Blanchard*, and this Court should similarly remand the Action back to California State Court where it was initiated and where it belongs.

### 3.   *Silverstein v. Keynetics Inc. (C.D. Cal.) – Not Remanded*

*Silverstein v. Keynetics Inc.*[2] – also relying on *Van Patten* – came to the opposite conclusion as did the *Blanchard* court in the Northern District as to concrete damages and Article III standing.  No. LA CV18-04100 JAK (AGRx), 2018 U.S. Dist. LEXIS 189114 (C.D. Cal. Nov. 5, 2018) (Order re Plaintiffs' Motion to Remand) (Dkt. No. 37).  But, the *Silverstein* court relied on a superficial comparison of some of the facial language of the TCPA and Section 17529.5, without digging deeper to explore the differences between calls and spams, as the *Blanchard* court did.  *Id.* at *19.  In its analysis, the *Silverstein* court ignored the differences between calls and emails.  Not only that, it imprecisely compared the TCPA and Section 17529.5 and focused on the fact that the TCPA prohibits calls regardless of content, while completely overlooking the fact that Section 17529.5 does not prohibit spamming in general but only false and misleading spamming.  As the result of this oversight, the *Silverstein* court did not take *Reid* into account.  According to *Reid*, as discussed in *Blanchard*, Article III standing under a statute like Section 17529.5 prohibiting false commercial speech requires allegations of an injury caused

---

[2] Silverstein was not an attorney and was acting *in pro per* in this case.  Complaint at *1 (Mar. 29, 2018) (Dkt. No. 2-2).  The *Silverstein* Complaint is included as <u>Exhibit E</u> to the Balsam Decl.

by such speech. Here, Plaintiffs do not allege economic injury caused by false commercial speech. In fact, Plaintiffs do not allege actual damages at all. Plaintiffs only seek statutory, liquidated damages for violations of Section 17529.5. In short, the *Silverstein* court's incomplete analysis led it to the incorrect conclusion.

**C.  This Court Should Remand Rather than Dismiss Because California has Broader Standing Requirements than Federal Courts**

California courts allow lawsuits seeking liquidated damages for violations of Section 17529.5, *see e.g. Hypertouch* and *Balsam*, even where federal courts lack jurisdiction for want of Article III standing. Therefore, if this Court determines – as Plaintiffs believe it should – that the instant Complaint does not allege concrete damages and therefore there is no Article III standing, then this Court cannot consider DMS's allegations in its MTD that Plaintiffs failed to state a cause of action for violations of Section 17529.5. Lacking federal jurisdiction, this Court cannot dismiss the Action but instead should remand it to allow the California state court to determine whether Plaintiffs' claims are substantively sufficient. "If a court determines that removal jurisdiction does not exist because the plaintiff has not satisfied the federal standing requirements, it must remand the case to state court." *California Consumers*, 1997 U.S. Dist. LEXIS 20658, at *4.

**VI.  CONCLUSION**

California's anti-spam statute, Section 17529.5, is punitive in nature and authorizes a remedy of liquidated damages. Accordingly, Plaintiffs need not allege – and here *did not* allege – actual damages. As another Northern District court recently ruled in the very similar *Soriano* and *Blanchard* anti-spam actions based on very similar pleadings, Plaintiffs did not allege the particularized and concrete injuries in their Complaint necessary to establish Article III standing in Federal Court. Accordingly, this Court should grant Plaintiffs' Motion to Remand.

THE LAW OFFICES OF DANIEL BALSAM

Date:_____Feb. 12, 2019_____     BY:_ */s/ Daniel Balsam*_____
                                              Daniel Balsam
                                              Attorney for Plaintiffs

Exhibit A

| *Greenberg v. Digital Media Solutions LLC* Complaint | *Blanchard v. Fluent LLC* FAC/3AC | *Soriano v. Lending Tree LLC* Complaint |
|---|---|---|
| 5.      Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1) (A)(iii). Plaintiffs elect to recover statutory damages only and forego recovery of any actual damages.  *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B). | 5/5.      Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Bus. & Prof. Code § 17529.5(b)(1) (A)(iii). Nevertheless, Plaintiffs did suffer damages by receiving the spams.  *See, e.g.,* Bus. & Prof. Code § 17529(d), (e), (g), (h).  However, Plaintiffs elect to recover statutory damages only and forego recovery of any actual damages.  *See* Bus. & Prof. Code § 17529.5(b)(1) (B). | 4.      Spam recipients are not required to allege or prove reliance or actual damages to have standing. See Bus. & Prof. Code § 17529.5(b)(1) (A)(iii). Nevertheless, Plaintiffs did suffer damages by receiving the spams.  *See, e.g.,* Bus. & Prof. Code § 17529(d), (e), (g), (h).  However, Plaintiffs elect to recover statutory damages only and forego recovery of any actual damages.  *See* Bus. & Prof. Code § 17529.5(b)(1) (B). |
| 59.      The California Legislature defined liquidated damages to be $1,000 per spam.  Cal. Bus. & Prof. Code § 17529.5(b)(1) (B)(ii). | 81/95.  The California Legislature defined liquidated damages to be $1,000 per spam.  Bus. & Prof. Code § 17529.5(b)(1) (B)(ii). | 33.      The California Legislature defined liquidated damages to be $1,000 per spam.  Bus. & Prof. Code § 17529.5(b)(1) (B)(ii). |
| 60.      Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Cal. Business & Professions Code § 17538.43(b). | 82/96.  Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b). | 34.      Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b). |
| 61.      Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam. | 83/97.  Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam. | 35.      Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam. |
| 62.      Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the | 84/98.  Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the | 36.      Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the |

| *Greenberg v. Digital Media Solutions LLC* Complaint | *Blanchard v. Fluent LLC* FAC/3AC | *Soriano v. Lending Tree LLC* Complaint |
|---|---|---|
| advertisements contained in the spams, or purchase the goods and services advertised in the spams. *Recipients* of unlawful spam have standing to sue and recover liquidated damages. Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828. | advertisements contained in the spams, or purchase the goods and services advertised in the spams. *Recipients* of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828. | advertisements contained in the spams, or purchase the goods and services advertised in the spams. *Recipients* of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828. |
| 62 (cont).    Plaintiffs do not seek actual damages in this Action, only liquidated damages.  Cal. Bus. & Prof. Code § 17529.5(b)(1) (B). | 85/99.  However, Plaintiffs did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California email addresses. Bus. & Prof. Code § 17529(d), (e), (g), (h). Regardless, Plaintiffs do not seek actual damages in this Action, only liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(B). | 37.    However, Plaintiffs did suffer damages by receiving the unlawful spams advertising LENDINGTREE's products and services in the state of California, at his California email addresses. Bus. & Prof. Code § 17529(d), (e), (g), (h). Regardless, Plaintiffs do not seek actual damages in this Action, only liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(B). |
| Prayer for Relief ¶ B.

Liquidated damages against Defendants in the amount of $1,000 for each of at least 282 unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $282,000, as follows: | FAC Prayer for Relief ¶ B.

Liquidated damages against Defendants in the amount of $1,000 for each of at least 1,265 unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $1,265,000, as set forth below.

3AC Prayer for Relief ¶ B.

Liquidated damages against Defendants in the amount of $1,000 for each of at least 1,349 unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $1,349,000 (subject to reduction by any settlements with third parties), as set forth below: | Prayer for Relief ¶ B.

Liquidated damages against Defendants in the amount of $1,000 for each of at least 138 unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $138,000 as set forth below: |