Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Tel: (415) 869-2873
Fax: (415) 869-2873
Email: legal@danbalsam.com

Jacob Harker (State Bar No. 261262)
LAW OFFICES OF JACOB HARKER
582 Market Street, Suite 1007
San Francisco, CA 94104
Tel: (415) 624-7602
Fax: (415) 684-7757
Email: jacob@harkercounsel.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)

| | |
|---|---|
| MARTA GREENBERG *et al*, | ) Case No.      3:19-cv-00355-VC |
| Plaintiffs, | ) **DECLARATION OF DANIEL BALSAM** |
| v. | ) **IN SUPPORT OF MOTION TO REMAND** |
| DIGITAL MEDIA SOLUTIONS LLC *et al*, | ) Date:        March 28, 2019 |
| | ) Time:        10:00 am |
| Defendants. | ) Courtroom:   4 – 17th Floor |
| | ) Judge:       Hon. Vince Chhabria |

I, Daniel Balsam, declare as follows:

1. I am an attorney licensed to practice law in the State of California.  I am co-counsel of record for Plaintiffs Marta Greenberg *et al*.  I have personal knowledge of the matters stated below, and if called on to testify, would do so truthfully.

2. Plaintiffs' allegations as to damages – other than paragraph numbering and the actual number of spams/amount of the Prayer – in the operative Complaint (Dkt. No. 1) are very similar to: a) the allegations in the Complaint (Dkt. No. 1) in *Soriano v. Lending Tree*

*LLC et al.*, No. 3:17-cv-07078-MMC (N.D. Cal.); and b) the allegations in the First

Amended Complaint ("FAC") (Dkt. No. 1) in *Blanchard v. Fluent LLC et al.*, No. 3:17-

cv-04497-MMC (N.D. Cal.) when removed and the operative Third Amended Complaint

("3AC") (Dkt. No. 67) when the court remanded it.

3.      In fact, the only significant differences between the instant Complaint and *Blanchard* and

*Soriano* are the *elimination* of the affirmative allegations contained in *Soriano* at ¶¶ 4 and

37, and *Blanchard* at ¶ 5 (FAC and 3AC) and ¶¶ 85 (FAC), 99 (3AC).

4.      <u>Exhibit A</u> is a true and correct copy of the text of the Complaint in the instant Action, but

excluding a long exhibit detailing each of the spams at issue.

5.      <u>Exhibit B</u> is a true and correct copy of the Complaint in *Soriano v. Lending Tree LLC et

al.*, No. 3:17-cv-07078-MMC (N.D. Cal.).

6.      <u>Exhibit C</u> is a true and correct copy of the First Amended Complaint in *Blanchard v.

Fluent LLC et al.*, No. 3:17-cv-04497-MMC (N.D. Cal.).

7.      <u>Exhibit D</u> is a true and correct copy of the Third Amended Complaint in *Blanchard v.

Fluent LLC et al.*, No. 3:17-cv-04497-MMC (N.D. Cal.), but excluding a long exhibit

detailing each of the spams at issue.

8.      <u>Exhibit E</u> is a true and correct copy of the Complaint in *Silverstein v. Keynetics Inc. et al*,

No. LA CV18-04100 JAK (AGRx) (C.D. Cal.), but excluding a long exhibit detailing

each of the spams at issue.


I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct, and that this Declaration was executed on February 12, 2019 at

Alameda, California.


*/s/ Daniel Balsam*

Daniel Balsam

Exhibit A

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Tel: (415) 869-2873
Fax: (415) 869-2873
Email: legal@danbalsam.com

Jacob Harker (State Bar No. 261262)
LAW OFFICES OF JACOB HARKER
582 Market Street, Suite 1007
San Francisco, CA 94104
Tel: (415) 624-7602
Fax: (415) 684-7757
Email: jacob@harkercounsel.com

Attorneys for Plaintiffs

**FILED**

San Francisco County Superior Court

DEC 11 2018

CLERK OF THE COURT

BY: _____

Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO (UNLIMITED JURISDICTION)

CGC-18-572010

MARTA GREENBERG, an individual;
JOHN JUDGE, an individual;
KAREN MANDEL, an individual;
ANDREW MONROE, an individual; and
KATIE VAN CLEAVE, an individual;

        Plaintiffs,

v.

DIGITAL MEDIA SOLUTIONS LLC, a
Delaware limited liability company;
BILCO MEDIA INC., a business entity of
unknown organization;
ALLAN HUGHES, an individual; and
DOES 1-100;

        Defendants.

Case No.:

**COMPLAINT FOR DAMAGES**

1. **VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)**

COME NOW PLAINTIFFS MARTA GREENBERG *et al* and file this Complaint for one cause of action against Defendants DIGITAL MEDIA SOLUTIONS LLC *et al* and allege as follows:

1

**COMPLAINT**

## I. INTRODUCTION AND SUMMARY OF THE COMPLAINT

1.     Plaintiffs MARTA GREENBERG *et al* bring this Action against professional "spamvertiser" DIGITAL MEDIA SOLUTIONS LLC dba "Platinum Auto Warranty" ("PLATINUM"), and its third party advertising networks and affiliates a/k/a publishers ("Marketing Partners"), for advertising/conspiring to advertise in at least 282 unlawful unsolicited commercial emails ("spams") hawking auto warranty products that Plaintiffs received. <u>Figure 1</u> on the next page is a representative sample.

2.     No Plaintiff gave direct consent to receive commercial email advertisements from, or had a preexisting or current business relationship with, PLATINUM or any other entity advertised in the spams.

3.     The spams all materially violated California Business & Professions Code § 17529.5 ("Section 17529.5") due to materially false and deceptive information contained in or accompanying the email headers: From Names, registration information for the sending domain names in the Sender Email Addresses, and Subject Lines.

4.     PLATINUM is strictly liable for advertising in spams sent by its Marketing Partners. Even *if* PLATINUM's Marketing Partners are not directly liable under Section 17529.5 for advertising in the spams, they are still liable on the basis of civil conspiracy, as discussed herein.

5.     Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Plaintiffs elect to recover statutory damages only and forego recovery of any actual damages. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B).

6.     This Court should award liquidated damages of $1,000 per email as provided by Section 17529.5(b)(1)(B)(ii), and not consider any reduction in damages, because PLATINUM and its Marketing Partners failed to implement reasonably effective systems to prevent advertising in/conspiring to advertise in unlawful spams. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

7.     This Court should award Plaintiffs their attorneys' fees pursuant to Section 17529.5(b)(1)(C). *See also* Cal. Code of Civil Procedure § 1021.5, providing for attorneys fees when private parties bear the costs of litigation that confers a benefit on a large class of persons; here, by reducing the amount of false and deceptive spam received by California residents.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31



Print                                                                https://mail.yahoo.com/#4360817355

Subject:   martagreenberg@yahoo.com, please confirm your extended warranty plan

From:      Vehicle Service Plan (Vehicle.Service.Plan@badealz.com)

To:        martagreenberg@yahoo.com;

Date:      Thursday, December 28, 2017 5:46 AM

**martagreenberg@yahoo.com, please confirm your extended warranty plan**

**:: Your Vehicle's Warranty May Be Expiring Within 28 Days ::**

View your warranty options below and see how you can prevent car trouble from breaking your bank.

Protect yourself from costly vehicle repairs. Without protection, auto issues could lead to severe financial hardship.

**View Your Warranty Options Here**

Transparent Auto Warranty, 7000 W. Palmetto Park Rd. Suite 210, Boca Raton, FL 33433

Please click here to unsubscribe.

1 of 1                                                                3/2/2018 10:28 PM

*Figure 1*

3

COMPLAINT

## II. PARTIES

A. **Plaintiffs**

8.    MARTA GREENBERG ("GREENBERG") was domiciled in and a citizen of the State of California, when she received the spams at issue. The spams at issue were sent to GREENBERG's email address martagreenberg@yahoo.com that she ordinarily accesses from California.

9.    JOHN JUDGE ("JUDGE") was domiciled in and a citizen of the State of California, when he received the spams at issue. The spams at issue were sent to JUDGE's email address jojudge23@yahoo.com that he ordinarily accesses from California.

10.    KAREN MANDEL ("MANDEL") was domiciled in and a citizen of the State of California, when she received the spams at issue. The spams at issue were sent to MANDEL's email address klmandel@yahoo.com that she ordinarily accesses from California.

11.    ANDREW MONROE ("MONROE") was domiciled in and a citizen of the State of California, when he received the spams at issue. The spams at issue were sent to MONROE's email address ndrw_monroe@yahoo.com that he ordinarily accesses from California.

12.    KATIE VAN CLEAVE ("VAN CLEAVE") was domiciled in and a citizen of the State of California, when she received the spams at issue. The spams at issue were sent to VAN CLEAVE's email address dbkatie77@yahoo.com that she ordinarily accesses from California.

13.    Plaintiffs' joinder in this Action is proper pursuant to Cal. Code of Civil Procedure § 378 because Plaintiffs seek relief based on the same series of transactions or occurrences: all received similar spams in the same general time period advertising PLATINUM's websites and its auto warranties, and all of those spams were sent by PLATINUM or its Marketing Partners. The same questions of law (e.g., violations of Section 17529.5, strict liability) and fact (e.g., direct consent, practices and procedures to prevent advertising in unlawful spam) will arise in this Action. The fact that each Plaintiff does not sue for *exactly* the same spams does not bar joinder: "It is not necessary that each plaintiff be interested as to every cause of action or as to all relief prayed for. Judgment may be given for one or more of the plaintiffs according to their respective right to relief." Cal. Code Civ. Proc. § 378(b).

**B. Defendants**

    *1. Digital Media Solutions LLC*

14.    Plaintiffs are informed and believe and thereon allege that Defendant DIGITAL MEDIA SOLUTIONS LLC dba Platinum Auto Warranty ("PLATINUM") is now, and was at all relevant times, a Delaware limited liability company with its principal place of business in Clearwater, Florida, who sells auto warranties via its website platinumautowarranty.com. Plaintiffs are informed and believe and thereon allege that PLATINUM is responsible for advertising its auto warranty products in all of the 282 spams at issue in this Action.

15.    Plaintiffs are informed and believe and thereon allege that PLATINUM entered into various contracts ("Marketing Partner Contracts") with third-party spam networks and publishers ("Marketing Partners") who sent some, if not all, of the spams at issue. Pursuant to the terms of the Marketing Partner Contracts, PLATINUM and each respective Marketing Partner agreed to share in the benefits and risks derived from email advertising campaigns advertising PLATINUM's websites/products and the Marketing Partners' services. Plaintiffs further allege, on information and belief, that pursuant to the terms of the Marketing Partner Contracts, the Marketing Partner Defendants who sent the spams used their own lists of email addresses (as opposed to lists provided by PLATINUM) as the source of intended recipients for the spams. Plaintiffs further allege, on information and belief, that in some cases, the Marketing Partners (as opposed to PLATINUM) created the unlawful content in the emails, such as the From Names, registration information for the sending domain names in the Sender Email Addresses, Subject Lines, and registration information for the domain names in the clickthrough hyperlinks. Just as Valpak also advertises its own mailing services when sending advertisements for its partners, so did PLATINUM's Marketing Partners advertise their own emailing services when they sent these spams for PLATINUM.

    *2. Bilco Media Inc.*

16.    Plaintiffs are informed and believe and thereon allege that Bilco Media Inc. ("BILCO") is an unknown entity of unknown organization with an unknown primary place of business. 229 of the spams at issue were sent from domain names registered to "William Bilco" and BILCO, claiming the address 13727 SW 152nd Street, Miami, FL 33186. However, the business at that address is a commercial mail receiving agency – Mail Mart USA – and Plaintiffs are informed and believe that BILCO does not and never had a box at Mail Mart USA, or at least, not under

5

**COMPLAINT**

1    that name. The sending domain names registered to "William Bilco" and BILCO are:

2    00hullo.com, badealz.com, buyerdate.com, deal4utoday.com, dealssss.com, dicountforu.com,

3    greatsavinsites.com, holidayspecails.com, jajajawelcome.com, peaksavingsites.com,

4    savinsitenow.com.

5        **3.   Allan Hughes**

6    17.    Plaintiffs are informed and believe and thereon allege that Allan Hughes ("HUGHES") is

7    an individual claiming a business address to be PO Box 8 STN A, Nanaimo, British Columbia

8    V9R5K4 Canada. 53 of the spams at issue were sent from domain names registered to

9    HUGHES: alewjfol.com, comeonletsdoit10.com, comeonletsdoit7.com, eoanodo.com,

10   fwpopgd.com, letsgetitdone1.com, letsgetitdone2.com, letsgetitdone3.com, letsgetitdone4.com,

11   letsgetitdone5.com, letsgetitdone6.com, letsgetitdone9.com, makejnks.com, qjndiesp.com,

12   qncorpw.com, realojtnsl.com.

13       **4.   DOE Defendants**

14   18.    Plaintiffs do not know the true names or legal capacities of the Defendants designated

15   herein as DOES 1 through 5, inclusive – PLATINUM's Marketing Partners – and therefore sue

16   said Defendants under the fictitious name of "DOE." Plaintiffs allege that certain Defendant(s)

17   designated herein as DOEs advertised in/conspired with PLATINUM to advertise in some of the

18   spams at issue because their domain names appear in the redirect links after a recipient clicks the

19   link in the spam. I.e., when a person clicks a link in the spam, that launches an Internet browser

20   that immediately redirects through several URLs before landing at PLATINUM's website

21   platinumautowarranty.com. Thus, these DOEs actually direct a person who clicks the link in the

22   spam to PLATINUM's website to purchase an auto warranty; an advertisement without the

23   opportunity to purchase is ineffective. These DOEs operate at least 5 domain names used in the

24   redirect links, all of which were proxy-registered to prevent a person from identifying the true

25   owner: canttrussit.com, chpsuuuy.com, clrinbox.com, coozyfltr.com, and grssypddn.com.

26   19.    Plaintiffs do not know the true names or legal capacities of the Defendants designated

27   herein as DOES 6 through 100, inclusive – PLATINUM's Marketing Partners – and therefore

28   sue said Defendants under the fictitious name of "DOE." Plaintiffs allege that certain

29   Defendant(s) designated herein as DOEs advertised in/conspired with PLATINUM to advertise

30   in some of the spams at issue.

31

6

**COMPLAINT**

20.     Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner for causing the injuries and damages of which Plaintiffs complain.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, partner, affiliate, customer, participant, or co-conspirator.  When the identities of DOE Defendants 1-100 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege their identity and involvement with particularity.

### 5.  Joinder

21.     Defendants' joinder in this Action is proper pursuant to Cal. Code of Civil Procedure § 379 because Plaintiffs seek relief jointly and severally from Defendants arising form the same series of transactions and occurrences, and because common questions of law and fact as to Defendants will arise in the Action.  The fact that all Defendants may not be implicated in all spams does not bar joinder: "It is not necessary that each defendant be interested as to every cause of action or as to all relief prayed for.  Judgment may be given against one or more defendants according to their respective liabilities." Cal. Code Civ. Proc. § 379.

## III.  JURISDICTION AND VENUE

### A. Jurisdiction is Proper in a California Superior Court

22.     This California Superior Court has jurisdiction over the Action because Defendants targeted their advertisements at Plaintiffs in California, and each Plaintiff's claims exceed the $10,000 maximum for small claims court.

### B. Venue is Proper in San Francisco County

23.     Venue is proper in San Francisco County (or indeed, *any* county in California of Plaintiffs' choosing) because PLATINUM is a foreign company that has not designated the location and address of a principal office in California or registered to do business in California with the California Secretary of State. *See Easton v. Superior Court of San Diego (Schneider Bros. Inc.)*, 12 Cal. App. 3d 243, 246 (4th Dist. 1970).

## IV.  282 UNLAWFUL SPAMS

24.     Plaintiffs allege that Defendants engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction." *See* Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Nov. 5, 2013).

25.     California's False Advertising Law, Business & Professions Code § 17500

> prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . . [T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.

*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted).

### A.  The Emails at Issue are "Spams"; Recipients and Counts

26.     The emails at issue are "commercial email advertisements"[1] because they were initiated for the purpose of advertising and promoting PLATINUM's and its Marketing Partners' products and services.

27.     The emails are "unsolicited commercial email advertisements"[2] because no Plaintiff gave "direct consent"[3] to, or had a "preexisting or current business relationship"[4] with PLATINUM or any of its Marketing Partners.

---

[1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(c).

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []" Bus. & Prof. Code § 17529.1(*l*).

**8**

COMPLAINT

1  28.     Plaintiffs did not consent or acquiesce to receive the spams at issue.  Plaintiffs did not

2  waive any claims related to the spams at issue.

3  29.     Defendants advertised in and/or conspired to advertise in at least 282 unlawful spams that

4  Plaintiffs received at their "California email addresses"[5]:

| PLAINTIFF | SPAMS RECEIVED | PLAINTIFF | SPAMS RECEIVED |
|-----------|----------------|-----------|----------------|
| GREENBERG | 29 | MONROE | 53 |
| JUDGE | 79 | VAN CLEAVE | 58 |
| MANDEL | 63 | **TOTAL** | **282** |

30.     The spams are all unlawful because there is materially false and deceptive information

contained in or accompanying the email headers, as described in more detail below.

31.     Although "fraud" in the context of a Cal. Business & Professions Code § 17500 action

does not mean the common-law tort,[6] Plaintiffs are not bringing claims for fraud and are not

required to plead with particularity.  Nevertheless, <u>Exhibit A</u> shows a table of the spams at issue,

sorted by recipient and stating for each spam: the recipient, recipient's email address, date/time,

From Name, sending domain name, registrant of the sending domain name, Subject Line, and

landing website.  Plaintiffs incorporate <u>Exhibit A</u> herein by reference.

---

[5] "'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state."  Bus. & Prof. Code § 17529.1(b).

[6] *See Day v. AT&T Corporation,* 63 Cal. App. 4th 325, 332 (1st Dist. 1998) ("Actual deception or confusion caused by misleading statements is not required . . . . The term 'fraudulent' as used in the section 'does not refer to the common law tort of fraud' but only requires a showing members of the public 'are likely to be deceived.'  No proof of direct harm from a defendant's unfair business practice need be shown, such that '[a]llegations of actual deception, reasonable reliance, and damage are unnecessary.") (citations omitted). *See also Buller v. Sutter Health,* 160 Cal. App. 4th 981, 986 (1st Dist. 2008) ("In order to state a cause of action under the fraud prong of the [Unfair Competition Law] a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question. The 'fraud prong of [the UCL] is unlike common law fraud or deception.  A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.  Instead, it is only necessary to show that members of the public are likely to be deceived").

COMPLAINT

**B.   Spams With Generic From Names Misrepresent *Who* is Advertising in the Spams and Violate Cal. Business & Professions Code § 17529.5(a)(2)**

32.      Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

33.      The From Name field is part of email headers.  The From Name does *not* include the Sender Email Address.  So, for example, if an email's From Line says: "John Doe <johndoe@yahoo.com>", the From Name is *just* "John Doe."

34.      The From Name in an email's headers is, not surprisingly, supposed to identify who the email is *from*; it is not supposed to be an advertising message.  Because computers must use standard protocols in order to communicate, the Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules that enable email to work.  According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

35.      Plaintiffs do not insist on any *particular* label (e.g., "Digital Media Solutions LLC," "Platinum Auto Warranty," etc.) in the From Name field.  Rather, Plaintiffs contend that the text, whatever it is, cannot misrepresent *who* the emails are from.

36.      The From Name is important to an email user, because in almost all email programs, the inbox view only displays a list of emails, showing the From Name, Subject Line, and Send Date.  Therefore, even *if* the body of the email identifies the advertiser, the recipient will not know that until s/he has already clicked to open the email.

37.      Indeed, empirical evidence has demonstrated that the From Name is the *most* important factor email recipients use to determine whether or not an email is spam.  *See* eMarketer, E-Mail Open Rates Hinge on 'Subject' Line, *available at*

| Select Criteria Used by US Internet Users to Decide Whether to Click on an E-Mail "Report Spam" or "Junk" Button without Opening the Actual Message, December 2006 (% of respondents) | |
| --- | --- |
| "From" line | 73 % |
| "Subject" line | 69 % |

Note: n=2,252 AOL, MSN/Hotmail, Yahoo!, Lycos, Excite, Gmail, Netscape or Compuserve users
Source: Email Sender and Provider Coalition (ESPC) and Ipsos, March 2007
082363                                        www.eMarketer.com

http://www.emarketer.com/Article/E-Mail-Open-Rates-Hinge-on-Subject-Line/1005550 (Oct. 31, 2007).  Thus, a From Name that misrepresents who a spam is from is *not* a mere technical error; rather, it is a material misrepresentation of the most important part of the email header.

COMPLAINT

1    38.    Although Plaintiffs do *not* sue under the federal CAN-SPAM Act, Plaintiffs note that the

2    Federal Trade Commission has also identified the From Name as the first item in misleading

3    header information in its guide to CAN-SPAM compliance when it stated

4                1.    Don't use false or misleading header information. Your *"From,"* "To,"
         "Reply-To," and routing information – including the originating domain name
5        and email address – *must be accurate and identify the person or business who*
6        *initiated the message.*

7    Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business, available at

8    http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business

9    (emphasis added).

10   39.    In *Balsam v. Trancos Inc.*, the unlawful spams were sent from generic From Names that

11   did not *identify* anyone.  The trial court ruled, and the court of appeal affirmed in all respects,

12   that generic From Names violate the statute because they misrepresent *who* the emails are from:

13           ... The seven [ ] emails do not truly reveal who sent the email . . . . The [ ]
         "senders" identified in the headers of the [ ] seven emails do not exist or are
14       otherwise misrepresented, namely Paid Survey, Your Business, Christian Dating,
15       Your Promotion, Bank Wire Transfer Available, Dating Generic, and Join Elite. .
16       . . . Thus the sender information ("from") is misrepresented.

17   203 Cal. App. 4th 1083, 1088, 1090-91, 1093 (1st Dist. 2012), *petition for review denied*, 2012

18   Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied*, 2012 U.S. LEXIS 8423 (U.S.

19   Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013).  More

20   specifically, *Balsam* confirmed that generic From Names that "do not exist or are otherwise

21   misrepresented when they do not represent any real company and cannot be readily traced back

22   to the true owner/sender" violate the statute. *Id.* at 1093.  The Court affirmed the award of

23   $1,000 liquidated damages for the seven emails with misrepresented information in the From

24   Name field, even though most of the spams identified the advertiser in the body. *Id.* at 1091,

25   1093.  Therefore, truthful information in the body of a spam does not cure misrepresented

26   information contained in or accompanying the headers.

27   40.    Here, all of the spams have the From Name "Vehicle Service Plan" which is generic text

28   that misrepresents *who* the spam is really from.

29   41.    In *Rosolowski v. Guthy-Renker LLC*, the court permitted From Names that were not the

30   sender's official corporate name when the identity of the sender was readily ascertainable in the

31   body.  230 Cal. App. 4th 1403, 1407, 1416 (2d Dist. 2014).  However, the From Names in that

---

**11**
**COMPLAINT**

1    case (Proactiv and Wen Hair Care) were the advertiser's fanciful trademarks and well-known

2    brands with their own websites.  But here, unlike the spams in *Rosolowski*, all of the From

3    Names are generic; they are not well-known trademarks and/or brands readily associated with

4    Defendants.  There is no way an ordinary consumer, looking at the emails in his/her inbox, could

5    readily associate "Vehicle Service Plan" with Defendants, as opposed to PLATINUM's many

6    competitors.  Moreover, none of the spams at issue identify the sender in the body, so *Balsam*

7    would control, not *Rosolowski*.

8    42.    Even if a spam purports to identify the sender in the body, using that information alone as

9    described in *Rosolowski*, an ordinary consumer can still never be sure that the information is

10   true, because spammers can and often do make false claims.  For example, a "phishing" spam

11   might appear to come from Bank of America, even including BofA's logo and address in the

12   body of the spam, although the spam was not in fact sent by BofA.  *See e.g.* Federal Trade

13   Commission, *Phishing*, https://www. consumer.ftc.gov/articles/0003-phishing.  As another

14   example, in 2017 the Federal Trade Commission sued Daniel Croft for unlawful spamming.

15   Press Release, FTC Halts Imposter Scheme that Falsely Claimed Connection to the Agency

16   (Apr. 11, 2017), *available at https://www.ftc.gov/news-events/press-releases/2017/04/ftc-halts-*

17   *imposter-scheme-falsely-claimed-connection-agency*.  Among other false and misleading

18   representations, the body of the spams led consumers to believe that certain other parties had

19   been shut down by the FTC for putting spyware on their computers, that Croft was affiliated with

20   the FTC, and that the FTC had appointed Croft to contact consumers to inform them of the

21   lawsuit and to remove the spyware from their computers.  *FTC v. Daniel L. Croft*, No. 9:17-cv-

22   80425 (S.D. Fl. filed Apr. 3, 2017), complaint at ¶¶ 22-28 (Docket #1).  *Rosolowski* appears to

23   inherently assume that whatever appears on the face of a spam must be true.  But that assumption

24   is wrong.  *See e.g.* Cal. Business & Professions Code § 17529.1(i) ("Many spammers have

25   become so adept at masking their tracks that they are rarely found") and (j) ("actual spammers

26   can be difficult to track down due to some return addresses that show up on the display as

27   'unknown' and many others being obvious fakes").  As shown by the above examples, an

28   ordinary consumer can never ascertain the true identity of the sender of a spam simply by

29   looking at the body of the email, so *Rosolowski* is illogical, irrelevant, and inapplicable.  And

30   here, the spams do not identify the sender in the body, so the only way a recipient could even

31   attempt to identify the Marketing Partner responsible for the spam is to click on a link contained

12

**COMPLAINT**

1    in the spam or search the source code of the email – both of which require opening the email first

2    – in direct violation of *Balsam*.

3    **C.  Spams Sent From Domain Names Registered So As to Not Be Readily Traceable to the**

4    **Sender Violate Cal. Business & Professions Code § 17529.5(a)(2)**

5    43.    Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information contained

6    in or accompanying in email headers.

7    44.    Registration information for the domain names used to send spams is information

8    contained in or accompanying email headers.

9    45.    "[H]eader information in a commercial e-mail is falsified or misrepresented for purposes

10   of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual

11   sender on its face *nor* is readily traceable to the sender using a publicly available online database

12   such as WHOIS." *Balsam*, 203 Cal. App. 4th at 1101 (emphasis in original).

13   46.    229 of the 282 spams – 81% – were sent from domain names that were registered to

14   BILCO, an entity that does not exist, and that claims an address at a commercial mail receiving

15   agency without specifying the box number.

16   47.    Thus, for most of the spams at issue, Plaintiffs could not identify PLATINUM's

17   Marketing Partner by querying the Whois database. In those instances, the only way a recipient

18   could even attempt to identify the Marketing Partner responsible for the spam is to click on a link

19   contained in the spam or search the source code of the email – both of which require opening the

20   email first – in direct violation of *Balsam*.

21   **D.  Spams With False and Misrepresented Subject Lines Violate Cal. Business &**

22   **Professions Code § 17529.5(a)(2)**

23   48.    Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in email

24   headers.

25   49.    The Subject Line is part of email headers.[7]

26   ─────────────────────

27   [7] The Internet Engineering Task Force's RFC 5322 – which essentially defines how email works

28   – includes Subject Lines as part of email headers at ¶ 3.6.  Network Working Group, *RFC 5322*

29   (Oct. 2008), https://tools.ietf.org/html/rfc5322.  So does Wikipedia, LifeWire.com (a website

30   about technology), IBM, WhatIsMyIPAddress.com, and many other sources.  Congress may be

31   one of the few, if not the only, entity that believes that Subject Lines are not part of email

     headers.  (*See* 15 U.S.C. § 7702(8), defining "header information" as "the source, destination,

     and routing information attached to an electronic mail message, including the originating domain

     name and originating electronic mail address, and any other information that appears in the line

     identifying, or purporting to identify, a person initiating the message.")  But California is not

1    50.    All but three of the spams that Plaintiffs received contain Subject Lines with falsified

2    and/or misrepresented information.  Plaintiffs allege that these Subject Lines are *absolutely* false

3    and/or misrepresented and violate Section 17529.5(a)(2), as opposed to misleading *relative* to the

4    contents/body of the spams, which would be a violation of Section 17529.5(a)(3).

5    51.    The Subject Lines include:

6          • "[name or email address], please confirm your extended warranty plan."  This

7              Subject Line contains material misrepresentations because it falsely claims that

8              the recipient has (or at a minimum has applied for) an extended warranty plan

9              with PLATINUM.

10         • "[name or email address], Confirm your Auto Warranty Plan Extension."  This

11             Subject Line contains material misrepresentations because it falsely claims that

12             the recipient has an extended warranty plan with PLATINUM, and furthermore

13             has requested to extend it.

14         • "[name or email address], Your Auto Warranty is Running Out!" and "Attention

15             [name], Your Auto Warranty is Running Out!"  These Subject Lines contain

16             material misrepresentations because they falsely claim that not only does the

17             recipient has an extended warranty plan with PLATINUM, but that the plan's

18             contract term is about to expire.

19   All three Subject Line falsely reference a preexisting business relationship that does not in fact

20   exist, for the purpose of inducing the recipient into believing that the email is from an entity with

21   whom the recipient has done business, which is designed to lure the recipient into clicking and

22   opening the spam, and ultimately, sending money to PLATINUM.

23

24

25

26   bound by federal definitions.  In fact, in *Kleffman v. Vonage Holdings Inc.*, the California
     Supreme Court acknowledged the existence of the federal definition, and then immediately

27   stated that "A similar definition was proposed, *but not adopted*, during the legislative process
     that culminated in section 17529.5(a)(2)'s enactment."  49 Cal. 4th 334, 340 n.5 (2010)

28   (emphasis added).  Thus, it is not as though the California Legislature were unaware of the
     question of Subject Lines, for *Kleffman* expressly states that the Legislature rejected a definition

29   similar to the federal definition.  And by rejecting that definition, the California Legislature
     demonstrated its knowledge and understanding that Subject Lines are in fact part of email

30   headers.  Every spammer and court that cites *Kleffman* (and its progeny) for the proposition that

31   Subject Lines are not part of email headers is incorrect.

14

COMPLAINT

**E. PLATINUM is Strictly Liable for Advertising in Spams Sent By its Marketing Partners; PLATINUM's Marketing Partners are Also Liable on the Basis of Civil Conspiracy**

52.    PLATINUM is strictly liable for advertising in the spams at issue even if third parties hit the Send button. Cal. Bus. & Prof. Code § 17529(j), (k); *Hypertouch Inc. v. ValueClick Inc. et al* 192 Cal. App. 4th 805, 820-21 (2d Dist. 2011). Of course, PLATINUM's Marketing Partners are also liable for conspiring with PLATINUM to advertise in unlawful spams.

53.    Plaintiffs are informed and believe and thereon allege that no one forced PLATINUM to outsource any of its advertising to third party spam networks and spammers, but PLATINUM chose to contract with and partner with them (the Marketing Partners), including but not limited to the other named Defendants, to advertise its websites for the purpose of selling its products and services for a profit.

54.    Plaintiffs are informed and believe and thereon allege that PLATINUM and its Marketing Partners agreed to share the benefits and the risks of the marketing venture.

55.    Plaintiffs are informed and believe and thereon allege that PLATINUM and its Marketing Partners formed a conspiracy (or conspiracies) to advertise PLATINUM's websites and auto warranty product, by virtue of signing the Marketing Contracts. Defendants operated the conspiracy by sending and advertising in spams pursuant to the Marketing Contracts. Defendants committed wrongful acts pursuant to the conspiracy by advertising in unlawful spams, and Plaintiffs were damaged by receiving those unlawful spams.

56.    Plaintiffs are informed and believe and thereon allege that PLATINUM may have provided some of the content (i.e. From Names and Subject Lines) to its Marketing Partners, and PLATINUM and its Marketing Partners explicitly or tacitly agreed to use such content to send and advertise in unlawful spams, and PLATINUM's Marketing Partners directed themselves towards those wrongful goals by using that content in the spams that were sent. But, to the extent that PLATINUM's Marketing Partners may have created certain false and misrepresented elements of the spams (e.g. putting generic text in the From Name field and including false and misrepresented Subject Lines), PLATINUM's Marketing Partners must be held liable for violations of Section 17529.5 because such wrongful acts were committed in accordance with the general conspiracy to advertise PLATINUM's websites and the Marketing Partners' services.

57.    To the extent that some of the Marketing Partners (e.g. the spam networks) did not actually send the spams, and their domain names appear in the redirect links, they are still liable

1   for conspiring with PLATINUM to advertise its auto warranty product.  But for these Marketing

2   Partners' actions, the spams would not happened because these Marketing Partners provided

3   codes and links for other Marketing Partners to use to effectuate the sending of the spams and to

4   ultimately enable the recipients to buy the auto warranty product.

5   **F.  Some of PLATINUM's Marketing Partners Also Advertised in the Spams, Making**
**them Directly Liable Under the Statute**

6

7   58.      Plaintiffs allege that PLATINUM's Marketing Partners both sent *and* advertised in the

8   spams at issue.  Each spam contains domain names owned and controlled by whatever Marketing

9   Partner sent or was responsible for sending any particular spam.  Because the Marketing

10  Partners' domain names appear in the headers and source code of the spams, the Marketing

11  Partners are advertising in the spams.  Plaintiffs are informed and believe and thereon allege that

12  the Marketing Partners did this, in part, to advertise their own services as email marketers.

13  **G.  Plaintiffs Sue for Statutory Liquidated Damages; No Proof of Reliance or Actual**
**Damages is Necessary**

14  59.      The California Legislature defined liquidated damages to be $1,000 per spam.  Cal. Bus.

15  & Prof. Code § 17529.5(b)(1)(B)(ii).

16  60.      Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is

17  comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory

18  damages per junk fax, pursuant to Cal. Business & Professions Code § 17538.43(b).

19  61.      Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per

20  email is necessary to further the California Legislature's objective of protecting California

21  residents from unlawful spam.

22  62.      Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or

23  prove reliance on the advertisements contained in the spams, or purchase the goods and services

24  advertised in the spams.  *Recipients* of unlawful spam have standing to sue and recover

25  liquidated damages.  Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App.

26  4th at 820, 822-23, 828.  Plaintiffs do not seek actual damages in this Action, only liquidated

27  damages.  Cal. Bus. & Prof. Code § 17529.5(b)(1)(B).

28  **H.  Defendants' Actions Were Willful and Preclude any Reduction in Statutory Damages**

29  63.      Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam.

30  Cal. Bus. & Prof. Code § 17529.5(b)(2).  But, to secure the reduction, Defendants have the

31  burden of proof to demonstrate not only that they *established* practices and procedures to prevent

1    unlawful spamming, but also that they *implemented* those practices and procedures, and that the

2    practices and procedures are *effective*.

3    64.     Plaintiffs are informed and believe and thereon allege that Defendants have not

4    established and implemented, with due care, practices and procedures reasonably designed to

5    effectively prevent unsolicited commercial e-mail advertisements that are in violation of

6    Section 17529.5.

7    65.     Even if Defendants had established any practices and procedures to prevent advertising in

8    unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

9    66.     Even if Defendants reasonably designed practices and procedures to prevent advertising

10    in unlawful spam, such practices and procedures were not implemented so as to be effective.

11    67.     Moreover, Plaintiffs are informed and believe and thereon allege that Defendants

12    intended to deceive recipients of their spam messages through the use of generic/misrepresented

13    information in From Names, falsely-registered domain names used to send the spams, and

14    false/misrepresented Subject Lines, as described herein.

15    68.     Subject Lines and From Names do not write themselves. Domain names do not register

16    themselves. The false and misrepresented information contained in and accompanying the email

17    headers are not "clerical errors." Plaintiffs are informed and believe and thereon allege that

18    Defendants went to great lengths to create falsified and misrepresented information contained in

19    and accompanying the email headers in order to deceive recipients, Internet Service Providers,

20    and spam filters.

21    69.     Plaintiffs are informed and believe and thereon allege that Defendants intended to profit,

22    actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct

23    as described herein.

24

25                     **FIRST CAUSE OF ACTION**

26       **[Violations of California Restrictions on Unsolicited Commercial Email,**

27           **California Business & Professions Code § 17529.5]**

                      **(Against All Defendants)**

28

29    70.     Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

30    71.     Plaintiffs received most of the spams within one year prior to filing the Complaint. As

31    for the few spams that Plaintiffs received more than one year prior to filing the Complaint,

1 | Plaintiffs and PLATINUM entered into an agreement on November 9, 2018 to extend the statute

2 | of limitations through December 14, 2018.

3 | 72.      Defendants advertised in at least 282 unsolicited commercial email advertisements that

4 | Plaintiffs received at their California electronic mail addresses that had materially falsified

5 | and/or misrepresented information contained in or accompanying the email headers, in violation

6 | of Section 17529.5.  The unlawful elements of these spams represent willful acts of falsity and

7 | deception, rather than clerical errors.

8 | 73.      The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per

9 | email.

10 | 74.      Defendants have not established and implemented, with due care, practices and

11 | procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that

12 | would entitle them to a reduction in statutory damages.

13 | 75.      Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Section

14 | 17529.5(b)(1)(C).

15 | 76.      The attorneys' fees provision for a prevailing spam recipient is typical of consumer

16 | protection statutes and supported by Cal. Code of Civil Procedure § 1021.5.  By prosecuting this

17 | action, Plaintiffs expect to enforce an important right affecting the public interest and thereby

18 | confer a significant benefit on the general public or a large class of persons.  The necessity and

19 | financial burden of private enforcement is such as to make the award appropriate, and the

20 | attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

21 |

22 | WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

23 |

24 | **PRAYER FOR RELIEF**

25 | **(Against All Defendants)**

26 | A.    An Order from this Court declaring that Defendants violated California Business &

27 |       Professions Code § 17529.5 by advertising in unlawful spams.

28 | B.    Liquidated damages against Defendants in the amount of $1,000 for each of at least 282

29 |       unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least

30 |       $282,000, as follows:

31 |

**18**

**COMPLAINT**

| PLAINTIFF | DAMAGES SOUGHT | PLAINTIFF | DAMAGES SOUGHT |
|---|---|---|---|
| GREENBERG | $29,000 | MONROE | $53,000 |
| JUDGE | $79,000 | VAN CLEAVE | $58,000 |
| MANDEL | $63,000 | **TOTAL** | **$282,000** |

C.   Liquidated damages against PLATINUM, in the amount of $1,000 for each of the 282 unlawful spams ($282,000) that it advertised in that Plaintiffs received, according to proof.

D.   Liquidated damages against BILCO MEDIA INC., jointly and severally with PLATINUM, in the amount of $1,000 for each of the 229 unlawful spams ($229,000) that it advertised in and/or conspired to advertise in that Plaintiffs received, according to proof.

E.   Liquidated damages against ALLAN HUGHES, jointly and severally with PLATINUM, in the amount of $1,000 for each of the 53 unlawful spams ($53,000) that he advertised in and/or conspired to advertise in that Plaintiffs received, according to proof.

F.   Liquidated damages against each DOE 1-100 (when their true names are learned and they are added to the Action), jointly and severally with PLATINUM, in the amount of $1,000 for each of the unlawful spams they advertised in and/or conspired to advertise in that Plaintiffs received, according to proof.

G.   Attorneys' fees as authorized by Section 17529.5(b)(1)(C) and Cal. Code of Civil Procedure § 1021.5 for violations of Section 17529.5.

H.   Costs of suit.

I.   Such other and further relief as the Court deems proper.

THE LAW OFFICES OF DANIEL BALSAM

Date:_____December 11, 2018_____   BY:_____*Daniel L Balsam*_____

DANIEL BALSAM
Attorneys for Plaintiffs

19
**COMPLAINT**

Exhibit B

1  Jacob Harker (State Bar No. 261262)
2  LAW OFFICES OF JACOB HARKER
   582 Market Street, Suite 1007
3  San Francisco, CA 94104
   Tel: (415) 624-7602
4  Fax: (415) 684-7757
5  Email: jacob@harkercounsel.com
6
   Daniel L. Balsam (State Bar No. 260423)
7  THE LAW OFFICES OF DANIEL BALSAM
   2601C Blanding Avenue #271
8  Alameda, CA 94501
9  Tel: (415) 869-2873
   Fax: (415) 869-2873
10 Email: legal@danbalsam.com
11
12 Attorneys for Plaintiff

**FILED**

San Francisco County Superior Court

SEP 07 2017

CLERK OF THE COURT

BY: _____
Deputy Clerk

13
14         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
15
16       **COUNTY OF SAN FRANCISCO (UNLIMITED JURISDICTION)**

17 CARMEN SORIANO, an individual;      ) Case No.:  **CGC-17-561185**
18 MARY JOYCE VALLARTA, an individual; )
   MOLLY VONGCHAN, an individual;      )
19                                     ) **COMPLAINT FOR DAMAGES**
                                       )
20         Plaintiffs,                 ) 1. **VIOLATIONS OF CALIFORNIA**
21      v.                             )    **RESTRICTIONS ON UNSOLICITED**
                                       )    **COMMERCIAL E-MAIL (Cal. Bus. &**
22 LENDINGTREE, LLC, a Delaware limited )   **Prof. Code § 17529.5)**
   liability company; and             )
23 DOES 1-100;                         )
                                       )
24         Defendants.                 )

25
26 COME NOW PLAINTIFFS CARMEN SORIANO, *et al.* and file this Complaint for one cause
27 of action against Defendants LENDINGTREE, LLC *et al.* and allege as follows:
28
29         I. **INTRODUCTION AND SUMMARY OF THE COMPLAINT**
30 Plaintiffs CARMEN SORIANO, *et al.* bring this Action against professional spammers
31 LENDINGTREE, LLC ("LENDINGTREE"), and their third party advertising networks and

1  affiliates (aka "publishers"), for sending 138 unlawful unsolicited commercial emails ("spams")

2  to Plaintiffs.  A representative sample is attached to this Complaint as **Exhibit A**.

3  1.        Plaintiffs neither gave direct consent to receive commercial email advertisements from,

4  nor had a preexisting or current business relationship with, the entities who sent or advertised in

5  the spams.

6  2.        The spams all materially violated California Business & Professions Code § 17529.5

7  ("Section 17529.5") due to: a) materially false and deceptive information contained in or

8  accompanying the email headers (i.e. Subject Line), and/or b) Subject Lines misleading relative

9  to the contents of the emails.

10  3.        LENDINGTREE is strictly liable for advertising in spams sent by their third party

11  marketing agents.

12  4.        Spam recipients are not required to allege or prove reliance or actual damages to have

13  standing. *See* Bus. & Prof. Code § 17529.5(b)(1)(A)(iii).  Nevertheless, Plaintiffs did suffer

14  damages by receiving the spams. *See, e.g.,* Bus. & Prof. Code § 17529(d), (e), (g), (h).

15  However, Plaintiffs elect to recover statutory damages only and forego recovery of any actual

16  damages. *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

17  5.        This Court should award liquidated damages of $1,000 per email as provided by

18  Section 17529.5(b)(1)(B)(ii), and not consider any reduction in damages, because

19  LENDINGTREE and its marketing agents failed to implement reasonably effective systems to

20  prevent advertising in unlawful spams.  The unlawful elements of these spams represent willful

21  acts of falsity and deception, rather than clerical errors.

22  6.        This Court should award Plaintiffs their attorneys' fees pursuant to Section

23  17529.5(b)(1)(C). *See also* Code of Civil Procedure § 1021.5, providing for attorneys fees when

24  private parties bear the costs of litigation that confers a benefit on a large class of persons; here,

25  by reducing the amount of false and deceptive spam received by California residents.

26

27

28

29  ///

30  ///

31  ///

2

**COMPLAINT**

## II. PARTIES

**A. Plaintiffs**

7.     CARMEN SORIANO ("SORIANO") was domiciled in and a citizen of the State of California, when she received the spams at issue. The spams at issue were sent to SORIANO's email address livewpeace@yahoo.com that she ordinarily accesses from California.

8.     MARY JOYCE VALLARTA ("VALLARTA") was domiciled in and a citizen of the State of California, when she received the spams at issue. The spams at issue were sent to VALLARTA's email address fernjoy@yahoo.com that she ordinarily accesses from California.

9.     MOLLY VONGCHAN ("VONGCHAN") was domiciled in and a citizen of the State of California, when she received the spams at issue. The spams at issue were sent to VONGCHAN's email address msouvan@yahoo.com that she ordinarily accesses from California.

**B. Defendants**

10.     Plaintiffs are informed and believe and thereon allege that Defendant LENDINGTREE, LLC ("LENDINGTREE") is now, and was at all relevant times, a Delaware limited liability company with a principal place of business in Charlotte, North Carolina.

11.     Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 100, inclusive, and therefore sue said Defendants under the fictitious name of "DOE." Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner for causing the injuries and damages of which Plaintiffs complain. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator. When the identities of DOE Defendants 1-100 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege their identity and involvement with particularity.

12.     Defendants' joinder in this Action is proper pursuant to Code of Civil Procedure § 379 because Plaintiffs seek relief jointly and severally from Defendants arising form the same series of transactions and occurrences, and because common questions of law and fact as to Defendants

**COMPLAINT**

1  will arise in the Action.  The fact that all Defendants may not be implicated in all spams does not
2  bar joinder: "It is not necessary that each defendant be interested as to every cause of action or as
3  to all relief prayed for.  Judgment may be given against one or more defendants according to
4  their respective liabilities."  Code Civ. Proc. § 379.

6  ### III.  JURISDICTION AND VENUE
7  **A.  Jurisdiction is Proper in a California Superior Court**
8  13.    This California Superior Court has jurisdiction over the Action because Plaintiffs are
9  located in California, and the amount in controversy is more than $25,000.
10 **B.  Venue is Proper in San Francisco County**
11 14.    Venue is proper in San Francisco County (or indeed, *any* county in California of
12 Plaintiff's choosing) because LENDINGTREE is a foreign company that has not designated the
13 location and address of a principal office in California.  *See Easton v. Superior Court of San*
14 *Diego (Schneider Bros. Inc.)*, 12 Cal. App. 3d 243, 246 (4th Dist. 1970).

16 ### IV.  138 UNLAWFUL SPAMS
17 15.    Plaintiffs allege that Defendants engaged in tortious conduct: "wrongful act[s] other than
18 a breach of contract for which relief may be obtained in the form of damages or an injunction."
19 *See* Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Nov. 5, 2013).
20 16.    California's False Advertising Law, Business & Professions Code § 17500
21                prohibits "not only advertising which is false, but also advertising which[,]
22                although true, is either actually misleading or which has a capacity, likelihood or
                  tendency to deceive or confuse the public." . . . . [T]he UCL and the false
23                advertising law prohibit deceptive advertising even if it is not actually false.
24 *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted).
25 **A.  The Emails at Issue are "Spams"; Recipients and Counts**
26 17.    The emails at issue are "commercial email advertisements"[1] because they were initiated
27 for the purpose of advertising and promoting LENDINGTREE's products and services.

28
29
30 [1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the
   purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any
31 property, goods, services, or extension of credit."  Bus. & Prof. Code § 17529.1(c).

4

**COMPLAINT**

18.   The emails are "unsolicited commercial email advertisements"[2] because Plaintiffs did not give "direct consent"[3] to, and did not have a "preexisting or current business relationship"[4] with any Defendant.

19.   Plaintiffs did not consent or acquiesce to receive the spams at issue.  Plaintiffs did not waive or release any rights or claims related to the spams at issue.

20.   LENDINGTREE advertised in, sent, and/or conspired to send at least 138 unlawful spams that Plaintiffs received at their "California email addresses"[5] as shown below:

| PLAINTIFF | SPAMS RECEIVED | PLAINTIFF | SPAMS RECEIVED |
|-----------|----------------|-----------|----------------|
| SORIANO | 53 | VALLARTA | 26 |
| VONGCHAN | 59 | TOTAL | 138 |

21.   The spams are all unlawful because there is materially false and deceptive information contained in or accompanying the email headers as described in more detail below.

---

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []" Bus. & Prof. Code § 17529.1(*l*).

[5] "'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state." Bus. & Prof. Code § 17529.1(b).

5

**COMPLAINT**

**B.** **Spams With Absolutely False and Misrepresented Subject Lines Violate Business & Professions Code § 17529.5(a)(2)**

22.     Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

23.     The Subject Line is part of email headers.

24.     Many of the spams that Plaintiffs received contain Subject Lines with falsified and/or misrepresented information. Plaintiffs allege that these Subject Lines are *absolutely* false and/or misrepresented and violate Section 17529.5(a)(2), as well as being misleading *relative* to the contents/body of the spams, which would be a violation of Section 17529.5(a)(3) (discussed below).

25.     All or nearly all of the spams contain the same false or misrepresented subject line: "[recipient] Confirm Your Personal Loan #987." In reality, there was no Loan #987 (or any other number) to confirm.

**C.** **Spams With Subject Lines Misleading Relative to the Contents of the Spams Violate Business & Professions Code § 17529.5(a)(3)**

26.     Section 17529.5(a)(3) prohibits Subject Lines that are misleading relative to the contents or subject matter of the emails.

1.     All or most of the spams that Plaintiffs received contain Subject Lines misleading relative to the contents of subject matter of the emails, which violates Section 17529.5(a)(3).

27.     All or most of the spams contain subject line: "[recipient] Confirm Your Personal Loan #987," which implies: a) a preexisting relationship exists between LENDINGTREE and the recipient; b) based on the preexisting relationship, the recipient has been approved for a loan; c) the loan has a unique number; and d) the only step the recipient must take to finalize the loan is to confirm it.

28.     However, once the recipient opens the email, he/she learns that: a) there is no preexisting relationship between LENDINGTREE and the recipient; b) there is no loan approval; c) there is no unique loan number; and d) the recipient *cannot* finalize the loan by confirming it – because no loan exists. Rather, the recipient discovers that the email is an advertisement offering the recipient an opportunity to apply for a loan.

1    **D. LENDINGTREE is Strictly Liable for Spams Sent By its Marketing Agents**

2    29.    Plaintiffs are informed and believe and thereon alleges that LENDINGTREE contracted

3    with third party advertising networks and affiliates, including but not limited to the other

4    Defendants, to advertise its websites for the purpose of selling products and services for a profit.

5    30.    No one forced LENDINGTREE to outsource any of its advertising to third party spam

6    networks and spammers.

7    31.    Advertisers are liable for advertising in spams, even if third parties hit the Send button.

8             There is a need to regulate the advertisers who use spam, as well as the actual
9             spammers because the actual spammers can be difficult to track down due to
              some return addresses that show up on the display as "unknown" and many others
10            being obvious fakes and they are often located offshore.

11            The true beneficiaries of spam are the advertisers who benefit from the marketing
12            derived from the advertisements.

13   Bus. & Prof. Code § 17529(j)(k).

14            It is unlawful [ ] *to advertise in* a commercial email advertisement [ ] under any of
15            the following circumstances…

16   Bus. & Prof. Code § 17529.5 (emphasis added).  Of course, LENDINGTREE's agents are also

17   liable for sending unlawful spams.  *See Balsam*, generally.

18   32.    In fact, in *Hypertouch Inc. v. ValueClick Inc. et al*, the court of appeal held that

19   advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were

20   sent by third parties.

21            *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a
22            commercial e-mail advertisement" that contains any of the deceptive statements
              described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not
23            limited to entities that actually send or initiate a deceptive commercial e-mail, but
24            applies more broadly to any entity that advertises in those e-mails.

25            Thus, like other California statutes prohibiting false or misleading business
26            practices, the statute makes an entity *strictly liable* for advertising in a
              commercial e-mail that violates the substantive provisions described in section
27            17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails
              had been sent* or had any intent to deceive the recipient.
28

29   192 Cal. App. 4th 805, 820-21 (2d Dist. 2011) (emphasis added).  The court did not find that this

30   was an arbitrary requirement; rather, the court identified sound policy reasons behind the

31   Legislature's decision to create a strict liability statute.  *Id.* at 829.

---

7

**COMPLAINT**

**E. Plaintiffs Sue for Statutory Liquidated Damages; No Proof of Reliance or Actual Damages is Necessary**

33.     The California Legislature defined liquidated damages to be $1,000 per spam.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

34.     Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

35.     Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

36.     Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams.  *Recipients* of unlawful spam have standing to sue and recover liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

37.     However, Plaintiffs did suffer damages by receiving the unlawful spams advertising LENDINGTREE's products and services in the state of California, at his California email addresses.  Bus. & Prof. Code § 17529(d), (e), (g), (h).  Regardless, Plaintiffs do not seek actual damages in this Action, only liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(B).

**F. Defendants' Actions Were Willful and Preclude any Reduction in Statutory Damages**

38.     Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam.  Bus. & Prof. Code § 17529.5(b)(2).  But, to secure the reduction, Defendants have the burden of proof to demonstrate not only that *established* practices and procedures to prevent unlawful spamming, but also that they *implemented* those practices and procedures, and that the practices and procedures are *effective*.

39.     Plaintiffs are informed and believe and thereon allege that Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

40.     Even if Defendants had established any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

41.     Even if Defendants reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented so as to be effective.

42.     Moreover, Plaintiffs are informed and believe and thereon allege that Defendants intended to deceive recipients of their spam messages through the use of falsified and/or misrepresented information in Subject Lines as described herein.

43.     Subject Lines do not write themselves.  The false and misrepresented information contained in and accompanying the email headers are not "clerical errors."

44.     Plaintiffs are informed and believe and thereon allege that Defendants went to great lengths to create falsified and misrepresented information contained in and accompanying the email headers in order to deceive recipients.  Plaintiffs are informed and believe and thereon allege that Defendants intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

## FIRST CAUSE OF ACTION

### [Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5] (Against All Defendants)

45.     Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

46.     Plaintiffs received the spams at issue within one year prior to filing this Complaint.

47.     LENDINGTREE advertised in, sent, and/or caused to be sent at least 138 unsolicited commercial email advertisements to Plaintiffs' California electronic mail addresses that had materially falsified and/or misrepresented information contained in or accompanying the email headers and Subject Lines misleading as to the contents of the email, in violation of Section 17529.5.  The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

48.     The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per email.

49.     Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

50.     Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Section 17529.5(b)(1)(C).

51.     The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5.  By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## PRAYER FOR RELIEF

### (Against All Defendants)

A.     An Order from this Court declaring that Defendants violated California Business & Professions Code § 17529.5 by advertising in and sending unlawful spams.

B.     Liquidated damages against Defendants in the amount of $1,000 for each of at least 138 unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $138,000 as set forth below:

| PLAINTIFF | DAMAGES SOUGHT | PLAINTIFF | DAMAGES SOUGHT |
|-----------|---------------|-----------|----------------|
| SORIANO | $53,000 | VALLARTA | $26,000 |
| VONGCHAN | $59,000 | TOTAL | $138,000 |

C.     Liquidated damages against LENDINGTREE in the amount of $138,000 based on 138 spams that it sent, hired others to send, or otherwise conspired with others to send, to Plaintiff.

D.     Liquidated damages against DOES 1-100 (when their true names are learned) in the amount of $138,000 based on 138 spams that they sent, hired others to send, or otherwise conspired with others to send, to Plaintiffs.

E.     Attorneys' fees as authorized by Section 17529.5(b)(1)(C) and Code of Civil Procedure § 1021.5 for violations of Section 17529.5.

F.     Costs of suit.

10

COMPLAINT

G.      Such other and further relief as the Court deems proper.

THE LAW OFFICES OF JACOB HARKER

Date:   September 7, 2017            BY:_____

JACOB HARKER
Attorneys for Plaintiff

**11**

**COMPLAINT**

# EXHIBIT "A"

# EXHIBIT A

Print                                                    https://mg.mail.yahoo.com/neo/launch?.rand=c65bmgavkaed#5112633102

**Subject:** msouvan Confirm Your Personal Loan #987
**From:** LendingTree Partners (LendingTree.Partners@hysoansy.com)
**To:** msouvan@yahoo.com;
**Date:** Monday, November 14, 2016 3:30 AM

## msouvan Confirm Your Personal Loan #987

Print                                https://mgmail.yahoo.com/neo/launch?.rand=s65trngzvkscd#5112633102



✔ Debt Consolidation   ✔ Car Financing      ✔ Business

✔ Home Buying          ✔ Medical Expenses   ✔ Wedding



**Advertising Disclosures**

LendingTree, LLC dba LendingTreePartners.com is a duly licensed mortgage broker, as required, with its
main office located at 11115 Rushmore Dr., Charlotte, NC 28277, Telephone number 1-877-703-8733.
NMLS Unique Identifier #1136

Print                                                    https://mg.mail.yahoo.com/neo/launch?.rand=e65trngav4aedtf5112633102

This is a commercial email from LendingTreePartners.com and may be recurring
Unsubscribe | Privacy Policy | Terms of Use | Disclosures and Licenses | Advertising Disclosures



This is an advertisement. We respect your privacy and pledge not to abuse your email address. Your email has
been verified to receive offers from one of our affiliates. If you would like to unsubscribe from future emails of
this type, please "Click here to unsubscribe" or write to AdReaction Sheikh Zayed Road, Al Wasl Area
Emarat Atrium Building Office 432, Dubai, P.O. Box 112344

Exhibit C

Jacob Harker (State Bar No. 261262)
LAW OFFICES OF JACOB HARKER
582 Market Street, Suite 1007
San Francisco, CA 94104
Tel: (415) 624-7602
Fax: (415) 684-7757
Email: jacob@harkercounsel.com

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Avenue #271
Alameda, CA 94501
Tel: (415) 869-2873
Fax: (415) 869-2873
Email: legal@danbalsam.com

Attorneys for Plaintiffs

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Francisco

**12/20/2016**
Clerk of the Court
BY:EDNALEEN ALEGRE
    Deputy Clerk

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN FRANCISCO (UNLIMITED JURISDICTION)

| | |
|---|---|
| MIRA BLANCHARD, an individual;<br>RYAN COOPER, an individual;<br>MARK DAVIS, an individual;<br>CHANDRA GREENBERG, an individual;<br>JAMES JOBE, an individual;<br>DEBRA KOTTONG, an individual;<br>OGEN LAMA, an individual;<br>MARIA MARQUEZ, an individual;<br>VANESSA POWERS, an individual; and<br>GAIL TAYLOR, an individual;<br><br>        Plaintiffs,<br>   v.<br><br>FLUENT, INC., a Delaware corporation;<br>REWARD ZONE USA, LLC, a Delaware<br>limited liability company;<br>REWARDSFLOW, LLC, a Delaware limited<br>liability company;<br>AMERICAN PRIZE CENTER, LLC, a<br>Delaware limited liability company;<br>MOHIT SINGLA, an individual; | Case No.:    CGC-16-554299<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>  **1. VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)** |

1
FIRST AMENDED COMPLAINT

1  SAUPHTWARE INC., a Nevada corporation;  )
2  ADREACTION, a business entity of unknown  )
   formation;  )
3  ANGLO IDITECH, a business entity of  )
   unknown formation;  )
4  FORTANALYSIS8 DEVELOP, a business  )
5  entity of unknown formation;  )
   CONCEPT NETWORK, a business entity of  )
6  unknown formation;  )
7  DIEGO RUFINO, an individual;  )
   PRISCILA AREKELIAN, an individual;  )
8  ANDRES MARY, an individual; and  )
9  DOES 1-1,000;  )
                                                              )
10                    Defendants.  )
11

12  COME NOW PLAINTIFFS MIRA BLANCHARD *et al* and file this First Amended Complaint

13  for one cause of action against Defendants FLUENT, INC. *et al* and allege as follows:

14

15                 I.  **INTRODUCTION AND SUMMARY OF THE COMPLAINT**

16  1.       Plaintiffs MIRA BLANCHARD *et al* bring this Action against professional spammers

17  FLUENT, INC. and related companies, and their third party advertising networks and affiliates

18  (aka "publishers"), for sending almost 1,300 unlawful unsolicited commercial emails ("spams")

19  to Plaintiffs.  A representative sample appears on the next page.

20  2.       No Plaintiff gave direct consent to receive commercial email advertisements from, or had

21  a preexisting or current business relationship with, the entities advertised in the spams.

22  3.       The spams all materially violated California Business & Professions Code § 17529.5

23  ("Section 17529.5") due to: a) materially false and deceptive information contained in or

24  accompanying the email headers (i.e. From Name, Sender Email Address, and Subject Line); b)

25  Subject Lines misleading relative to the contents of the emails; and/or c) the use of third parties'

26  domain names without permission.

27  4.       FLUENT, INC. and the other ADVERTISER DEFENDANTS are strictly liable for

28  advertising in spams sent by their third party marketing agents, as are the marketing agents

29  themselves.

30

31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31

| Subject: | Get a $100 Walmart Gift Card FREE! |
| From: | SavingcenterUsa (service@mondaydress.com) |
| To: | |
| Date: | Wednesday, December 31, 1969 4:00 PM |

vsp0930.PLEASE READ THIS: Walmart Gift Card Pending



FIRST AMENDED COMPLAINT

5.      Spam recipients are not required to allege or prove reliance or actual damages to have standing.  *See* Bus. & Prof. Code § 17529.5(b)(1)(A)(iii).  Nevertheless, Plaintiffs did suffer damages by receiving the spams.  *See, e.g.,* Bus. & Prof. Code § 17529(d), (e), (g), (h). However, Plaintiffs elect to recover statutory damages only and forego recovery of any actual damages.  *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

6.      This Court should award liquidated damages of $1,000 per email as provided by Section 17529.5(b)(1)(B)(ii), and not consider any reduction in damages, because FLUENT, INC. and the other ADVERTISER DEFENDANTS, and their third party marketing agents, failed to implement reasonably effective systems to prevent advertising in unlawful spams.  The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

7.      This Court should award Plaintiffs their attorneys' fees pursuant to Section 17529.5(b)(1)(C).  *See also* Code of Civil Procedure § 1021.5, providing for attorneys fees when private parties bear the costs of litigation that confers a benefit on a large class of persons; here, by reducing the amount of false and deceptive spam received by California residents.

## II. PARTIES

### A. Plaintiffs

8.      MIRA BLANCHARD ("BLANCHARD") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to BLANCHARD's email address mira.blanchard@yahoo.com that she ordinarily accesses from California.

9.      RYAN COOPER ("COOPER") was domiciled in and a citizen of the State of California, when he received the spams at issue.  The spams at issue were sent to COOPER's email address rryan57@yahoo.com that he ordinarily accesses from California.

10.     MARK DAVIS ("DAVIS") was domiciled in and a citizen of the State of California, when he received the spams at issue.  The spams at issue were sent to DAVIS's email address mdavis1994@yahoo.com that he ordinarily accesses from California.

11.     CHANDRA GREENBERG ("GREENBERG") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to

1    GREENBERG's email address prettywoman1261@yahoo.com that she ordinarily accesses from

2    California.

3    12.     JAMES JOBE ("JOBE") was domiciled in and a citizen of the State of California, when

4    he received the spams at issue.  The spams at issue were sent to JOBE's email address

5    jamesjobe14@yahoo.com that he ordinarily accesses from California.

6    13.     DEBRA KOTTONG ("KOTTONG") was domiciled in and a citizen of the State of

7    California, when she received the spams at issue.  The spams at issue were sent to KOTTONG's

8    email address fadedjeens@yahoo.com that she ordinarily accesses from California.

9    14.     OGEN LAMA ("LAMA") was domiciled in and a citizen of the State of California, when

10    he received the spams at issue.  The spams at issue were sent to LAMA's email address

11    aaturu05@yahoo.com that he ordinarily accesses from California.

12    15.     MARIA MARQUEZ ("MARQUEZ") was domiciled in and a citizen of the State of

13    California, when she received the spams at issue.  The spams at issue were sent to MARQUEZ's

14    email address miria.marquez@mail.com that she ordinarily accesses from California.

15    16.     VANESSA POWERS ("POWERS") was domiciled in and a citizen of the State of

16    California, when she received the spams at issue.  The spams at issue were sent to POWERS'

17    email address vsp0930@yahoo.com that she ordinarily accesses from California.

18    17.     GAIL TAYLOR ("TAYLOR") was domiciled in and a citizen of the State of California,

19    when she received the spams at issue.  The spams at issue were sent to TAYLOR's email address

20    cgailtaylor@aol.com that she ordinarily accesses from California.

21    18.     Plaintiffs' joinder in this Action is proper pursuant to Code of Civil Procedure § 378

22    because Plaintiffs seek relief based on the same series of transactions or occurrences: all received

23    similar spams in the same general time period advertising FLUENT, INC. and the other

24    ADVERTISER DEFENDANTS' websites, and all of those spams were sent by FLUENT, INC.,

25    the other ADVERTISER DEFENDANTS, or their marketing agents.  The same questions of law

26    (e.g., violations of Section 17529.5, strict liability) and fact (e.g., direct consent, practices and

27    procedures to prevent advertising in unlawful spam) will arise in this Action.  The fact that each

28    Plaintiff does not sue for *exactly* the same spams does not bar joinder: "It is not necessary that

29    each plaintiff be interested as to every cause of action or as to all relief prayed for.  Judgment

30    may be given for one or more of the plaintiffs according to their respective right to relief."  Code

31    Civ. Proc. § 378(b).

**B. Defendants**

    *1. Advertiser Defendants*

19.    Plaintiffs are informed and believe and thereon allege that Defendant FLUENT, INC. ("FLUENT") is now, and was at all relevant times, a Delaware corporation with its principal place of business in New York, New York.  Plaintiffs are informed and believe and thereon allege that FLUENT is responsible for advertising in some or all of the spams at issue in this lawsuit.

20.    Plaintiffs are informed and believe and thereon allege that Defendant REWARD ZONE USA, LLC ("REWARD ZONE"), is now, and was at all relevant times, a Delaware limited liability company affiliated with FLUENT.  Plaintiffs are informed and believe and thereon allege that REWARD ZONE is responsible for advertising in some or all of the spams at issue in this lawsuit.  Plaintiffs are informed and believe and thereon allege that REWARD ZONE registered the following domain names corresponding to the "landing websites" hyperlinked from certain spams at issue in this Action: webpromotionsusa.com, retailusapromo.com, promotionsusaweb.com, promotionalretail.com, and electronicpromotionscenter.com.

21.    Plaintiffs are informed and believe and thereon allege that Defendant REWARDSFLOW, LLC ("REWARDSFLOW"), is now, and was at all relevant times, a Delaware limited liability company affiliated with FLUENT.  Plaintiffs are informed and believe and thereon allege that REWARDSFLOW is responsible for advertising in some or all of the spams at issue in this lawsuit.

22.    Plaintiffs are informed and believe and thereon allege that Defendant AMERICAN PRIZE CENTER, LLC ("AMERICAN PRIZE CENTER"), is now, and was at all relevant times, a Delaware limited liability company affiliated with FLUENT.  Plaintiffs are informed and believe and thereon allege that AMERICAN PRIZE CENTER is responsible for advertising in some or all of the spams at issue in this lawsuit.  Plaintiffs are informed and believe and thereon allege that AMERICAN PRIZE CENTER registered the following domain names corresponding to the "landing websites" hyperlinked from certain spams at issue in this Action: surveysandpromotionsonline.com, electronics-sweepstakes.com, and retailpromotionsonline.com.

23.    Plaintiffs are informed and believe and thereon allege that Defendant MOHIT SINGLA ("SINGLA"), is now, and was at all relevant times, an individual who resides in New York State

1   and who is affiliated with FLUENT, REWARD ZONE, REWARDSFLOW, and/or AMERICAN

2   PRIZE CENTER.  Plaintiffs are informed and believe and thereon allege that SINGLA is

3   responsible for advertising in some or all of the spams at issue in this Action.  Plaintiffs are

4   informed and believe and thereon allege that SINGLA personally registered the following

5   domain names corresponding to the "landing websites" hyperlinked from certain spams at issue

6   in this Action: restaurantpromotionsusa.com, onlineretailpromotion.com,

7   onlinepromotionscenter.com, promotionalsurveys.com, electronicpromotion.com,

8   nationalconsumercenter.com, retailpromotionusa.com, consumersrvycnter.com,

9   surveysandpromotions.com.

10   24.      Plaintiffs are informed and believe and thereon allege that FLUENT, REWARD ZONE,

11   REWARDSFLOW, and AMERICAN PRIZE CENTER are interrelated entities.  Plaintiffs do

12   not know the exact nature of the relationship between these entities.  Plaintiffs are also informed

13   and believe and thereon allege that there is an interrelationship between SINGLA and FLUENT,

14   REWARD ZONE, REWARDSFLOW, and AMERICAN PRIZE CENTER.  Plaintiffs

15   hereinafter refer to FLUENT, REWARD ZONE, REWARDSFLOW, AMERICAN PRIZE

16   CENTER, and SINGLA collectively as "ADVERTISER DEFENDANTS."

17          *2.  Publisher Defendants*

18   25.      Plaintiffs are informed and believe and thereon allege that Defendant SAUPHTWARE

19   INC. dba PANDA MAIL ("PANDA") is now, and was at all relevant times, a Nevada

20   corporation with its principal place of business in Las Vegas, Nevada.  Plaintiffs are informed

21   and believe and thereon allege that PANDA sent at least 75 of the spams at issue in this Action

22   using the following domain names: badbizbulletin.com, bangappletime.com, beggarsblog.com,

23   blogconnections.com, blogdater.com, bloggaro.com, hothotclick2.com, hitinternet.com,

24   homechurchblog.com, liquidbulletin.com, meetingsitevisit.com, newsbookonline.com,

25   propertysupersite.com, quickclickweb.com, sendbookbasket.com, sendnewsrelease.com,

26   softarinoclick.com, superemailnews.com, superglobalnews.com, and usamoblog.com.

27   26.      Plaintiffs are informed and believe and thereon allege that Defendant ADREACTION is

28   now, and was at all relevant times, a business entity of unknown formation with a principal place

29   of business in Dubai, United Arab Emirates.  Plaintiffs are informed and believe and thereon

30   allege that ADREACTION sent at least 384 of the spams at issue in this Action using the

31   following domain names: akykoowh.com, aluckeec.com, and zitsydse.com, aneuil.com,

1    aroaness.com, asulrack.com, balkalike.com, booshidr.com, buzeecko.com, carsdotcomnews.com,
2    chargooj.com, cheesteh.com, cheesteh.com, chivoods.com, cleotidxzz.com, conottris.com,
3    cugukroa.com, culrehoz.com, datasafestornet.com, deeftung.com, dishisto.com, dishisto.com,
4    ecmeedsa.com, eengimpy.com, eengurd.com, eepoolsy.com, eertoarg.com, eetheemt.com,
5    eglolels.com, erevycme.com, estekarg.com, estekarg.com, ezzytophosts.com, feeptokr.com,
6    foajoord.com, gazognus.com, glalreef.com, glefelse.com, gribeest.com, groadsoo.com,
7    guitarif.com, hallation.com, harbornan.com, hecmoams.com, hecycmuf.com, hoagridr.com,
8    irseexah.com, jardoats.com, keelteew.com, launcedb.com, lecyltoo.com, lokremsu.com,
9    lutchoad.com, lutchoad.com, matchlinax.com, megaduoponet.com, migracku.com,
10   millynishe.com, moongoad.com, mopsycke.com, multaneasdse.com, neerdams.com,
11   nicentre.com, oalsoors.com, oampyksu.com, oangyshe.com, oarulsee.com, oastinge.com,
12   odensyxa.com, oghadsyf.com, ognalsek.com, okudsans.com, ooceedso.com, oocoadre.com,
13   oodrotch.com, oodrotch.com, ooftolse.com, ooghokej.com, oogroats.com, oohignee.com,
14   ookroarga.com, oolroard.com, oompugum.com, oossugne.com, othatcha.com, othygnee.com,
15   otsughit.com, paintine.com, phaksihe.com, pitulationa.com, poorgirg.com, porequill.com,
16   priters.com, psihosoo.com, psunsird.com, raadah.com, shassegh.com, sopopsat.com,
17   spentain.com, stujytch.com, thifirgu.com, throader.com, tregill.com, ucaksoam.com,
18   uchussux.com, uchussux.com, uftursif.com, uhoolsoc.com, urimpygh.com, urtumtee.com,
19   urtumtee.com, voaptads.com, weapoll.com, whoackoo.com, whookryk.com, whouted.com,
20   wipsoang.com, woopsamt.com, xoabeegr.com, xokrihyt.com, xoogleem.com, xoogleps.com,
21   ychempac.com, ypserdoo.com, yshonsee.com, yshonsee.com, ytheerge.com, ytheerge.com,
22   zaltyboa.com.
23   27.    Plaintiffs are informed and believe and thereon allege that Defendant ANGLO IDITECH
24   ("ANGLO") is now, and was at all relevant times, a business entity of unknown formation, with
25   a principal place of business in Bloomfield, New Jersey.  Plaintiffs are informed and believe and
26   thereon allege that ANGLO is neither registered with the New Jersey Secretary of State nor *any*
27   Secretary of State (or its equivalent) in the United States.  Plaintiffs are informed and believe and
28   thereon allege that ANGLO uses the address 590 Bloomfield Ave. #376, Bloomfield, New Jersey
29   7003 [*sic*; not a real ZIP code] to register its domain names used in spamming.  Plaintiffs are
30   informed and believe and thereon allege that ANGLO's address is a box at a branch of The UPS
31   Store and that ANGLO does not actually conduct any business from that address.  Plaintiffs are

1  informed and believe and thereon allege that ANGLO uses a UPS Store box as its address for the

2  specific purpose of being "untraceable" by recipients of its spam emails.  Plaintiffs are informed

3  and believe and thereon allege that ANGLO sent at least 16 of the spams at issue in this Action

4  using the following domain name: apdantag.com.

5  28.      Plaintiffs are informed and believe and thereon allege that Defendant FORTANALYSIS8

6  DEVELOP ("FORTANALYSIS8") is now, and was at all relevant times, a business entity of

7  unknown formation, with a principal place of business in Slidell, Louisiana.  Plaintiffs are

8  informed and believe and thereon allege that FORTANALYSIS8 is neither registered with the

9  Louisiana Secretary of State nor *any* Secretary of State (or its equivalent) in the United States.

10  Plaintiffs are informed and believe and thereon allege that FORTANALYSIS8 uses the address

11  857 Brownswitch Road. #308, Slidell, Louisiana 70458 to register its domain names used in

12  spamming.  Plaintiffs are informed and believe and thereon allege that FORTANALYSIS8's

13  address is a box at a branch of The UPS Store and that FORTANALYSIS8 does not actually

14  conduct any business from that address.  Plaintiffs are informed and believe and thereon allege

15  that FORTANALYSIS8 uses a UPS Store box as its address for the specific purpose of being

16  "untraceable" by recipients of its spam emails.  Plaintiffs are informed and believe and thereon

17  allege that FORTANALYSIS8 sent at least 13 of the spams at issue in this Action using the

18  following domain name: cleachowlicort.com.

19  29.      Plaintiffs are informed and believe and thereon allege that Defendant CONCEPT

20  NETWORK ("CONCEPT") is now, and was at all relevant times, a business entity of unknown

21  formation, with a principal place of business in Seattle, Washington.  Plaintiffs are informed and

22  believe and thereon allege that CONCEPT is neither registered with the Washington Secretary of

23  State nor *any* Secretary of State (or its equivalent) in the United States.  Plaintiffs are informed

24  and believe and thereon allege that CONCEPT NETWORK uses the address 228 Park Avenue S.

25  #31190, Seattle, Washington 98104-2818 to register its domain names used in spamming.

26  Plaintiffs are informed and believe and thereon allege that CONCEPT's alleged address is

27  nonexistent.  Plaintiffs are informed and believe and thereon allege that CONCEPT uses a

28  nonexistent address for the specific purpose of being "untraceable" by recipients of its spam

29  emails.  Plaintiffs are informed and believe and thereon allege that CONCEPT sent at least 9 of

30  the spams at issue in this Action using the following domain name: conceptnetworkgroup.com.

31

1    30.    Plaintiffs are informed and believe and thereon allege that Defendant DIEGO RUFINO

2    ("RUFINO"), is now, and was at all relevant times, an individual with a principal place of

3    business in Atlanta, Georgia.  Plaintiffs are informed and believe and thereon allege that DIEGO

4    RUFINO uses the address P.O. Box 105603 #31190, Atlanta, Georgia 30348-5603 to register his

5    domain names used in spamming.  Plaintiffs are informed and believe and thereon allege that

6    RUFINO uses a P.O. Box for the specific purpose of being "untraceable" by recipients of his

7    spam emails.  Plaintiffs are informed and believe and thereon allege that RUFINO sent at least 7

8    of the spams at issue in this Action using the following domain names: aliveandsmartclub.com,

9    findmeonmyweb.com, findyourfavoriteteam.com, justirresistibleweb.com,

10   moreservices4less.com, myfuturebusyness.com, and visitandjustenjoy.com.

11   31.    Plaintiffs are informed and believe and thereon allege that Defendant PRISCILA

12   AREKELIAN ("AREKELIAN") is now, and was at all relevant times, an individual, with a

13   principal place of business in Las Vegas, Nevada.  Plaintiffs are informed and believe and

14   thereon allege that AREKELIAN uses the address P.O. Box 29502 #31190, Las Vegas, Nevada

15   89126-9502 to register her domain names used in spamming.  Plaintiffs are informed and believe

16   and thereon allege that AREKELIAN uses a P.O. Box for the specific purpose of being

17   "untraceable" by recipients of his spam emails.  Plaintiffs are informed and believe and thereon

18   allege that AREKELIAN sent at least 7 of the spams at issue in this Action using the following

19   domain names: espchatsocial.com and wtxeres.com.

20   32.    Plaintiffs are informed and believe and thereon allege that Defendant ANDRES MARY

21   ("MARY"), is now, and was at all relevant times, an individual with a principal place of business

22   in San Francisco, California.  Plaintiffs are informed and believe and thereon allege that MARY

23   uses the address 548 Market St. #85748, San Francisco, California 94104 to register his domain

24   names used in spamming.  Plaintiffs are informed and believe that MARY's address is a virtual

25   box at Earth Class Mail, a commercial mail receiving agency ("CMRA").  Plaintiffs are informed

26   and believe and thereon allege that MARY uses a CMRA box for the specific purpose of being

27   "untraceable" by recipients of his spam emails.  Plaintiffs are informed and believe and thereon

28   allege that MARY sent at least 6 of the spams at issue in this Action using the following domain

29   names: moreservices4less.com, onlinedatinglovers.com, superdicountcoupon.com, vocational-

30   test.com, wantcouplenow.com.

31

*3. DOE Defendants*

33.      Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 1,000, inclusive, and therefore sue said Defendants under the fictitious name of "DOE." Plaintiffs allege that certain Defendant(s) designated herein as DOES registered the following domain names used to send some of the spams at issue in a manner so as to prevent email recipients from discovering those DOE Defendants' true identities: 00393klm.com, 0e8klrc7.com, 0s80gz9u.com, 12y6w19h.com, 1n1z945e.com, 1nz50.com, 34131wn5.com, 3g0z60gv.com, 4hx7jqs7.com, 4wee5m41.com, 536314l4.com, 54vd8js7.com, 5mk2k7tg.com, 605dn534.com, 6662was6.com, 7oeb7xx9.com, 94801mbv.com, 99quality.net, 99tard.com, 9stylisheet.net, 9u0n8x1c.com, a44kbk69.com, aassurance.net, accessrun.com, actualexperts.net, additionalbook.com, adenalgy.com, advancedactivities.net, affectiveevaluation.com, agent-pays.sortcom.net, agroverdad.com.ar, alertmembers.net, alternativeview.net, alwayslivenetshop.com, and zz2xl5ds.com, anecdotalreports.net, angularea.com, antipaschool.com, apowerrip.com, areamage.com, areassist.com, asiandate.com, asianmarkets.net, astronomyprogram.net, athework.com, attentioncaller.com, autopricebit.com, autosolutionprograms.com, baseaffiliteog.com, basesamum.com, beamsmanager.com, beautifulmkt.com, becentre.net, bedbathgifters.com, bestoferation.com, bestofsshope.com, bestthinking.net, bestupmarekt.com, betamarekt.com, betax24offre.com, betharnolder.com, bharatmatrimony.com, bigcentralmediamkt.com, bikinipin.com, bisnu1sion.com, bookcity.ro, booksontheknob.org, boutiqueak.com, brandmake.net, broadcastoutlets.com, brunsonious.com, buildingdoorstep.com, bxdjkxh.com, c0nsumerism.com, caftumti.com, calmklein.net, cam481jb.com, cardcommitteeweb.com, carsdotcomnews.com, castoffrly.com, chamarekt.com, chamarekt0.com, chosend.com, chron.com, climbtap.com, company24x7.com, consciouslyselecting.com, constantalert.net, copingstrategies.net, correctobservation.com, createways.net, crystalsize.com, cwjobsmail.com, dailymshop-send.eu, data0ffre1.com, dataforevers.com, datamarketingcorp.com, datateama.com, datingfocus.net, dazeddigital.com, dealwebzine.com, decisiveword.com, defeate.com, defervescentre.com, dictionarychoice.com, differentgeologic.com, digihelpsell.com, digioffres.com, dilleplasa.org, donpornogratis.com, dreambles.net, earsorehands.com, edu.gm, efficientsolution.net, eidjc.com, eiserance.net, ek5245d4.com, elephanttrainer.net, embermight.com, emiaterc.com, emplinetred.net, emsc.net, entrepreneurialgeneration.net, entrepzoom.com, epgrup.com, epik.com, eslite.com,

1  eugenita.com, existingproduct.com, expressez.com, extensivestudy.net, eyuje574.com,

2  f64mail.eu, falcongoldinternship.com, familiartale.net, faracross.net, fatparadox.net,

3  federalinvestigation.net, filesleya.com, foroffre.com, france-discount.fr, francetvinfo.fr,

4  fruition.net,  funspage.com, generationretails.com, Github.com, gladask.com,

5  globalmarketteam.com, grandstanddreams.com, groupyorkshiretalk.com,

6  harlemshakeoffers.com, hh.ru, hitprodu.com, hopefind.net, housefarms.net, hoymanager.com,

7  iceages.net, identicalterms.net, inboxdollars.com, inboxpounds.com,

8  indicatingericssoncalled.com, innateability.net, inquirecanyonlands.com, instaoffre.com,

9  instrumentalworks.net, insurancious.net, internalorgan.net, iranfile.ir, jobenvironments.com,

10  jobonrole.com, justoffre.com, juvela.com, kaplanced.com, kdtm90a4.com, keepplace.net,

11  kotak.com, kupiskidku.com, laborpractices.net, landhistory.net, leadingcast.net,

12  learningquickly.net, leboncoin.fr,  legislatiamuncii.ro, li2whntc.com, lifestyleshield.com,

13  liquidbulletin.com, loadingimages.net, loadingimages.net, localified.com, logdater.com, mail-

14  cidbotanicals.com, mailsamolatina.com, mainoffre.com, majorpublication.com,

15  manageroofres.com, managerridae.com, manmemory.net, marektal.com, marektsof1.admin,

16  marektstore.com, meetic.com, mermanager.com, metalovers.com, metaoffre.com, mi-horoscopo-

17  del-dia.com, mindedpeople.net, mondaydress.com, monsoon.co.uk, mpmailserv.co.uk,

18  mravital.net, myplaycity.com, naruko.com, nepmanger.com, nero-emea.com, nero-us.com,

19  netmainshop.com, nightmarekt.com, nouncil.com, offerdome.com, officialmarketweb.com,

20  offreddie.com, offresender.com, offresetter.com, offreshen.com, olivegasvalues.com,

21  onlinecardcommitteehost.com, operationindicator.com, optimusoz.com, or9806ph.com,

22  orderdelivered.net, organfeedback.com, organisationt.org, ownanyplace.com, ownbet.net,

23  p8g9s8ju.com, paleontology.online, particularlifestyle.com, particulartimes.com, pathbiz.net,

24  patrioticfervor.com, performancetargets.net, personaldetails.net, personalizedchoices.net,

25  personrelation.net, platediscipline.net, portalcodulmuncii.ro, positiveface.net, powerrealm.com,

26  privatepossessions.net, privilegedgenerations.com, procardcommittee.com, prod-mix.net,

27  productreportcard.com, profoundeffect.net, propertysupersite.com, protectfuture.net,

28  provedright.com, pseudocostandar.com, pt07wv9a.com, racked.com, rainbowcontrol.com,

29  reactiontimingartistry.com, realuses.net, regesterintel.com, registen.com,

30  residentialcommunity.net, resortvitalityplus.com, reviewjournal.com, ridratch.com,

31  rootsweb.com, roughagence.com, ru61es79.com, runningaerobic.com, s423a73c.com,

1   s4lb61i.com, safetystudies.net, samoblog.com, sbingo.eu, sendaze.com, senderbylite.com,

2   senderdaita.com, sendermostosis.com, shopbonton.com, shopingexperiencemedia.com,

3   shopletterwriter.com, simpleoperations.net, simpleprinciples.net, simplyword.net, siowck.com,

4   sittingposition.net, sknspo.com, sknspo.com, slothasheville.net, socialphilosophy.net,

5   softindeswik.com, sortcom.net, sourceprivate.com, specificcompanies.com, spoorse.com,

6   spreadaway.com, submindex.com, sysage.com, tacticalexecution.net, talktalk.com,

7   techwebreview.com, telbros.com, testmethod.net, theintermrktcorp.com, thekingswaygifts.com,

8   thelomographer.com, thewinesociety.com, toothmegadelivery.com, traditionalforms.com,

9   transitactions.com, u422nt53.com, uglamsee.com, u-mall.com, undertosionsc.com,

10  unsyngis.com, usadirectdemocracy.com, utensilcad.com, valericatiser.net, valuableproducts.net,

11  vivarise.net, walmartusrewards.com, waytravel.net, wearn.com, webmailbyte.com,

12  webofferanalysts.com, weekendings.net, westernsuburbs.net, windowsphone.com, worq1.com,

13  xsh0pe.com, yearresults.net, yearsuniverse.net, yearswatch.net, youoffreup.com,

14  yourexotictravelguide.com, yourintermarket.com, za295g77.com.

15  34.     Plaintiffs are informed and believe and thereon allege that each of the Defendants

16  designated herein as a DOE is legally responsible in some manner for the matters alleged in this

17  complaint, and is legally responsible in some manner for causing the injuries and damages of

18  which Plaintiffs complain.  Plaintiffs are informed and believe and thereon allege that each of the

19  Defendants designated herein as a DOE Defendant was, at all times relevant to the matters

20  alleged within this complaint, acting in conjunction with the named Defendants, whether as a

21  director, officer, employee, agent, affiliate, customer, participant, or co-conspirator.  When the

22  identities of DOE Defendants 1-1,000 are discovered, or otherwise made available, Plaintiffs will

23  seek to amend this Complaint to allege their identity and involvement with particularity.

24  35.     Defendants' joinder in this Action is proper pursuant to Code of Civil Procedure § 379

25  because Plaintiffs seek relief jointly and severally from Defendants arising form the same series

26  of transactions and occurrences, and because common questions of law and fact as to Defendants

27  will arise in the Action.  The fact that all Defendants may not be implicated in all spams does not

28  bar joinder: "It is not necessary that each defendant be interested as to every cause of action or as

29  to all relief prayed for.  Judgment may be given against one or more defendants according to

30  their respective liabilities." Code Civ. Proc. § 379.

31

### III.  JURISDICTION AND VENUE

**A.  Jurisdiction is Proper in a California Superior Court**

36.      This California Superior Court has jurisdiction over the Action because all Plaintiffs are located in California, and the amount in controversy is more than $25,000.

**B.  Venue is Proper in San Francisco County**

37.      Venue is proper in San Francisco County (or indeed, *any* county in California of Plaintiffs' choosing) because the ADVERTISER DEFENDANTS (other than the individual SINGLA) are foreign corporations that have not designated the location and address of a principal office in California or registered to do business in California with the California Secretary of State.  *See Easton v. Superior Court of San Diego (Schneider Bros. Inc.)*, 12 Cal. App. 3d 243, 246 (4th Dist. 1970).  Additionally, Defendant MARY resides and/or has a principal place of business in San Francisco.  Code Civ. Proc. § 395(a).

### IV.  ALMOST 1,300 UNLAWFUL SPAMS

38.      Plaintiffs allege that Defendants engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction."  *See* Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Nov. 5, 2013).

39.      California's False Advertising Law, Business & Professions Code § 17500

> prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . . [T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.

*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted).

**A.  The Emails at Issue are "Spams"; Recipients and Counts**

40.      The emails at issue are "commercial email advertisements"[1] because they were initiated for the purpose of advertising and promoting the ADVERTISER DEFENDANTS' products and services.

---

[1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  Bus. & Prof. Code § 17529.1(c).

41.     The emails are "unsolicited commercial email advertisements"[2] because no Plaintiff gave "direct consent"[3] to, or had a "preexisting or current business relationship"[4] with any of the ADVERTISER DEFENDANTS.

42.     Plaintiffs did not consent or acquiesce to receive the spams at issue.  Plaintiffs did not waive or release any rights or claims related to the spams at issue.

43.     Defendants advertised in, sent, and/or conspired to send at least 1,265 unlawful spams that Plaintiffs received at their "California email addresses"[5] as shown below:

| PLAINTIFF | SPAMS RECEIVED | PLAINTIFF | SPAMS RECEIVED |
|-----------|----------------|-----------|----------------|
| BLANCHARD | 66 | KOTTONG | 110 |
| COOPER | 124 | LAMA | 149 |
| DAVIS | 220 | MARQUEZ | 202 |
| GREENBERG | 91 | POWERS | 199 |
| JOBE | 91 | TAYLOR | 13 |
| | | TOTAL | 1,265 |

44.     The spams are all unlawful because there is materially false and deceptive information contained in or accompanying the email headers as described in more detail below.

_____

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative."  Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []"  Bus. & Prof. Code § 17529.1(*l*).

[5] "'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state."  Bus. & Prof. Code § 17529.1(b).

**B.** **Spams With Generic or False From Names Misrepresent** *Who* **is Advertising in the**
**Spams and Violate Business & Professions Code § 17529.5(a)(2)**

45.     Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or
accompanying email headers.

46.     The From Name field is part of email headers.  The From Name does *not* include the
Sender Email Address.  So, for example, if an email's From Line says: "John Doe
<johndoe@yahoo.com>", the From Name is *just* "John Doe."

47.     The From Name in an email's headers is, not surprisingly, supposed to identify who the
email is *from*; it is not supposed to be an advertising message.  Because computers must use
standard protocols in order to communicate, the Internet Engineering Task Force created a
collection of "Requests for Comment" ("RFCs") that define the rules that enable email to work.
According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es)
> of the person(s) or system(s) responsible for the writing of the message. . . . In all
> cases, the "From:" field SHOULD NOT contain any mailbox that does not belong
> to the author(s) of the message.

48.     Plaintiffs do not insist on any *particular* label (e.g., "FLUENT," "FLUENT, INC.,"
"REWARD ZONE USA," etc.) in the From Name field.  Rather, Plaintiffs contend that the text,
whatever it is, cannot misrepresent *who* the emails are from.

49.     The From Name is important to an email user, because in almost all email programs, the
inbox view only displays a list of emails, showing the From Name, Subject Line, and Send Date.
Therefore, even *if* the body of the email identifies the advertiser, the recipient will not know that
until s/he has already clicked to open the email.

50.     Indeed, empirical evidence has
demonstrated that the From Name is the
*most* important factor email recipients use
to determine whether or not an email is
spam.  *See* eMarketer, E-Mail Open Rates
Hinge on 'Subject' Line, *available at*



Select Criteria Used by US Internet Users to Decide
Whether to Click on an E-Mail "Report Spam" or
"Junk" Button without Opening the Actual Message,
December 2006 (% of respondents)

| | |
|---|---|
| "From" line | 73% |
| "Subject" line | 69% |

Note: n=2,252 AOL, MSN/Hotmail, Yahoo!, Lycos, Excite, Gmail, Netscape or
Compuserve users
Source: Email Sender and Provider Coalition (ESPC) and Ipsos, March 2007

082363                                                                    www.eMarketer.com

http://www.emarketer.com/Article/E-Mail-Open-Rates-Hinge-on-Subject-Line/1005550 (Oct.
31, 2007).  Thus, a From Name that misrepresents who a spam is from is *not* a mere technical
error; rather, it is a material misrepresentation of the most important part of the email header.

51.     Although Plaintiffs do *not* sue under the federal CAN-SPAM Act, Plaintiffs note that the Federal Trade Commission has also identified the From Name as the first item in misleading header information in its guide to CAN-SPAM compliance when it stated

> 1.     Don't use false or misleading header information. Your "*From*," "To," "Reply-To," and routing information – including the originating domain name and email address – *must be accurate and identify the person or business who initiated the message.*

Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business, available at http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business (emphasis added).

52.     In *Balsam v. Trancos Inc.*, the unlawful spams were sent from generic From Names that did not *identify* anyone. The trial court ruled, and the court of appeal affirmed in all respects, that generic From Names violate the statute because they misrepresent *who* the emails are from:

> … The seven [ ] emails do not truly reveal who sent the email . . . . The [ ] "senders" identified in the headers of the [ ] seven emails do not exist or are otherwise misrepresented, namely Paid Survey, Your Business, Christian Dating, Your Promotion, Bank Wire Transfer Available, Dating Generic, and Join Elite. . . . . Thus the sender information ("from") is misrepresented.

203 Cal. App. 4th 1083, 1088, 1090-91, 1093 (1st Dist. 2012), *petition for review denied*, 2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied*, 2012 U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013). More specifically, *Balsam* confirmed that generic From Names that "do not exist or are otherwise misrepresented when they do not represent any real company and cannot be readily traced back to the true owner/sender" violate the statute. *Id.* at 1093. The Court affirmed the award of $1,000 liquidated damages for the seven emails with misrepresented information in the From Name field, even though most of the spams identified the advertiser in the body. *Id.* at 1091, 1093. Therefore, truthful information in the body of a spam does not cure misrepresented information contained in or accompanying the headers.

53.     Almost all of the spams that Plaintiffs received, advertising the ADVERTISER DEFENDANTS' websites, show generic text in the From Name field that misrepresents *who* the spams are from, e.g. "Gift Card Rewards," "Thank You," "Congratulations," "Thank You Facebook Survey Rewards," and "Promotional Survey." These generic From Names could just as easily refer to the ADVERTISER DEFENDANTS' competitors.

54.     Some of the spams have From Names that go beyond merely generic and are actively false, claiming that the spams are from third-party companies (or products) that have nothing to do with Defendants, e.g. "Sams," "Samsung Galaxy S5," "Target," and "Walmart." On information and belief, those third parties are not in any way associated with the sending of the spams at issue in this action.

55.     These From Names, like those in *Balsam*, misrepresent *who* was advertising in the spams, and therefore violate Section 17529.5(a)(2).

56.     Plaintiffs are informed and believe and thereon allege that Defendants knowingly choose to advertise using generic From Names and unrelated third-parties names precisely so the recipients will *not* know who the emails were really from when viewing the spams in the inbox view.  This forces recipients to open the emails to see if the emails might actually be from someone with whom the recipient has had dealings, or if the emails are in fact, as is the case here, nothing but spams from for-profit entities.

57.     In *Rosolowski v. Guthy-Renker LLC*, the court permitted From Names that were not the sender's official corporate name as long as the identity of the sender was readily ascertainable in the body.  230 Cal. App. 4th 1403, 1407, 1416 (2d Dist. 2014).  However, the From Names in that case (Proactiv and Wen Hair Care) were the advertiser's fanciful trademarks and well-known brands with their own websites.  But here, unlike the spams in *Rosolowski,* almost of the From Names are generic or false; they are not well-known trademarks and/or brands readily associated with Defendants.  There is no way an ordinary consumer, looking at the emails in his/her inbox, could readily associate them with Defendants.

58.     Moreover, in many of the spams at issue, the sender is not identified in the body of the spams, so *Balsam* would control, not *Rosolowski*.

59.     In those instances where the sender is identified in the body of the spams, the sender is an "untraceable" entity, so the recipient doesn't actually know who sent the spam.  For example, JOBE received a spam that says in the body that it was sent by ANGLO.  However, as discussed above, ANGLO uses a mailbox at a UPS store as its address and it is not registered with *any* Secretary of State (or its equivalent).  Therefore, the "identification" of the sender in the body of the email is merely another misrepresentation as to who actually sent the spam, because "ANGLO IDITECH" is meaningless.  In another instance, KOTTONG received a spam that said it was sent from CONCEPT.  However, as discussed above, CONCEPT uses a nonexistent

1  address and is not registered with *any* Secretary of State (or its equivalent). Again, the purported

2  "identification" of the sender in the body of the email is misleading, misrepresented, and

3  meaningless.

4  **C.  Spams Sent From Domain Names Registered So As To Not Be Readily Traceable to the
      Sender Violate Business & Professions Code § 17529.5(a)(2)**

5

6  60.      Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information contained

7  in or accompanying in email headers.

8  61.      Registration information for the domain names used to send spams is information

9  contained in or accompanying email headers.

10  62.      "[H]eader information in a commercial e-mail is falsified or misrepresented for purposes

11  of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual

12  sender on its face *nor* is readily traceable to the sender using a publicly available online database

13  such as WHOIS." *Balsam,* 203 Cal. App. 4th at 1101 (emphasis in original).

14  63.      Many of the spams that Plaintiffs received advertising Defendants were sent from domain

15  names that:

16       •   Did not identify Defendants or the sender on their face, or

17       •   Were "proxy" registered, or

18       •   Were registered to nonexistent entities (corporations, LLC's, individuals, etc.) so

19           as to not be readily traceable to the sender by querying the Whois database,

20  in violation of Section 17529.5. *Balsam,* 203 Cal. App. 4th at 1097-1101. For example,

21  Blanchard received a spam advertising ADVERTISER DEFENDANTS' products and services

22  from the domain name betharnholder.com. That domain name was proxy-registered when the

23  spam was sent. The *Balsam* court held that sending a spam from a domain name that is proxy-

24  registered is a misrepresentation as to *who* the sender actually is. The *Balsam* court held that

25  such proxy-registration is a violation of section 17529.5. At least 167 of the 1,265 spams at issue

26  in this Action were sent from proxy-registered domain names.

27  64.      JOBE received an email from a domain name registered to CONCEPT, which is not

28  registered with *any* Secretary of State (or its equivalent) and uses a false and nonexistent address.

29  Like in *Balsam,* spams sent from domains registered to nonexistent entities using P.O. boxes,

30  CMRA's, and nonexistent addresses misrepresent *who* actually sent the spams.

31

65.    Plaintiffs could not identify Defendants or its spamming affiliates who sent most of the spams at issue by querying the Whois database for the domain names used to send all or almost all of the spams at issue.

**D.  Spams With False and Misrepresented Subject Lines Violate Business & Professions Code § 17529.5(a)(2)**

66.    Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in email headers.

67.    The Subject Line is part of email headers.

68.    Many of the spams that Plaintiffs received contain Subject Lines with falsified and/or misrepresented information.  Plaintiffs allege that these Subject Lines are *absolutely* false and/or misrepresented and violate Section 17529.5(a)(2), as opposed to misleading *relative* to the contents/body of the spams, which would be a violation of Section 17529.5(a)(3).

69.    Example of falsified/misrepresented Subject Lines include:

- "Being Cleared: $350 Check" is false because no such check exists.
- "You Won $100 From CVS Pharmacy" is false because the recipient, LAMA, did *not* win $100 from CVS Pharmacy.
- "Congratulations, Here's Your $1,000 Walmart Gift Card" is false because there was no Walmart gift card.

**E.  Spams With Subject Lines Misleading Relative to the Contents of the Spams Violate Business & Professions Code § 17529.5(a)(3)**

70.    Section 17529.5(a)(3) prohibits Subject Lines misleading relative to the contents or subject matter of the emails.

71.    Some of the spams that Plaintiffs received contain Subject Lines misleading relative to the contents of subject matter of the emails, which violate Section 17529.5(a)(3).

72.    Examples of misleading Subject Lines include:

- "Get A $100 Walmart Gift Card Free!" is misleading because the body says, "Get a $100 Walmart Gift Card . . . upon completion of purchase requirements."  So, the Subject Line would lead the recipient to believe a free gift card is available, which is belied by the body disclosing that there is no free gift card available.
- "Ogen, Your Name Was Drawn April 6th For A Kohl's Gift Card" is misleading because it implies that there is a Kohl's gift card available for LAMA, but the body says ". . . enter your zip for availability  . . . " implying that there is *not* a

1        Kohl's gift card available and that LAMA's name could not have been drawn

2        because the body admits that it is questionable whether he is even eligible to

3        receive the gift card, based on his ZIP code.

**F. Spams Containing a Third Party's Domain Name Without Permission Violate Business & Professions Code § 17529.5(a)(1)**

73.    Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

74.    Plaintiffs are informed and believe and thereon allege that at least 192 of the spams at issue in this Action contain third parties' domain names without permission of the third parties. For example, some of the domain names appearing in the sending email addresses are:

*sephora.com, toysrus.com, walgreens.com, ebay.com, ebates.com, osh.com, olivegarden.com, clubmed.com, lancome.com, pfizer.com, nissanusa.com, amazon.co.uk, dell.com, nytimes.com, nfl.com, shopbonton.com*, mail.com, *nestle.com, ndtv.com, tmall.com, burgerkingwow.com, and constantcontact.com*.

75.    Such unauthorized use of third parties' domain names is materially false and deceptive. There can be no dispute that these spams were *not* sent from eBay, The New York Times Company, etc. Plaintiffs are informed and believe and thereon allege that the ADVERTISER DEFENDANTS and/or their marketing agents forged the Sender Email Addresses to include domain names belonging to legitimate third party businesses in order to:

- Falsely lend an air of legitimacy to the spams by leveraging the brand equity of legitimate advertisers, making the recipients believe that eBay, The New York Times Company, etc. endorse the ADVERTISER DEFENDANTS, and

- Trick spam filters as to the source of the spams. If the ADVERTISER DEFENDANTS and their marketing agents used their *own* domain names, it would be more likely that spam filters would be able to automatically identify the domain names as being associated with spammers, and block the spams. On the other hand, emails purportedly sent by *ebay.com*, *nytimes.com*, etc. are more likely to be treated as legitimate emails and not spams.

76.    Furthermore, assuming that these spams were *not* actually sent from the domain names that appear in the Sender Email Addresses, which Plaintiffs are informed and believe and thereon

1    allege to be the case, then the spams also contained falsified and forged information, which

2    violates Section 17529.5(a)(2).

3    **G. The ADVERTISER DEFENDANTS are Strictly Liable for Spams Sent By Their**
        **Marketing Agents**

4

5    77.    Plaintiffs are informed and believe and thereon allege that the ADVERTISER

6    DEFENDANTS contracted with third party advertising networks and affiliates, including but not

     limited to the other named Defendants, to advertise their websites for the purpose of selling

7    products and services for a profit.

8

9    78.    No one forced the ADVERTISER DEFENDANTS to outsource any of their advertising

10   to third party spam networks and spammers.

11   79.    Advertisers are liable for advertising in spams, even if third parties hit the Send button.

12              There is a need to regulate the advertisers who use spam, as well as the actual
                spammers because the actual spammers can be difficult to track down due to
13              some return addresses that show up on the display as "unknown" and many others
                being obvious fakes and they are often located offshore.
14

15              The true beneficiaries of spam are the advertisers who benefit from the marketing
                derived from the advertisements.
16

17   Bus. & Prof. Code § 17529(j)(k).

18              It is unlawful [ ] *to advertise in* a commercial email advertisement [ ] under any of
                the following circumstances…
19

20   Bus. & Prof. Code § 17529.5 (emphasis added).  Of course, the ADVERTISER DEFENDANTS'

21   agents are also liable for sending unlawful spams.  *See Balsam*, generally.

22   80.    In fact, in *Hypertouch Inc. v. ValueClick Inc. et al*, the court of appeal held that

23   advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were

24   sent by third parties.

25              *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a
                commercial e-mail advertisement" that contains any of the deceptive statements
26              described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not
                limited to entities that actually send or initiate a deceptive commercial e-mail, but
27              applies more broadly to any entity that advertises in those e-mails.

28

29              Thus, like other California statutes prohibiting false or misleading business
                practices, the statute makes an entity *strictly liable* for advertising in a
30              commercial e-mail that violates the substantive provisions described in section
                17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails*
31              *had been sent* or had any intent to deceive the recipient.

---

22
FIRST AMENDED COMPLAINT

192 Cal. App. 4th 805, 820-21 (2d Dist. 2011) (emphasis added).  The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute.  *Id*. at 829.

**H.  Plaintiffs Sue for Statutory Liquidated Damages; No Proof of Reliance or Actual Damages is Necessary**

81.     The California Legislature defined liquidated damages to be $1,000 per spam.  Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

82.     Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

83.     Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

84.     Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams.  *Recipients* of unlawful spam have standing to sue and recover liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

85.     However, Plaintiffs did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California email addresses.  Bus. & Prof. Code § 17529(d), (e), (g), (h).  Regardless, Plaintiffs do not seek actual damages in this Action, only liquidated damages.  Bus. & Prof. Code § 17529.5(b)(1)(B).

**I.  Defendants' Actions Were Willful and Preclude any Reduction in Statutory Damages**

86.     Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam.  Bus. & Prof. Code § 17529.5(b)(2).  But, to secure the reduction, Defendants have the burden of proof to demonstrate not only that *established* practices and procedures to prevent unlawful spamming, but also that they *implemented* those practices and procedures, and that the practices and procedures are *effective*.

87.     Plaintiffs are informed and believe and thereon allege that Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

88.     Even if Defendants had established any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

89.     Even if Defendants reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented so as to be effective.

90.     Moreover, Plaintiffs are informed and believe and thereon allege that Defendants intended to deceive recipients of their spam messages through the use of falsified and/or misrepresented information in From Names, domain name registrations, and Subject Lines, and use of third parties' domain names without permission, as described herein.

91.     Subject Lines and From Names do not write themselves.  Domain names do not register themselves.  Third parties' domain names (e.g. nytimes.com) do not insert themselves into spams on their own.  The false and misrepresented information contained in and accompanying the email headers are not "clerical errors."  Plaintiffs are informed and believe and thereon allege that Defendants went to great lengths to create falsified and misrepresented information contained in and accompanying the email headers in order to deceive recipients, Internet Service Providers, and spam filters.

92.     Plaintiffs are informed and believe and thereon allege that Defendants intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

### FIRST CAUSE OF ACTION

**[Violations of California Restrictions on Unsolicited Commercial Email, California Business & Professions Code § 17529.5]**
**(Against All Defendants)**

93.     Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

94.     Plaintiffs named in the original Complaint (BLANCHARD, JOBE, KOTTONG, LAMA, POWERS) received all of the spams at issue within one year prior to filing the Complaint.  Plaintiffs added to the First Amended Complaint (COOPER, DAVIS, GREENBERG, MARQUEZ, TAYLOR) received all of the spams at issue within one year prior to filing the First Amended Complaint.

95.     Defendants advertised in, sent, and/or caused to be sent at least 1,265 unsolicited commercial email advertisements to Plaintiffs' California electronic mail addresses that had

1  materially falsified and/or misrepresented information contained in or accompanying the email

2  headers, contained Subject Lines that were misleading in relation to the bodies of the emails,

3  and/or contained third parties' domain names without permission, in violation of Section

4  17529.5. The unlawful elements of these spams represent willful acts of falsity and deception,

5  rather than clerical errors.

6  96.   The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per

7  email.

8  97.   Defendants have not established and implemented, with due care, practices and

9  procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that

10  would entitle them to a reduction in statutory damages.

11  98.   Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Section

12  17529.5(b)(1)(C).

13  99.   The attorneys' fees provision for a prevailing spam recipient is typical of consumer

14  protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this

15  action, Plaintiffs expect to enforce an important right affecting the public interest and thereby

16  confer a significant benefit on the general public or a large class of persons. The necessity and

17  financial burden of private enforcement is such as to make the award appropriate, and the

18  attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

19

20  WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

21

22                                    **PRAYER FOR RELIEF**

23                                    **(Against All Defendants)**

24  A.    An Order from this Court declaring that Defendants violated California Business &

25        Professions Code § 17529.5 by advertising in and sending unlawful spams.

26  B.    Liquidated damages against Defendants in the amount of $1,000 for each of at least 1,265

27        unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least

28        $1,265,000, as set forth below:

29

30

31

| PLAINTIFF | DAMAGES SOUGHT | PLAINTIFF | DAMAGES SOUGHT |
|---|---|---|---|
| BLANCHARD | $66,000 | KOTTONG | $110,000 |
| COOPER | $124,000 | LAMA | $149,000 |
| DAVIS | $220,000 | MARQUEZ | $202,000 |
| GREENBERG | $91,000 | POWERS | $199,000 |
| JOBE | $91,000 | TAYLOR | $13,000 |
| | | **TOTAL** | **$1,265,000** |

C.   Liquidated damages against each of the ADVERTISER DEFENDANTS, jointly and severally, in the amount of $1,000 for each of 1,265 unlawful spams ($1,265,000) that they sent, hired others to send, or otherwise conspired with others to send to Plaintiffs, according to proof.

D.   Liquidated damages against SAUPHTWARE, jointly and severally with each of the ADVERTISER DEFENDANTS, in the amount of $1,000 for each of 75 unlawful spams ($75,000) that it sent, hired others to send, or otherwise conspired to send to Plaintiffs, according to proof.

E.   Liquidated damages against ADREACTION, jointly and severally with each of the ADVERTISER DEFENDANTS, in the amount of $1,000 for each of 384 unlawful spams ($384,000) that it sent, hired others to send, or otherwise conspired to send to Plaintiffs, according to proof.

F.   Liquidated damages against ANGLO, jointly and severally with each of the ADVERTISER DEFENDANTS, in the amount of $1,000 for each of 16 unlawful spams ($16,000) that it sent, hired others to send, or otherwise conspired to send to Plaintiffs, according to proof.

G.   Liquidated damages against FORTANALYSIS8, jointly and severally with each of the ADVERTISER DEFENDANTS, in the amount of $1,000 for each of 13 unlawful spams ($13,000) that it sent, hired others to send, or otherwise conspired to send to Plaintiffs, according to proof.

H.   Liquidated damages against CONCEPT, jointly and severally with each of the ADVERTISER DEFENDANTS, in the amount of $1,000 for each of 9 unlawful spams ($9,000) that it sent, hired others to send, or otherwise conspired to send to Plaintiffs, according to proof.

1  I.   Liquidated damages against RUFINO, jointly and severally with each of the

2       ADVERTISER DEFENDANTS, in the amount of $1,000 for each of 7 unlawful spams

3       ($7,000) that he sent, hired others to send, or otherwise conspired to send to Plaintiffs,

4       according to proof.

5  J.   Liquidated damages against AREKELIAN, jointly and severally with each of the

6       ADVERTISER DEFENDANTS, in the amount of $1,000 for each of 7 unlawful spams

7       ($7,000) that she sent, hired others to send, or otherwise conspired to send to Plaintiffs,

8       according to proof.

9  K.   Liquidated damages against MARY, jointly and severally with each of the

10      ADVERTISER DEFENDANTS, in the amount of $1,000 for each of 6 unlawful spams

11      ($6,000) that he sent, hired others to send, or otherwise conspired to send to Plaintiffs,

12      according to proof.

13 L.   Liquidated damages against each DOE 1-1,000 (when their true names are learned),

14      jointly and severally with each of the ADVERTISER DEFENDANTS, in the amount of

15      $1,000 for each of the unlawful spams it sent, hired others to send, or otherwise conspired

16      to send to Plaintiffs, according to proof.

17 M.   Attorneys' fees as authorized by Section 17529.5(b)(1)(C) and Code of Civil Procedure

18      § 1021.5 for violations of Section 17529.5.

19 N.   Costs of suit.

20 O.   Such other and further relief as the Court deems proper.

21

22                                THE LAW OFFICES OF DANIEL BALSAM

23

24 Date:        December 20, 2016          BY:  _Daniel L Balsam_____

25                                     DANIEL BALSAM
                                       Attorneys for Plaintiffs
26

27

28

29

30

31

---

27
FIRST AMENDED COMPLAINT

Exhibit D

1  Jacob Harker (State Bar No. 261262)
2  LAW OFFICES OF JACOB HARKER
   582 Market Street, Suite 1007
3  San Francisco, CA 94104
   Tel: (415) 624-7602
4  Fax: (415) 684-7757
5  Email: jacob@harkercounsel.com

6
   Daniel L. Balsam (State Bar No. 260423)
7  THE LAW OFFICES OF DANIEL BALSAM
   2601C Blanding Avenue #271
8  Alameda, CA 94501
   Tel: (415) 869-2873
9  Fax: (415) 869-2873
10 Email: legal@danbalsam.com

11
   Attorneys for Plaintiffs
12

13
                    **UNITED STATES DISTRICT COURT**
14

15        **NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO DIVISION)**

16 MIRA BLANCHARD, an individual;      ) Case No.:      3:17-cv-04497-MMC
17 RYAN COOPER, an individual;         )
   MARK DAVIS, an individual;          )
18 CHANDRA GREENBERG, an individual;   ) **THIRD AMENDED COMPLAINT FOR**
19 JAMES JOBE, an individual;          ) **DAMAGES**
   DEBRA KOTTONG, an individual;       )
20 OGEN LAMA, an individual;           )    1. **VIOLATIONS OF CALIFORNIA**
21 MARIA MARQUEZ, an individual;       )       **RESTRICTIONS ON UNSOLICITED**
   VANESSA POWERS, an individual;      )       **COMMERCIAL E-MAIL (Cal. Bus. &**
22 BUNNY SEGAL, an individual; and     )       **Prof. Code § 17529.5)**
23 GAIL TAYLOR, an individual;         )
                                       )
24            Plaintiffs,              )
25        v.                           )
                                       )
26 FLUENT LLC, a Delaware limited liability )
27 company;                           )
   REWARD ZONE USA LLC, a Delaware    )
28 limited liability company;         )
   REWARDSFLOW LLC, a Delaware limited )
29 liability company;                 )
   AMERICAN PRIZE CENTER LLC, a       )
31 Delaware limited liability company; )

---

**1**
**THIRD AMENDED COMPLAINT**

MOHIT SINGLA, an individual;                    )
DOES 1-1,000;                                            )
                                                                  )
                    Defendants.                        )
_____

COME NOW PLAINTIFFS MIRA BLANCHARD *et al* and file this Third Amended Complaint
for one cause of action against Defendants FLUENT LLC *et al* and allege as follows:

## I.  <u>INTRODUCTION AND SUMMARY OF THE COMPLAINT</u>

1.      Plaintiffs MIRA BLANCHARD *et al* bring this Action against professional spammers
FLUENT LLC and related companies, and their third party Marketing Partners, for advertising in
more than 1,300 unlawful unsolicited commercial emails ("spams") to Plaintiffs.  A
representative sample appears on the next page.

2.      No Plaintiff gave direct consent to receive commercial email advertisements from, or had
a preexisting or current business relationship with, any of the entities advertised in the spams.

3.      The spams all materially violated California Business & Professions Code § 17529.5
("Section 17529.5") due to: a) materially false and deceptive information contained in or
accompanying the email headers (i.e. From Name, Sender Email Address, and Subject Line); b)
Subject Lines misleading relative to the contents of the emails; and/or c) the use of third parties'
domain names without permission.

4.      The FLUENT entities are strictly liable for advertising in spams sent by their Marketing
Partners.  Even *if* FLUENT's Marketing Partners are not directly liable under Section 17529.5,
they are still liable on the basis of civil conspiracy, as discussed herein.

5.      Spam recipients are not required to allege or prove reliance or actual damages to have
standing.  *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii).  Nevertheless, Plaintiffs did suffer
damages by receiving the spams.  *See, e.g.,* Cal. Bus. & Prof. Code § 17529(d), (e), (g), (h).
However, Plaintiffs elect to recover statutory damages only and forego recovery of any actual
damages.  *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B).

Print                                                    https://us-mg6.mail.yahoo.com/neo/launch?.rand=1u3vh7eekrg1f#106008589

| | |
|---|---|
| Subject: | prettywoman1261, You WON a $50 CVS Gift Card! |
| From: | CVS (Pharmacy@multaneasdse.com) |
| To: | prettywoman1261@yahoo.com; |
| Date: | Friday, February 19, 2016 8:22 PM |

prettywoman1261, You WON a $50 CVS Gift Card!

Get a |$100
CVS Gift Card*!

CVS   $100

LIMITED TIME OFFER

GIFT CARD

Enter your ZIP for availability:

GO >>

*Participation required. See offer for details

This advertisement was sent to you by a third party. If you are not interested in
receiving future RewardZoneUsa advertisement, please Click Here. Alternatively,
you can opt out by sending a letter to:
RewardsFlow, LLC., P.O. Box 3292, New York, NY 10163

If you cannot click the link above, Copy & Paste this link:
http://multaneasdse.com
/geyJiIjogMzU4NjAsICJmIjogMCwgIm0iOiOtAzMDUwNCwgImvnOtA2MSwgInMiOtAwLCAidSI6IDIyMDgyNDc2OSwgInQtOiOtAxLCAic2QiOtAwfQ==

This is an advertisement. We respect your privacy and pledge not to abuse your email address. Your email has
been verified to receive offers from one of our affiliates. If you would like to unsubscribe from future emails of
this type, please "Click here to unsubscribe" or write to AdReaction Sheikh Zayed Road, Al Wasl Area
Emarat Atrium Building Office 432, Dubai, P.O. Box 112344
Your removal request will be honored. This all is in full compliance with US federal CAN-SPAM act 2003

1 of 1                                                                    4/15/2016 9:52 PM

---

3
THIRD AMENDED COMPLAINT

6.  This Court should award liquidated damages of $1,000 per email as provided by Section 17529.5(b)(1)(B)(ii), and not consider any reduction in damages, because the FLUENT entities and their Marketing Partners failed to implement reasonably effective systems to prevent advertising in unlawful spams.  The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

7.  This Court should award Plaintiffs their attorneys' fees pursuant to Section 17529.5(b)(1)(C).  *See also* Cal. Code of Civil Procedure § 1021.5, providing for attorneys fees when private parties bear the costs of litigation that confers a benefit on a large class of persons; here, by reducing the amount of false and deceptive spam received by California residents.

## II.  **PARTIES**

**A.  Plaintiffs**

8.  MIRA BLANCHARD ("BLANCHARD") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to BLANCHARD's email address mira.blanchard@yahoo.com that she ordinarily accesses from California.

9.  RYAN COOPER ("COOPER") was domiciled in and a citizen of the State of California, when he received the spams at issue.  The spams at issue were sent to COOPER's email address rryan57@yahoo.com that he ordinarily accesses from California.

10.  MARK DAVIS ("DAVIS") was domiciled in and a citizen of the State of California, when he received the spams at issue.  The spams at issue were sent to DAVIS's email address mdavis1994@yahoo.com that he ordinarily accesses from California.

11.  CHANDRA GREENBERG ("GREENBERGC") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to GREENBERGC's email address prettywoman1261@yahoo.com that she ordinarily accesses from California.

12.  JAMES JOBE ("JOBE") was domiciled in and a citizen of the State of California, when he received the spams at issue.  The spams at issue were sent to JOBE's email address jamesjobe14@yahoo.com that he ordinarily accesses from California.

13.    DEBRA KOTTONG ("KOTTONG") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to KOTTONG's email address fadedjeens@yahoo.com that she ordinarily accesses from California.

14.    OGEN LAMA ("LAMA") was domiciled in and a citizen of the State of California, when he received the spams at issue.  The spams at issue were sent to LAMA's email address aaturu05@yahoo.com that he ordinarily accesses from California.

15.    MARIA MARQUEZ ("MARQUEZ") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to MARQUEZ's email address maria.marquez@mail.com that she ordinarily accesses from California.

16.    VANESSA POWERS ("POWERS") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to POWERS' email address vsp0930@yahoo.com that she ordinarily accesses from California.

17.    BUNNY SEGAL ("SEGAL") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to SEGAL's email address blanche17@yahoo.com that she ordinarily accesses from California.

18.    GAIL TAYLOR ("TAYLOR") was domiciled in and a citizen of the State of California, when she received the spams at issue.  The spams at issue were sent to TAYLOR's email address cgailtaylor@aol.com that she ordinarily accesses from California.

19.    Plaintiffs' joinder in this Action is proper pursuant to Cal. Code of Civil Procedure § 378 because Plaintiffs seek relief based on the same series of transactions or occurrences: all received similar spams in the same general time period advertising FLUENT's websites, and all of those spams were sent by FLUENT or its Marketing Partners.  The same questions of law (e.g., violations of Section 17529.5, strict liability) and fact (e.g., direct consent, practices and procedures to prevent advertising in unlawful spam) will arise in this Action.  The fact that each Plaintiff does not sue for *exactly* the same spams does not bar joinder: "It is not necessary that each plaintiff be interested as to every cause of action or as to all relief prayed for.  Judgment may be given for one or more of the plaintiffs according to their respective right to relief."  Cal. Code Civ. Proc. § 378(b).

**B.  Defendants**

*1.  Fluent Defendants*

20.      Plaintiffs are informed and believe and thereon allege that Defendant FLUENT LLC is now a Delaware limited liability company, and was formerly known as and is the successor to Fluent Inc., a Delaware corporation, with its principal place of business in New York, New York. Plaintiffs are informed and believe and thereon allege that FLUENT LLC is responsible for advertising in some or all of the spams at issue in this lawsuit.

21.      Plaintiffs are informed and believe and thereon allege that Defendant REWARD ZONE USA LLC ("REWARD ZONE"), is now, and was at all relevant times, a Delaware limited liability company, the sole member of whom is FLUENT LLC, with its principal place of business in New York, New York.  Plaintiffs are informed and believe and thereon allege that REWARD ZONE is responsible for advertising in some or all of the spams at issue in this lawsuit.  Plaintiffs are informed and believe and thereon allege that REWARD ZONE registered the following domain names corresponding to the "landing websites" hyperlinked from certain spams at issue in this Action: consumerpromotionsonline.com, consumerpromousa.com, electronicpromotionscenter.com., electronicrewardsusa.com, electronicrewardusa.com, onlineretailusa.com, promotionalretail.com, promotionsusaweb.com, restaurantpromotionsusa.com, retailpromotionusa.com, retailpromousa.com, retailusapromo.com, webpromotionsusa.com, and webpromousa.com.

22.      Plaintiffs are informed and believe and thereon allege that Defendant REWARDSFLOW LLC ("REWARDSFLOW"), is now, and was at all relevant times, a Delaware limited liability company, the sole member of whom is REWARD ZONE, with its principal place of business in New York, New York.  Plaintiffs are informed and believe and thereon allege that REWARDSFLOW is responsible for advertising in some or all of the spams at issue in this lawsuit.

23.      Plaintiffs are informed and believe and thereon allege that Defendant AMERICAN PRIZE CENTER LLC ("AMERICAN PRIZE CENTER"), is now, and was at all relevant times, a Delaware limited liability company, the sole member of whom is FLUENT LLC, with its principal place of business in New York, New York.  Plaintiffs are informed and believe and thereon allege that AMERICAN PRIZE CENTER is responsible for advertising in some or all of the spams at issue in this lawsuit.  Plaintiffs are informed and believe and thereon allege that

AMERICAN PRIZE CENTER registered the following domain names corresponding to the "landing websites" hyperlinked from certain spams at issue in this Action: electronics-sweepstakes.com, retailpromotionsonline.com, and surveysandpromotionsonline.com.

24.     Plaintiffs are informed and believe and thereon allege that Defendant MOHIT SINGLA ("SINGLA"), is now, and was at all relevant times, an individual who resides in New York State and who is affiliated with FLUENT LLC, REWARD ZONE, REWARDSFLOW, and/or AMERICAN PRIZE CENTER.  Plaintiffs are informed and believe and thereon allege that SINGLA is responsible for advertising in some or all of the spams at issue in this Action. Plaintiffs are informed and believe and thereon allege that SINGLA personally registered the following domain names corresponding to the "landing websites" hyperlinked from certain spams at issue in this Action: consumersrvycnter.com, electronicconsumerusa.com, electronicpromotion.com, nationalconsumercenter.com, onlinepromotionscenter.com, onlineretailpromotion.com, onlineretailpromotion.com, promoandsweeps.com.  , promotionalsurveys.com, restaurantpromotionsusa.com, retailpromotionsusa.com, searchselect6.com, surveysandpromotions.com, and sweepstakesgroup.com.

25.     Plaintiffs are informed and believe and thereon allege that FLUENT LLC, REWARD ZONE, REWARDSFLOW, and AMERICAN PRIZE CENTER are interrelated entities. Plaintiffs believe the entities are all under common ownership and control; share assets including but not limited to personnel, office space, computers, and intellectual property; and comingle their finances.  Plaintiffs are also informed and believe and thereon allege that there is an interrelationship between SINGLA and FLUENT LLC, REWARD ZONE, REWARDSFLOW, and AMERICAN PRIZE CENTER.  Plaintiffs hereinafter refer to FLUENT LLC, REWARD ZONE, REWARDSFLOW, AMERICAN PRIZE CENTER, and SINGLA collectively as "FLUENT."

### 2. *Marketing Partner Defendants*

26.     Plaintiffs are informed and believe and thereon allege that Fluent entered into various contracts ("Marketing Partner Contracts") with third-party spam networks and publishers ("Marketing Partners").  Pursuant to the terms of the Marketing Partner Contracts, Fluent and each respective Marketing Partner agreed to share in the benefits and risks derived from email advertising campaigns advertising FLUENT's websites and the Marketing Partners' services. Plaintiffs further allege, on information and belief, that pursuant to the terms of the Marketing

Partner Contracts, the Marketing Partner Defendants used their own lists of email addresses (as opposed to lists provided by FLUENT) as the source of intended recipients for the spams. Plaintiffs further allege, on information and belief, that, in some cases, the Marketing Partners (as opposed to FLUENT) created the unlawful content in the emails, such as the From Names, Subject Lines, and sending email addresses.

### 3. DOE Defendants

27.     Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 1,000, inclusive, and therefore sue said Defendants under the fictitious name of "DOE."

28.     Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner for causing the injuries and damages of which Plaintiffs complain.  Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, partner, affiliate, customer, participant, or co-conspirator.  When the identities of DOE Defendants 9-1,000 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege their identity and involvement with particularity.

29.     Defendants' joinder in this Action is proper pursuant to Cal. Code of Civil Procedure § 379 because Plaintiffs seek relief jointly and severally from Defendants arising form the same series of transactions and occurrences, and because common questions of law and fact as to Defendants will arise in the Action.  The fact that all Defendants may not be implicated in all spams does not bar joinder: "It is not necessary that each defendant be interested as to every cause of action or as to all relief prayed for.  Judgment may be given against one or more defendants according to their respective liabilities."  Cal. Code Civ. Proc. § 379.

## III.  JURISDICTION AND VENUE

### A.  Jurisdiction is Proper in a California Superior Court

30.     Plaintiffs maintain that jurisdiction is proper in California Superior Court because all Plaintiffs are located in California, other parties who advertised in and are liable for the spams –

and who Plaintiffs seek to add to the Action – are in California, and the amount in controversy is more than $25,000.

**B.  Venue is Proper in San Francisco County**

31.     Venue is proper in San Francisco County (or indeed, *any* county in California of Plaintiffs' choosing) because the FLUENT Defendants (other than the individual SINGLA) are foreign corporations that have not designated the location and address of a principal office in California or registered to do business in California with the California Secretary of State.  *See Easton v. Superior Court of San Diego (Schneider Bros. Inc.)*, 12 Cal. App. 3d 243, 246 (4th Dist. 1970).

## IV.  THE FLUENT SCHEME

32.     FLUENT's entire business depends on acquiring demographic, psychographic, and behavioral data about consumers so it can serve personalized advertisements or sell consumers' personally identifiable information.

33.     The www.fluentco.com home page states:

> Fluent is a people-based marketing platform that uses real-time, one-to-one interaction to create custom audiences and serve personalized ads that drive performance at scale.

> Data is at the heart of what we do. And we believe that the best data sets are not static. They are dynamic, just like people are. That's why we collect fresh, first party data from millions of new registered users every day to deterministically target the right people and deliver real results.

Fluent Home Page, http://www.fluentco.com (last visited Apr. 13, 2017).  More specifically:

> Marketers face an uphill battle. Thanks to the proliferation of digital media and devices, there is more data available to them than ever before and using the "right" data is key to success. It has to be fresh, recently collected data in order to accurately target the right audience with the right offers and drive results. That's where we come in. Fluent's platform is rooted in first-party data collected in real-time on a perpetual basis to evolve how brands target and engage with consumers. We go beyond anonymous pixels and cookies and interact with real people in order to deliver scalable performance marketing programs.

> We don't have to guess what people want. We know what they want. Which enables us to target the right audience at scale.

> High Volume. Fluent interacts with millions of registered users across our network and captures six million survey responses from them daily. Rooted in

> performance, our Agile Audience Engine can connect your brand to millions of engaged, potential new customers based on the first-party data we capture every day to drive results and perpetual optimization.
>
> High Value. Fluent was founded on the belief that modern marketers need more efficiency. Performance driven, we concentrate on delivering qualified audiences, not vanity metrics. At Fluent, your success is our success.
>
> High Velocity. Fluent is highly responsive and enables you to capture data from real people in a 1:1 conversational way. Our technology captures consumer preferences that you can activate on in real time.

Why Fluent, http://www.fluentco.com/why-fluent (last visited Apr. 13, 2017).

34.     FLUENT is a subsidiary of Cogint Inc., a Delaware corporation with a primary place of business in Boca Raton, Florida ("COGINT").  COGINT is a public company, listed on the NASDAQ exchange.  According to COGINT's most recent annual report, in 2016 COGINT had revenue of $186.8 million and gross profit of $53.0 million.  Source: Cogint 2016 Annual Report, *available at* http://investors.cogint.com/phoenix.zhtml?c=217512&p=irol-reportsAnnual.

35.     COGINT similarly describes its "massive data repository" that, together with "leading-edge, proprietary technology" and "data and analytical solutions," enables its customers to

> harness the power of data fusion, uncovering the relevance of disparate data points and converting them into comprehensive and insightful views of people, businesses, assets and their interrelationships. We empower clients across markets and industries to better execute all aspects of their business, from managing risk, conducting investigations, identifying fraud and abuse, and collecting debts, to identifying and acquiring new customers.

Cogint Inc. Home Page, http://www.cogint.com (last visited Apr. 13, 2017).  COGINT's Information Services and

> data acquisition solutions enable clients to rapidly grow their customer databases by using self-declared consumer insights to identify, connect with, and acquire first-party consumer data and multi-channel marketing consent at massive scale.

*Id.*  And COGINT's

> Agile Audience Engine™ drives our Performance Marketing segment, which provides solutions to help brands, advertisers and marketers find the right customers in every major business-to-consumer vertical including, but not limited to, internet and telecommunications, financial services, health and wellness, consumer packaged goods, careers and education, and retail and entertainment. We deterministically target consumers across various marketing channels and devices, through the user-supplied acquisition of personally-identifiable

> information on behalf of our clients, such as email addresses, other identifying
> information and responses to dynamically-populated survey questions.

*Id.*

36.     In short, FLUENT's entire business is predicated on convincing actual consumers to give it all kinds of personal information, so FLUENT can then sell that data so its clients can identify and target potential customers.

37.     FLUENT wants to know if a particular consumer owns a home, has a car, has a checking account, is interested in payday loans, has diabetes, is interested in [purportedly] free GLADE samples from LifeScript, what type of smartphone s/he has, how s/he access the Internet, if s/he is planning to stop a cable TV subscription in the next year, if s/he subscribes to any sports channels, etc.   And this information is not merely aggregated; rather, FLUENT ties all of that information to a consumer's actual name, gender, birthday, and email address.

38.     To convince consumers to give up their valuable personally identifiable information, FLUENT purports to offer "incentives" ranging from $100 store gift cards to iPhones to $1,000 Visa gift cards.

39.     However, PLAINTIFFS are informed and believe and thereon allege that it is impossible for FLUENT to actually ever sell a consumer's data for enough money to cover the cost of e.g. a $1,000 gift card.  FLUENT's business model only works if it can acquire consumers' information *without* giving away the incentives, or at least, the highest-value incentives. FLUENT may accomplish the goal by enticing a consumer to take a series of survey questions in the hopes of receiving the gift card, and even buying products/services along the way, but then the survey questions either end or continue indefinitely, never giving the consumer the means of actually receiving the advertised gift card.

40.     For example, even when FLUENT advertises a gift card as "free" once a consumer collects 100 points by taking survey questions, a consumer can actually only collect 60 points by answering survey questions and then s/he must buy and/or sign up for multiple third parties' products and services.

> **Program Requirements-Updated March 23, 2017.** To earn an incentive, you
> must: 1) be a U.S. resident 18 years or older; 2) provide accurate and complete
> registration information; 3) complete the survey questions; 4) view optional
> offers; and 5) complete the requisite number of Silver, Gold and Platinum offers
> which are split into two tiers based on the incentive's value. For Tier 1 incentives
> with a value of $100 or less, complete 1 Silver, 1 Gold and 2 Platinum offer. For

Tier 2 incentives with a value of more than $100, complete 1 Silver, 1 Gold, and 8 Platinum offers. [ ] Completion of offers usually requires a purchase or entering into a paid subscription program for goods or services. [ ] Failure to submit accurate registration Information, complete the survey questions or comply with claim verification process will result in disqualification. SOLVING A PUZZLE, PROVIDING YOUR REGISTRATION INFORMATION, COMPLETING THE SURVEY OR VIEWING OPTIONAL OFFERS WITHOUT COMPLETING THE NUMBER OF REQUIRED OFFERS SPECIFIED ABOVE DOES NOT QUALIFY YOU FOR AN INCENTIVE. [ ]

RewardZone USA Complete ONE Silver offer, http://www.promoandsweeps.com (last visited Apr. 30, 2017).

41.     Thus, the entire FLUENT business model is a scam, deliberately designed to obtain consumers' information with no intent of providing the promised incentives.  But FLUENT is not the first to engage in these gift card spam scams.  In fact, the Federal Trade Commission has pursued numerous companies spamming with offers of free gift cards or other incentives.  *See, e.g.*,

- Press Release, Operators of Phony 'Free $1,000 Gift Card' Websites Will Pay $2.5 Million in FTC Settlement (Feb. 18, 2014), *available at* https://www.ftc.gov/news-events/press-releases/2014/02/operators-phony-free-1000-gift-card-websites-will-pay-25-million.

- Press Release, FTC Cracks Down on Senders of Spam Text Messages Promoting "Free" Gift Cards (Mar. 7, 2013), *available at* https://www.ftc.gov/news-events/press-releases/2013/03/ftc-cracks-down-senders-spam-text-messages-promoting-free-gift.

- Press Release, FTC Slams Spammer in Pocketbook (Mar. 23, 2006), *available at* https://www.ftc.gov/news-events/press-releases/2006/03/ftc-slams-spammer-pocketbook.

42.     In order to advertise the survey/incentive scam, FLUENT partners with third parties to send unlawful spams advertising the survey/incentive scam.  The spams also advertise FLUENT's Marketing Partners' email marketing services.

## V. **MORE THAN 1,300 UNLAWFUL SPAMS**

43.     Plaintiffs allege that Defendants engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction." *See* Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Nov. 5, 2013).

44.     California's False Advertising Law, Business & Professions Code § 17500

> prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . . [T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.

*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted).

### A.   **The Emails at Issue are "Spams"; Recipients and Counts**

45.     The emails at issue are "commercial email advertisements"[1] because they were initiated for the purpose of advertising and promoting FLUENT's and its Marketing Partners' products and services.

46.     The emails are "unsolicited commercial email advertisements"[2] because no Plaintiff gave "direct consent"[3] to, or had a "preexisting or current business relationship"[4] with FLUENT or any of its Marketing Partners.

---

[1] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  Bus. & Prof. Code § 17529.1(c).

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit."  Bus. & Prof. Code § 17529.1(o).

[3] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative."  Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []"  Bus. & Prof. Code § 17529.1(*l*).

47.     Plaintiffs did not consent or acquiesce to receive the spams at issue.  Plaintiffs did not waive any claims related to the spams at issue.  Some Plaintiffs released claims against *other* parties relating to 211 spams at issue, but they did not release any claims against FLUENT and certain other Marketing Partners.

48.     Defendants advertised in and/or conspired to send at least 1,349 unlawful spams that Plaintiffs received at their "California email addresses"[5] as shown below:

| PLAINTIFF | SPAMS RECEIVED | PLAINTIFF | SPAMS RECEIVED |
|---|---|---|---|
| BLANCHARD | 66 | LAMA | 149 |
| COOPER | 120 | MARQUEZ | 200 |
| DAVIS | 217 | POWERS | 170 |
| GREENBERGC | 91 | SEGAL | 149 |
| JOBE | 64 | TAYLOR | 13 |
| KOTTONG | 110 | **TOTAL** | **1,349** |

49.     The spams are all unlawful because there is materially false and deceptive information contained in or accompanying the email headers as described in more detail below.  Although "fraud" in the context of a Cal. Business & Professions Code § 17500 action does not mean the common-law tort,[6] Exhibit A shows a table of the spams at issue, sorted by recipient, stating for each spam, the recipient, recipient's email address, date/time, From Name, sending domain name, registrant of the sending domain name, whether the spam includes an "(a)(1) violation,"

---

[5] "'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state."  Bus. & Prof. Code § 17529.1(b).

[6] *See Day v. AT&T Corporation,* 63 Cal. App. 4th 325, 332 (1st Dist. 1998) ("Actual deception or confusion caused by misleading statements is not required . . . . The term 'fraudulent' as used in the section 'does not refer to the common law tort of fraud' but only requires a showing members of the public 'are likely to be deceived.'  No proof of direct harm from a defendant's unfair business practice need be shown, such that '[a]llegations of actual deception, reasonable reliance, and damage are unnecessary.") (citations omitted).  *See also Buller v. Sutter Health*, 160 Cal. App. 4th 981, 986 (1st Dist. 2008) ("In order to state a cause of action under the fraud prong of the [Unfair Competition Law] a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question.  The 'fraud prong of [the UCL] is unlike common law fraud or deception.  A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.  Instead, it is only necessary to show that members of the public are likely to be deceived").

Subject Line, landing website, and FLUENT's Marketing Partner who sent it and also advertised in the spam.  Plaintiffs incorporate Exhibit A herein by reference.

**B.  Spams With Generic or False From Names Misrepresent *Who* is Advertising in the Spams and Violate Cal. Business & Professions Code § 17529.5(a)(2)**

50.     Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

51.     The From Name field is part of email headers.  The From Name does *not* include the Sender Email Address.  So, for example, if an email's From Line says: "John Doe <johndoe@yahoo.com>", the From Name is *just* "John Doe."

52.     The From Name in an email's headers is, not surprisingly, supposed to identify who the email is *from*; it is not supposed to be an advertising message.  Because computers must use standard protocols in order to communicate, the Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules that enable email to work.  According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

53.     Plaintiffs do not insist on any *particular* label (e.g., "FLUENT," "FLUENT LLC," "REWARD ZONE USA," etc.) in the From Name field.  Rather, Plaintiffs contend that the text, whatever it is, cannot misrepresent *who* the emails are from.

54.     The From Name is important to an email user, because in almost all email programs, the inbox view only displays a list of emails, showing the From Name, Subject Line, and Send Date.  Therefore, even *if* the body of the email identifies the advertiser, the recipient will not know that until s/he has already clicked to open the email.

55.     Indeed, empirical evidence has demonstrated that the From Name is the *most* important factor email recipients use to determine whether or not an email is spam. *See* eMarketer, E-Mail Open Rates Hinge on 'Subject' Line, *available at* http://www.emarketer.com/Article/E-Mail-

**Select Criteria Used by US Internet Users to Decide Whether to Click on an E-Mail "Report Spam" or "Junk" Button without Opening the Actual Message, December 2006 (% of respondents)**

| | |
|---|---|
| "From" line | 73% |
| "Subject" line | 69% |

Note: n=2,252 AOL, MSN/Hotmail, Yahoo!, Lycos, Excite, Gmail, Netscape or Compuserve users
Source: Email Sender and Provider Coalition (ESPC) and Ipsos, March 2007

082363                                                                   www.eMarketer.com

Open-Rates-Hinge-on-Subject-Line/1005550 (Oct. 31, 2007).  Thus, a From Name that

misrepresents who a spam is from is *not* a mere technical error; rather, it is a material

misrepresentation of the most important part of the email header.

56.    Although Plaintiffs do *not* sue under the federal CAN-SPAM Act, Plaintiffs note that the

Federal Trade Commission has also identified the From Name as the first item in misleading

header information in its guide to CAN-SPAM compliance when it stated

> 1.    Don't use false or misleading header information. Your "*From*," "To,"
> "Reply-To," and routing information – including the originating domain name
> and email address – *must be accurate and identify the person or business who
> initiated the message*.

Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business, available at

http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business

(emphasis added).

57.    In *Balsam v. Trancos Inc.*, the unlawful spams were sent from generic From Names that

did not *identify* anyone.  The trial court ruled, and the court of appeal affirmed in all respects,

that generic From Names violate the statute because they misrepresent *who* the emails are from:

> … The seven [ ] emails do not truly reveal who sent the email . . . . The [ ]
> "senders" identified in the headers of the [ ] seven emails do not exist or are
> otherwise misrepresented, namely Paid Survey, Your Business, Christian Dating,
> Your Promotion, Bank Wire Transfer Available, Dating Generic, and Join Elite. .
> . . . . Thus the sender information ("from") is misrepresented.

203 Cal. App. 4th 1083, 1088, 1090-91, 1093 (1st Dist. 2012), *petition for review denied*, 2012

Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied*, 2012 U.S. LEXIS 8423 (U.S.

Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013).  More

specifically, *Balsam* confirmed that generic From Names that "do not exist or are otherwise

misrepresented when they do not represent any real company and cannot be readily traced back

to the true owner/sender" violate the statute. *Id.* at 1093.  The Court affirmed the award of

$1,000 liquidated damages for the seven emails with misrepresented information in the From

Name field, even though most of the spams identified the advertiser in the body. *Id.* at 1091,

1093.  Therefore, truthful information in the body of a spam does not cure misrepresented

information contained in or accompanying the headers.

58.    Almost all of the spams that Plaintiffs received advertising FLUENT's websites show

generic text in the From Name field that misrepresents *who* the spams are from, e.g. "Gift Card

Rewards," "Thank You," "Congratulations," "Thank You Facebook Survey Rewards," and "Promotional Survey."  These generic From Names could just as easily refer to FLUENT's competitors.

59.     Some of the spams have From Names that go beyond merely generic and are actively false, claiming that the spams are from third-party companies (or products) that have nothing to do with Defendants, e.g. "Apple," "Costco," "CVS," "Pepsi Survey," "Victoria's Secret," "Sams," "Samsung Galaxy S5," "Target," and "Walmart."  On information and belief, those third parties are not in any way associated with the sending of the spams at issue in this action; the spams are *not* from them.

60.     Some of the spams include one of the FLUENT entities' names in the From Name – e.g. "Amazon Rewards by Reward Zone" and "WalMart Rewards by Reward Zone" – but even these From Names contain misrepresented information because: a) they falsely imply that the spams are actually from Amazon, WalMart, etc.; b) they falsely imply that Amazon and WalMart, etc. endorse the contents of the spams and the FLUENT scam; c) they falsely imply that Amazon and WalMart have their own rewards program that is managed or powered by FLUENT; and/or d) they falsely imply that Amazon and WalMart endorse or otherwise approve of FLUENT's Marketing Partners' emailing services.  To the extent that FLUENT and its Marketing Partners intend that these From Names imply nothing more than FLUENT providing a reward (e.g. a gift card from Amazon or WalMart), the From Names are still false because, as discussed herein, no such gift cards are available to consumers just for taking the advertised surveys.

61.     Many of the spams include the From Name "UNEMPLOYMENT CHECK," which is false because the spams are not from UNEMPLOYMENT CHECK or the California Employment Development Department (or comparable government agencies in other states); FLUENT and its Marketing Partners are falsely claiming that they have governmental powers and that they know that the recipients are receiving unemployment compensation.

62.     These From Names, like those in *Balsam*, misrepresent *who* was advertising in the spams, and therefore violate Section 17529.5(a)(2).

63.     Plaintiffs are informed and believe and thereon allege that Defendants knowingly choose to advertise using generic From Names and unrelated third-parties' names precisely so the recipients will *not* know who the emails were really from when viewing the spams in the inbox view.  This forces recipients to open the emails to see if the emails might be from someone with

1  whom the recipient has had dealings (e.g. Amazon or Walmart), or if the emails are in fact, as is
2  the case here, nothing but spams from for-profit entities.
3  64.      In *Rosolowski v. Guthy-Renker LLC*, the court permitted From Names that were not the
4  sender's official corporate name when the identity of the sender was readily ascertainable in the
5  body.  230 Cal. App. 4th 1403, 1407, 1416 (2d Dist. 2014).  However, the From Names in that
6  case (Proactiv and Wen Hair Care) were the advertiser's fanciful trademarks and well-known
7  brands with their own websites.  But here, unlike the spams in *Rosolowski,* almost all of the
8  From Names are generic or false; they are not well-known trademarks and/or brands readily
9  associated with Defendants.  There is no way an ordinary consumer, looking at the emails in
10 his/her inbox, could readily associate them with Defendants.
11 65.      Moreover, in many of the spams at issue, the sender is not identified in the body of the
12 spams, so *Balsam* would control, not *Rosolowski*.
13 66.      Even where a spam purports to identify the sender in the body, using that information
14 alone as described in *Rosolowski*, an ordinary consumer can still never be sure that the
15 information is true, because spammers can and often do make false claims.  For example, a
16 "phishing" spam might appear to come from Bank of America, even including BofA's logo and
17 address in the body of the spam, although the spam was not in fact sent from BofA.  *See e.g.*
18 Federal Trade Commission, *Phishing*, https://www. consumer.ftc.gov/articles/0003-phishing.  As
19 another example, in 2017 the Federal Trade Commission sued Daniel Croft for unlawful
20 spamming.  Press Release, FTC Halts Imposter Scheme that Falsely Claimed Connection to the
21 Agency (Apr. 11, 2017), *available at https://www.ftc.gov/news-events/press-releases/2017/04/*
22 *ftc-halts-imposter-scheme-falsely-claimed-connection-agency.*  Among other false and
23 misleading representations, the body of the spams led consumers to believe that certain other
24 parties had been shut down by the FTC for putting spyware on their computers, that Croft was
25 affiliated with the FTC, and that the FTC had appointed Croft to contact consumers to inform
26 them of the lawsuit and to remove the spyware from their computers.  *FTC v. Daniel L. Croft*,
27 No. 9:17-cv-80425 (S.D. Fl. filed Apr. 3, 2017), complaint at ¶¶ 22-28 (Docket #1).  *Rosolowski*
28 appears to inherently assume that whatever appears on the face of a spam must be true.  But that
29 assumption is wrong.  *See e.g.* Cal. Business & Professions Code § 17529.1(i) ("Many spammers
30 have become so adept at masking their tracks that they are rarely found") and (j) ("actual
31 spammers can be difficult to track down due to some return addresses that show up on the

display as 'unknown' and many others being obvious fakes").  As shown by the above examples, an ordinary consumer can never ascertain the true identity of the sender of a spam simply by looking at the body of the email, so *Rosolowski* is illogical, irrelevant, and inapplicable.

67.     In some instances, the purported sender is misidentified in the body of the spams. Specifically, the purported sender is an "untraceable" entity under *Balsam*.  So, even after opening the spam, the recipient does not know who actually sent it.  For example, JOBE received a spam from the domain name apdantag.net, which is registered to "Anglo Iditech."  The body also states that it was sent by "Anglo Iditech."  Plaintiffs are informed and believe and thereon allege that there is no way for an ordinary consumer to identify Experions.com LLC as the entity who actually advertised in and sent the spam, and in fact Plaintiffs did not learn Experions.com LLC's identity until FLUENT revealed it in court documents.  This is because Experions.com LLC uses boxes at commercial mail receiving agencies as its addresses and it is not registered with the many Secretaries of State (or their equivalent) in the states where it has boxes; nor does it register its dozens of fictitious business names like "Anglo Iditech."  Therefore, the "identification" of the sender in the body of the email is merely another misrepresentation as to who sent the spam, because "Anglo Iditech" and the other unregistered fictitious business names are all meaningless.  In those instances, the only way a recipient could even attempt to identify the Marketing Partner responsible for the spam is to click on a link contained in the spam or search the source code of the email – both of which require opening the email first – in direct violation of *Balsam*.

**C.   Spams Sent From Domain Names Registered So As to Not Be Readily Traceable to the Sender Violate Cal. Business & Professions Code § 17529.5(a)(2)**

68.     Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information contained in or accompanying in email headers.

69.     Registration information for the domain names used to send spams is information contained in or accompanying email headers.

70.     "[H]eader information in a commercial e-mail is falsified or misrepresented for purposes of section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS."  *Balsam*, 203 Cal. App. 4th at 1101 (emphasis in original).

71.     Many of the spams that Plaintiffs received advertising Defendants were sent from domain names that:

- Did not identify Defendants or the sender on their face, or
- Were "proxy" registered, or
- Were registered to nonexistent entities (corporations, LLC's, individuals, etc.) so as to not be readily traceable to the sender by querying the Whois database,

in violation of Section 17529.5. *Balsam,* 203 Cal. App. 4th at 1097-1101. For example:

72.     BLANCHARD received a spam advertising FLUENT's products and services from the domain name betharnholder.com. That domain name was proxy-registered when the spam was sent. The *Balsam* court held that sending a spam from a domain name that is proxy-registered is a misrepresentation as to *who* the sender actually is. The *Balsam* court held that such proxy-registration is a violation of section 17529.5. At least 167 of the spams at issue in this Action – 12% of the total – were sent from proxy-registered domain names. In those instances, the only way a recipient could even attempt to identify the Marketing Partner responsible for the spam is to click on a link contained in the spam or search the source code of the email – both of which require opening the email first – in direct violation of *Balsam*.

73.     MARQUEZ received at least two spams purportedly sent from the domain name mail.com; more precisely, FLUENT or its Marketing Partners forged the headers to it appear that MARQUEZ sent the spams from her own email address maria.marquez@mail.com to herself. Thus, the purported sending domain name did not identify any Defendant.

74.     For most of the spams at issue, Plaintiffs could not identify FLUENT's Marketing Partner by querying the Whois database. In those instances, the only way a recipient could even attempt to identify the Marketing Partner responsible for the spam is to click on a link contained in the spam or search the source code of the email – both of which require opening the email first – in direct violation of *Balsam*.

75.     Some of the spams at issue had headers that were falsified or manipulated so as to prevent the sending email address or sending domain name from appearing in the spams at all. Thus, there was no information at all about the sending domain name that Plaintiffs could use to query the Whois database. In those instances, the only way a recipient could even attempt to identify the Marketing Partner responsible for the spam is to click on a link contained in the spam or search the source code of the email – both of which require opening the email first – in direct violation of *Balsam*.

**D.   Spams With False and Misrepresented Subject Lines Violate Cal. Business & Professions Code § 17529.5(a)(2)**

76.      Section 17529.5(a)(2) prohibits falsified, misrepresented, or forged information in email headers.

77.      The Subject Line is part of email headers.

78.      Many of the spams that Plaintiffs received contain Subject Lines with falsified and/or misrepresented information.  Plaintiffs allege that these Subject Lines are *absolutely* false and/or misrepresented and violate Section 17529.5(a)(2), as opposed to misleading *relative* to the contents/body of the spams, which would be a violation of Section 17529.5(a)(3).

79.      Example of falsified/misrepresented Subject Lines include:

- "Being Cleared: $350 Check" is false because no such check exists.
- "You Won $100 From CVS Pharmacy" is false because the recipient, LAMA, did *not* win $100 from CVS Pharmacy.
- "Congratulations, Here's Your $1,000 Walmart Gift Card" is false because there was no Walmart gift card.
- "Chandra, claim your unemployment check" is false because FLUENT cannot issue or distribute unemployment checks; only the California Employment Development Department (or comparable government agencies in other states) can do that, if the person meets certain requirements.

**E.   Spams With Subject Lines Misleading Relative to the Contents of the Spams Violate Cal. Business & Professions Code § 17529.5(a)(3)**

80.      Section 17529.5(a)(3) prohibits Subject Lines that are misleading relative to the contents or subject matter of the emails.

81.      Some of the spams that Plaintiffs received contain Subject Lines misleading relative to the contents of subject matter of the emails, which violate Section 17529.5(a)(3).

82.      Examples of misleading Subject Lines include:

- "Get A $100 Walmart Gift Card Free!" is misleading because the body says, "Get a $100 Walmart Gift Card . . . upon completion of purchase requirements."  So, the Subject Line would lead the recipient to believe a free gift card is available, which is belied by the body disclosing that there is no free gift card available.
- "Ogen, Your Name Was Drawn April 6th For A Kohl's Gift Card" is misleading because it implies that there is a Kohl's gift card available for LAMA, but the

body says ". . . enter your zip for availability  . . . " implying that there is *not* a Kohl's gift card available and that LAMA's name could not have been drawn because the body admits that it is questionable whether he is even eligible to receive the gift card, based on his ZIP code.

- "Get a $100 McDonalds Gift Card!" is misleading because the body says "*Get a $50* McDonald's Gift Card\*!" (emphasis in original).

- "You *Won* $100 From CVS Pharmacy" [emphasis added] is misleading because the body says that "participation [is] required" to get the gift card.

- "Open Immediately" is misleading because it does not communicate that the body claims that the recipient can get a Samsung S7 Edge cell phone by taking FLUENT's surveys.

**F.   Spams Containing a Third Party's Domain Name Without Permission Violate Cal. Business & Professions Code § 17529.5(a)(1)**

83.      Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

84.      Plaintiffs are informed and believe and thereon allege that at least 247 of the spams at issue in this Action – 18% of the total – contain third parties' domain names without permission of the third parties.  These domain names include: 1800petmeds.com, adidas.com, agroverdad.com.ar, amazon.co.uk, amazon.de, amazonaws.com, asiandate.com, autosolutionprograms.com, bartonpublishing.com, bobbyowsinski.com, booksontheknob.org, burlingtonstores.com, chron.com, clubmed.com, dazeddigital.com, dell.com, discovery.com, ebates.ca, ebates.com, ebay.com, elle.de, emsc.net, epik.com, eslite.com, fatwallet.com, filesleya.com, france-discount.fr, francetvinfo.fr, free.fr, fruition.net, Github.com, gmail.com, google.com, houzz.com, iranfile.ir, lancome.com, leboncoin.fr, legislatiamuncii.ro, lifestyleshield.com, macys.com, mail.com, meetic.com, mi-horoscopo-del-dia.com, mondaydress.com, monsoon.co.uk, myplaycity.com, Ndtv.com, nero-us.com, nero-emea.com, nestle.com, nfl.com, nissanusa.com, nytimes.com, olivegarden.com, osh.com, pfizer.com, portalcodulmuncii.ro, resortvitalityplus.com, reviewjournal.com, rootsweb.com, sephora.com, shopbonton.com, silpada.com, strawberrynet.com, thelomographer.com, thermaltake.com, thewinesociety.com, Tmall.com, toysrus.com, walgreens.com, wearn.com, windowsphone.com, yahoo.com, yourexotictravelguide.com.

85.     Such unauthorized use of third parties' domain names is materially false and deceptive. There can be no dispute that these spams were *not* sent from eBay, The New York Times Company, etc.  Plaintiffs are informed and believe and thereon allege that FLUENT and/or its Marketing Partners forged the Sender Email Addresses to include domain names belonging to legitimate third-party businesses in order to:

- Falsely lend an air of legitimacy to the spams by leveraging the brand equity of legitimate advertisers, making the recipients believe that eBay, The New York Times Company, etc. endorse FLUENT, and

- Trick spam filters as to the source of the spams.  If FLUENT and its Marketing Partners used their *own* domain names, it would be more likely that spam filters would be able to automatically identify the domain names as being associated with spammers, and block the spams.  On the other hand, emails purportedly sent by *ebay.com*, *nytimes.com*, etc. are more likely to be treated as legitimate emails and not spams.

86.     In those instances, the only way a recipient could even attempt to identify the Marketing Partner responsible for the spam is to click on a link contained in the spam or search the source code of the email – both of which require opening the email first – in direct violation of *Balsam*.

87.     Furthermore, assuming that these spams were *not* actually sent from the domain names that appear in the Sender Email Addresses, which Plaintiffs are informed and believe and thereon allege to be the case, then the spams also contained falsified and forged information, which violates Section 17529.5(a)(2).  For example, MARQUEZ received at least two spams advertising FLUENT and its Marketing Partners, supposedly sent *from* MARQUEZ's own email address maria.marquez@mail.com.  Thus, the domain name mail.com appears in the spams without permission from 1&1 Mail & Media Inc. (the email service provider) or MARQUEZ (the authorized user).  In those instances, the only way a recipient could even attempt to identify the Marketing Partner responsible for the spam is to click on a link contained in the spam or search the source code of the email – both of which require opening the email first – in direct violation of *Balsam*.

**G.  FLUENT is Strictly Liable for Spams Regardless of Who Sent Them; FLUENT's Marketing Partners are Also Liable on the Basis of Civil Conspiracy**

88.      FLUENT is strictly liable for advertising in the spams at issue even if third parties hit the Send button.  Cal. Bus. & Prof. Code § 17529(j), (k); *Hypertouch Inc. v. ValueClick Inc. et al* 192 Cal. App. 4th 805, 820-21 (2d Dist. 2011).

89.      Plaintiffs are informed and believe and thereon allege that no one forced FLUENT to outsource any of its advertising to third party spam networks and spammers, but FLUENT chose to contract with and partner with them (the Marketing Partners) to advertise its websites for the purpose of selling FLUENT's products and services for a profit.

90.      Plaintiffs are informed and believe and thereon allege that FLUENT and its Marketing Partners agreed to share the benefits and the risks of the marketing venture.

91.      Plaintiffs are informed and believe and thereon allege that FLUENT and its Marketing Partners formed a conspiracy to advertise FLUENT's websites and FLUENT's Marketing Partners' email advertising services by virtue of signing the Marketing Contracts.  Defendants operated the conspiracy by sending and advertising in spams pursuant to the Marketing Contracts.  Defendants committed wrongful acts pursuant to the conspiracy by advertising in unlawful spams, and Plaintiffs were damaged by receiving those unlawful spams.

92.      Plaintiffs are informed and believe and thereon allege that FLUENT may have provided some of the content (e.g. Subject Lines) to its Marketing Partners, and FLUENT and its Marketing Partners explicitly or tacitly agreed to use such content to send and advertise in unlawful spams, and FLUENT's Marketing Partners directed themselves towards those wrongful goals by using that content in the spams that were sent.  But, to the extent that FLUENT's Marketing Partners may have created certain false and misrepresented elements of the spams (e.g. forging headers so it appears that the spams came from discovery.com or nfl.com), FLUENT's Marketing Partners must be held liable for violations of Section 17529.5 because such wrongful acts were committed in accordance with the general conspiracy to advertise FLUENT's websites and the Marketing Partners' services.

**H.  FLUENT'S Marketing Partners Also Advertised in the Spams, Making them Directly Liable Under the Statute**

93.      Many of the spams also contain the name of the Marketing Partner in the body of the email.  Plaintiffs are informed and believe and thereon allege that the Marketing Partners included their name in the emails, in part, to advertise their own services as email marketers.

94.     All of the spams contain hyperlinked "click-through" domain names owned and controlled by whatever Marketing Partner sent or was responsible for sending any particular spam.  Because the Marketing Partners' domain names appear in the source code of the spams, the Marketing Partners are advertising in the spams.  Plaintiffs are informed and believe and thereon allege that the Marketing Partners did this, in part, to advertise their own services as email marketers.

**I.   Plaintiffs Sue for Statutory Liquidated Damages; No Proof of Reliance or Actual Damages is Necessary**

95.     The California Legislature defined liquidated damages to be $1,000 per spam.  Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

96.     Plaintiffs are informed and believe and thereon allege that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Cal. Business & Professions Code § 17538.43(b).

97.     Plaintiffs' rightful and lawful demand for liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

98.     Section 17529.5 does not require Plaintiffs to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams.  *Recipients* of unlawful spam have standing to sue and recover liquidated damages.  Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

99.     However, Plaintiffs did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California email addresses.  Cal. Bus. & Prof. Code § 17529(d), (e), (g), (h).  Regardless, Plaintiffs do not seek actual damages in this Action, only liquidated damages.  Cal. Bus. & Prof. Code § 17529.5(b)(1)(B).

**J.   Defendants' Actions Were Willful and Preclude any Reduction in Statutory Damages**

100.    Section 17529.5 authorizes this Court to reduce the statutory damages to $100 per spam.  Cal. Bus. & Prof. Code § 17529.5(b)(2).  But, to secure the reduction, Defendants have the burden of proof to demonstrate not only that they *established* practices and procedures to prevent unlawful spamming, but also that they *implemented* those practices and procedures, and that the practices and procedures are *effective*.

101.    Plaintiffs are informed and believe and thereon allege that Defendants have not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

102.    Even if Defendants had established any practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not reasonably designed so as to be effective.

103.    Even if Defendants reasonably designed practices and procedures to prevent advertising in unlawful spam, such practices and procedures were not implemented so as to be effective.

104.    Moreover, Plaintiffs are informed and believe and thereon allege that Defendants intended to deceive recipients of their spam messages through the use of falsified and/or misrepresented information in From Names, domain name registrations, and Subject Lines, and use of third parties' domain names without permission, as described herein.

105.    Subject Lines and From Names do not write themselves.  Domain names do not register themselves.  Third parties' domain names (e.g. nytimes.com) do not insert themselves into spams on their own.  The false and misrepresented information contained in and accompanying the email headers are not "clerical errors."  Plaintiffs are informed and believe and thereon allege that Defendants went to great lengths to create falsified and misrepresented information contained in and accompanying the email headers in order to deceive recipients, Internet Service Providers, and spam filters.

106.    Plaintiffs are informed and believe and thereon allege that Defendants intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.


**FIRST CAUSE OF ACTION**

**[Violations of California Restrictions on Unsolicited Commercial Email,
California Business & Professions Code § 17529.5]
(Against All Defendants)**

107.    Plaintiffs hereby incorporate the foregoing paragraphs as though set forth in full herein.

108.    Plaintiffs named in the original Complaint (BLANCHARD, JOBE, KOTTONG, LAMA, POWERS) received all of the spams at issue within one year prior to filing the Complaint. Plaintiffs added to the First Amended Complaint (COOPER, DAVIS, GREENBERGC,

1  MARQUEZ, TAYLOR) received all of the spams at issue within one year prior to filing the First

2  Amended Complaint.  Plaintiff SEGAL, added to the Second Amended Complaint, received all

3  of the spams at issue within one year prior to filing the Motion for Leave to Amend the First

4  Amended Complaint and to file the Second Amended Complaint.

5  109.    Defendants advertised in, assisted others in advertising in, conspired to advertise in,

6  and/or contracted with others to advertise in at least 1,349 unsolicited commercial email

7  advertisements to Plaintiffs' California electronic mail addresses that had materially falsified

8  and/or misrepresented information contained in or accompanying the email headers, contained

9  Subject Lines that were misleading in relation to the bodies of the emails, and/or contained third

10  parties' domain names without permission, in violation of Section 17529.5.  The unlawful

11  elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

12  110.    The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per

13  email.

14  111.    Defendants have not established and implemented, with due care, practices and

15  procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that

16  would entitle them to a reduction in statutory damages.

17  112.    Plaintiffs seek reimbursement of attorneys' fees and costs as authorized by Section

18  17529.5(b)(1)(C).

19  113.    The attorneys' fees provision for a prevailing spam recipient is typical of consumer

20  protection statutes and supported by Cal. Code of Civil Procedure § 1021.5.  By prosecuting this

21  action, Plaintiffs expect to enforce an important right affecting the public interest and thereby

22  confer a significant benefit on the general public or a large class of persons.  The necessity and

23  financial burden of private enforcement is such as to make the award appropriate, and the

24  attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

25

26  WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

27

28  **PRAYER FOR RELIEF**

29  **(Against All Defendants)**

30  A.    An Order from this Court declaring that Defendants violated California Business &

31        Professions Code § 17529.5 by advertising in unlawful spams.

---

**27**
**THIRD AMENDED COMPLAINT**

B.   Liquidated damages against Defendants in the amount of $1,000 for each of at least 1,349 unlawful spams, as authorized by Section 17529.5(b)(1)(B)(ii), for a total of at least $1,349,000 (subject to reduction by any settlements with third parties), as set forth below:

| PLAINTIFF | DAMAGES SOUGHT | PLAINTIFF | DAMAGES SOUGHT |
|-----------|----------------|-----------|----------------|
| BLANCHARD | $66,000 | LAMA | $149,000 |
| COOPER | $120,000 | MARQUEZ | $200,000 |
| DAVIS | $217,000 | POWERS | $170,000 |
| GREENBERG | $91,000 | SEGAL | $149,000 |
| JOBE | $64,000 | TAYLOR | $13,000 |
| KOTTONG | $110,000 | **TOTAL** | **$1,349,000** |

C.   Liquidated damages against each of the FLUENT entities, jointly and severally, in the amount of $1,000 for each of 1,349 unlawful spams ($1,349,000) that they advertised in that Plaintiffs received, according to proof.

D.   Liquidated damages against each DOE 1-1,000 (when their true names are learned and they are added to the Action), jointly and severally with FLUENT, in the amount of $1,000 for each of the unlawful spams it advertised in and/or conspired to advertise in that Plaintiffs received, according to proof.

E.   Attorneys' fees as authorized by Section 17529.5(b)(1)(C) and Cal. Code of Civil Procedure § 1021.5 for violations of Section 17529.5.

F.   Costs of suit.

G.   Such other and further relief as the Court deems proper.

THE LAW OFFICES OF DANIEL BALSAM

Date:_____April 26, 2018_____   BY:___/s/ Daniel L. Balsam___

DANIEL BALSAM
Attorneys for Plaintiffs

Exhibit E

1   William G. Silverstein
2   3550 Wilshire Blvd. Suite 809
    Los Angeles, CA 90005
3   (213) 612-7773
        Plaintiff in pro per.

**FILED**
Superior Court of California
County of Los Angeles

**APR 02 2018**

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
    Shaunya Bolden

4
5
6
7
8           CALIFORNIA SUPERIOR COURT
                COUNTY OF LOS ANGELES
9         CENTRAL DISTRICT  - UNLIMITED CIVIL

10  William G. Silverstein,            CASE NO.: BC 7 0 0 3 6 0
                      Plaintiff,
11                                     **VERIFIED COMPLAINT FOR DAMAGES AND**
    vs.                                **INJUNCTIVE RELIEF**
12
13  KEYNETICS INC., CLICK SALES        1.  Violations of Business and Professions Code §
    INC., and DOES 1-50 inclusive;         17529.5(a)(1)
14                    Defendants,      2.  Violations of Business and Professions Code §
                                           17529.5(a)(2)
15
16                                     **JURY TRIAL DEMANDED**
17
                       **NATURE OF THE ACTION**
18
            1.  This action arises out of Keynetics Inc. and Click Sales Inc. advertising in 71
19
    unlawful Unsolicited Commercial Emails ("spams") that violate Section 17529.5 of the
20
    California Business & Professions Code which were transmitted to Plaintiff between
21
    November 22, 2018 and March 29, 2018. Keynetics and Click Sales work together for
22
    mutual profit. Keynetics Inc. and Click Sales Inc. are hereinafter referred to as "Keynetics."
23
            2.  Plaintiff is informed and believes and thereon alleges that Keynetics owns and
24
    operates Clickbank, an online store and a pay-per-sale affiliate program.  Plaintiff is
25
    informed and believes and thereon alleges that Keynetics engages numerous third party
26
    affiliates (also known as "publishers") to advertise for it.  Plaintiff is informed and believes
27
    and thereon alleges that some of these affiliates send millions of unwanted and unlawful
    commercial email messages to recipients that did not give consent to receive them.  Those
28
    affiliates/publishers are hereinafter referred to as "senders." Many of the emails contain from



CIT/CASE:  BC700360
LEA/DEF#:

RECEIPT #: CCH465980101
DATE PAID: 04/02/18  12:2
PAYMENT:  $435.00
RECEIVED:
          CHECK:
          CASH:
          CHANGE:
          CARD:

1    lines which include false sender names information that deceive recipients about the sender

2    of the e-mails about the identity of the sender and domain names that are used without the

3    domain owner's permission. Keynetics is strictly liable for the actions of its affiliates.

4        3.   Plaintiff William Silverstein brings this action to recover statutory liquidated

5    damages for the 71 e-mails which advertise e-books which are sold by Keynetics though its

6    web site.

7        4.   Upon information and believe, Defendants intentionally used the names of

8    celebrities in the from lines of the complained of e-mails to trick the recipients into opening

9    and trusting the complained of e-mails.

10                                **PARTIES**

11       5.   Plaintiff WILLIAM SILVERSTEIN is an individual operating as a sole

12   proprietor under the laws of the State of California and qualified and doing business under

13   his own name with a principal place of business in Los Angeles, California. Plaintiff

14   provides registered users the ability to send or receive electronic mail through equipment

15   located in the State of California, and operates equipment that acts as an intermediary in

16   sending and receiving electronic mail.

17       6.   Plaintiff owns, leases, and maintains computers and other equipment that process

18   electronic mail messages and which allow for exchange of electronic mail messages by

19   registered users with others.

20       7.   Plaintiff is an "electronic mail service provider" as defined by California

21   Business and Professions Code § 17529.1(h).

22       8.   Plaintiff's e-mail addresses are California e-mail addresses as defined by

23   California Business and Professions Code § 17529.1(b).

24       9.   Plaintiff is a professional software developer with over thirty-five years of

25   experience.

26       10. Plaintiff has professional experience writing electronic mail client and server

27   programs as well as other internet software.

28       11. Plaintiff has operated web sites and Internet accessible bulletin boards for more

     than twenty-five years.

         12. Plaintiff is informed and believes and thereon alleges that Defendant Keynetics,

Inc. is, and was at all relevant times, a Delaware corporation headquartered in Boise, Idaho.

13. Plaintiff is informed and believes and thereon alleges that Defendant Click Sales Inc. is a Delaware Corporation headquartered at the same location as Defendant Keynetics, Inc. and is a wholly owned subsidiary of Keynetics, Inc.

14. Plaintiff is ignorant of the true names and capacity of Defendants sued herein as DOES 1-50, inclusive, and therefore sues those Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

15. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences complained of herein. Plaintiff is informed and believes and thereon alleges that these occurrences are the proximate cause of damages to Plaintiff.

16. Plaintiff is informed and believes and thereupon alleges that at all times relevant, the herein DOE Defendants were the agents, servants, employees, and the co-conspirators of the named Defendants and all Defendants are doing the things hereinafter mentioned were acting within the course and scope of their authority as such agents, servants, and employees with the permission, consent, and encouragement of their co-Defendants.

## JURISDICTION AND VENUE

17. Plaintiff brings this action pursuant to Section 17529.5 of the California Business and Professions Code.

18. The harm occurred within the jurisdiction of this Court as the email messages complained of herein were received by Plaintiff in Los Angeles, California.

19. The harm occurred within the jurisdiction of this Court as the emails complained of herein were unlawfully relayed through Plaintiff's servers located in Los Angeles County.

## FACTS COMMON TO ALL CLAIMS

20. Plaintiff is complaining of 71 e-mails that were transmitted to Plaintiff between November 22, 2018 and March 29, 2018. A summary of those e-mails are attached hereto.

21. Pursuant to Cal. Bus. & Prof. Code § 17529.1(m), Plaintiff is a "recipient" of unsolicited commercial email advertisements initiated by Defendants.

VERIFIED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

22. Each of the complained of e-mails were processed by Plaintiff's server.

23. Plaintiff never gave consent to any of the Defendants in this lawsuit to send commercial advertising to Plaintiff.

24. Each of these e-mails contained a link which would eventually lead to Defendants' web sites to allow the recipient to make a purchase. However, the links in the e-mail make no reference to any of the defendants in this lawsuit.

25. The definition of e-mail headers is set forth in Request For Comments 5322 ("RFC") , a publication of the Internet Engineering Task Force (IETF) and the Internet Society, the principal technical development and standards-setting bodies for the Internet. RFC 5322 sets forth the definition of email headers so that email will function on the Internet.

26. The *"From Line"* of an e-mail is a part of the e-mail header.

27. The *"From Line"* of an e-mail identifies the sender of the e-mail.

28. This complaint uses the term *"From Display-Name"* to be consistent with RFC 5322 for the parts of the *"From Line"* of the e-mail header. The *From Display-Name* is also sometimes commonly referred as the *From Name, Display Name, Quoted From Name*, and *Friendly From Name*. As an example, if an email's *From Line* says: "John Doe <johndoe@yahoo.com>" then the *Display-Name* is "John Doe" and the *From Address* would be johndoe@yahoo.com. Here domain name is "yahoo.com."

29. The From Address is the e-mail address used to contact the sender of the e-mail pursuant to RFC 5322 Section 3.6.2.

30. "WHOIS" is the method to determine the owner of the domain name. Technically, WHOIS is not the database, itself, but a protocol for submitting a query to a database in order to find contact information for the owner of a domain name. Solid Host, NL v. Namecheap, Inc. (C.D. Cal. 2009) 652 F.Supp.2d 1092, 1095 fn 3.

31. Simply put, the WHOIS information indicates the owner of the domain name, similar to the name on an auto vehicle registration or the name on a property deed.

32. The domain names davidcanterburys.com, lesstrouds.com, raymear.com, and mikelhawke.com utilize the domain name proxy service Whois Privacy Corp. based in New Providence, Bahamas.

33. Sixteen (16) of the e-mails have a Display-Name of "David Canterburys."

VERIFIED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

34. These sixteen e-mails having the Display-Name of "David Canterburys" utilize the domain name davidcanterburys.com.

35. Plaintiff is informed and believes, and therefore alleges that David Canterbury is a well known survival expert who starred on the Discovery Channel.

36. Nineteen (19) of the e-mails have a Display-Name of "Les Strouds."

37. These nineteen e-mails having the Display-Name of "Les Strouds" utilize the domain name lesstrouds.com.

38. Plaintiff is informed and believes, and therefore alleges that Les Stroud is a well known Canadian survival expert, that has hosted the television series Survivorman and several Discovery Channel shows, including *"Shark Week."*

39. Twenty-three (23) of the e-mails have a Display-Name of "Mikel Hawke."

40. These twenty-three e-mails having the Display-Name of "Mikel Hawke" utilize the domain name mikelhawke.com.

41. Plaintiff is informed and believes, and therefore alleges that Mykel Hawke is a survival expert who produced several tv series for the Discovery Channel. Hawke also starred in several television shows including "Big Brother," "Man, Woman, Wild," "The Men Who Built America: Frontiersmen," and "Valor."

42. Thirteen (13) of the e-mails have a Display-Name of "Ray Mear."

43. These thirteen e-mails that have a Display-Name of "Ray Mear" utilize the domain name raymear.com.

44. Plaintiff is informed and believes, and therefore alleges that Ray Mear is a British survival expert who produced and in starred in several TV series, including "Ray Mears' World of Survival," "Wild Britain with Ray Mears," and "The Wright Stuff."

45. Plaintiff is informed and believes, and therefore alleges that each of the e-mails were transmitted by the same person, who is identified to Defendant Keynetics as *"gmarket7,"* not the four well known survivalists identified in the complained of e-mails.

VERIFIED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

**FIRST CAUSE OF ACTION**

(VIOLATION OF CAL. BUSINESS AND PROFESSIONS CODE § 17529.5(a)(1))

(Against All Defendants)

46. Plaintiff hereby incorporates by reference paragraphs 1 through 45, inclusive, as if the same were fully set forth herein.

47. All the Whois information of the domain names utilized in the complained of e-mails indicate that the owner of the domain names is Whois Privacy Corp.

48. Plaintiff is informed and believes, and therefore alleges that the domain names utilized in the complained of e-mails were used in the complained of e-mails without authorization by Whois Privacy Corp.

49. Plaintiff is informed and believes, and therefore alleges that each of the complained of e-mails contain a third-party's domain name without the permission of the third party in violation of Cal. Bus. & Prof. Code § 17529.5(a)(1).

50. The use of these domain names falsely imply that this third party is either is responsible for or endorsing the e-mails.

51. Plaintiff suffered damages as a result of Defendants' wrongful conduct.

WHEREFORE, Plaintiff prays for judgment against all Defendants herein for damages as set forth in the Prayer for relief.

**SECOND CAUSE OF ACTION**

(VIOLATION OF CAL. BUSINESS AND PROFESSIONS CODE § 17529.5(a)(2))

(Against All Defendants)

52. Plaintiff hereby incorporates by reference paragraphs 1 through 45, inclusive, as if the same were fully set forth herein.

53. Plaintiff is informed and believes, and therefore alleges that the From Line of the complained of e-mails do not identify the advertiser who was advertised in the e-mail.

54. Plaintiff is informed and believes, and therefore alleges that the From Line of the complained of e-mails do not identify the sender of the e-mail.

55. Plaintiff is informed and believes, and therefore alleges that there is no way that a typical recipient can identify the sender of the complained of e-mails from the e-mail.

56. Plaintiff is informed and believes, and therefore alleges that there is no way that a

-6-

VERIFIED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

1   typical recipient can identify the advertiser of the complained of e-mails from the e-mail.

2   57. Plaintiff is informed and believes, and therefore alleges that From Display-

3   Names in the complained of e-mails falsely identify people that were not involved in the

4   transmission of the complained of e-mails.

5   58. Plaintiff is informed and believes, and therefore alleges that domain names used

6   in the From Lines of the complained of e-mails do not identify the sender, but instead is a

7   domain name proxy service who has no involvement with the sending of the complained of

8   e-mails.

9   59. Plaintiff is informed and believes, and therefore alleges that domain names used

10   in the From Lines of the complained of e-mails have Whois information that does not

11   identify the sender.

12   60. Plaintiff is informed and believes, and therefore alleges that domain names used

13   in the From Lines of the complained of e-mails have Whois information that does not

14   identify the advertiser.

15   61. Plaintiff is informed and believes, and therefore alleges that From Display-

16   Names of the complained of e-mails falsely identify people who have no involvement with

17   the complained of e-mails.

18   62. Plaintiff is informed and believes that Defendants inserted falsified Whois

19   information for all the domain names utilized in the complained of e-mails.

20   63. Plaintiff is informed and believes, and therefore alleges that the header of the

21   each of the complained of e-mails contain domain names which were obtained by means of

22   false or fraudulent pretenses which render the e-mail headers materially falsified as a matter

23   of law. 15 U.S.C. § 7704(a)(1)(A).

24   64. Plaintiff is informed and believes, and therefore alleges that each of the

25   complained of e-mails contain materially deceptive headers in violation of Cal. Bus. & Prof.

26   Code § 17529.5(a)(2).

27   65. Plaintiff suffered damages as a result of Defendants' wrongful conduct.

28   WHEREFORE, Plaintiff prays for judgment against all Defendants herein for damages as

set forth in the Prayer for relief.

VERIFIED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

1
### PRAYER FOR RELIEF

2        WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them as

3    follows:

4    A.    Statutory damages, under Cal. Bus. & Prof. Code § 17529.5 of $1,000 each for the

5          spam e-mails transmitted by Defendants to Plaintiff or Plaintiff's servers;

6    B.    General damages in an amount to be determined at trial;

     C.    Attorney's fees and costs as allowed by law; and
7
     D.    For such other and further relief as the Court may deem just and proper.
8

9    Dated:        March 29, 2018

10                                                           Respectfully Submitted ,

11

12                                                           

13                                                           William G. Silverstein

14
### VERIFICATION
15
The undersigned, for himself, declares:
16

17   I am Plaintiff in the above-entitled action. I have read the foregoing complaint and know the

18   contents thereof. With respect the causes of action alleged by me, the same is true of my

19   own knowledge, except as those matters which are therein stated on information and belief,

20   and, to those matters, I believe them to be true.

21   I declare under the penalty of perjury under the laws of the State of California that the

22   forgoing is true and correct to the best of my knowledge.

23
24   Dated:        March 29, 2018

25
                                                             
26
                                                             William G. Silverstein
27

28

VERIFIED COMPLAINT FOR
                                                 DAMAGES AND INJUNCTIVE RELIEF