SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
JAY T. RAMSEY, Cal. Bar No. 273160
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:    310.228.3700
Facsimile:    310.228.3701
jramsey@sheppardmullin.com

KLEIN MOYNIHAN TURCO LLP
NEIL E. ASNEN (*pro hac vice to be filed*)
450 Seventh Avenue, 40th Floor
New York, New York 10123
Telephone:    212-246-0900
Facsimile:    212-216-9559
nasnen@kleinmoynihan.com

Attorneys for Defendant
DIGITAL MEDIA SOLUTIONS LLC
DIGITAL MEDIA SOLUTIONS LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA GREENBERG, an individual, JOHN JUDGE, an individual, KAREN MANDEL, an individual, ANDREW MONROE, an individual, and KATIE VAN CLEAVE an individual;<br><br>Plaintiffs,<br><br>v.<br><br>DIGITAL MEDIA SOLUTIONS LLC, a Delaware limited liability company, BILCO MEDIA INC., a business entity of unknown organization, ALLAN HUGHES, an individual, and DOES 1-100,<br><br>Defendants. | Case No.: 3:19-cv-355-VC<br><br>**DEFENDANT DIGITAL MEDIA SOLUTIONS, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Action Filed: December 12, 2018 |

Defendant Digital Media Solutions, LLC ("DMS") respectfully submits this Memorandum of Points and Authorities in opposition to Plaintiffs' motion for an order pursuant to 28 U.S.C. § 1447(c) to remand this action to California state court (the "Motion").

## I.  INTRODUCTION

Plaintiffs acknowledge that this matter was properly removed from the state court and that the Court has original diversity jurisdiction over their claims by virtue of the amount of damages sought under Plaintiffs claims under Cal. Bus. & Prof. Code § 17529.5 ("17529.5"). Notwithstanding this, Plaintiffs bring the instant Motion arguing that they purportedly lack Article III standing to assert claims for violation of 17529.5.  According to Plaintiffs, despite their alleged receipt of emails that purportedly contained both header information with fraudulent or materially misleading information and subject lines containing deceptive information likely to deceive them, and despite alleging in their Complaint that Defendants caused them injuries stemming from the receipt of such emails,[1] they suffered no injury in fact for purposes of Article III standing.

Plaintiffs' Motion rests on the faulty premise that the California Legislature, in enacting 17529.5, concluded that emails that violate the statute are merely an annoyance which do not otherwise implicate any protectable interest sufficient to satisfy standing requirements.  This is belied by the legislative findings enumerated at Cal. Bus. & Prof. Code § 17529(b), (d), (e) and (g), each of which do not limit the language used to describe the injury caused by such emails to mere annoyance.  To the contrary, the legislative findings provide a number of harms that the Legislature identified and was seeking to remedy.  Such findings include, but are not limited to, "increasing drain on corporate budgets," "threat to the continued usefulness of the most successful tool of the computer age," "lost productivity," "spam imposes a cost on users," and "it also causes many additional problems because it is easy and inexpensive to create, but difficult and costly to eliminate."  As such, it is apparent that the Legislature sought to codify a

---

[1] *See* ¶¶ 20, 55, 60

substantive right for users of email to be free of such prohibited commercial email given the variety of damages and harms that the Legislature determined arise from receipt of these emails.

Moreover, Plaintiffs would have the Court believe that while the emails in dispute are deceptive for the purposes of avoiding the express preemption of the CAN-SPAM Act, their being deceived by such emails is not a sufficient injury to confer Article III standing. Not only is being deceived sufficient to suffer a particularized injury, but Plaintiffs' pleading explicitly acknowledges it. To be sure, despite representing to the Court that they have not alleged an injury, Plaintiffs' Complaint demonstrates the opposite: At paragraphs 20 and 55, Plaintiffs' allege that "Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner **for causing the injuries and damages of which Plaintiffs complain**" and "Defendants committed wrongful acts pursuant to the conspiracy by advertising in unlawful spams, and **Plaintiffs were damaged by receiving those unlawful spams**." These allegations alone demonstrate that Plaintiffs have standing to bring the 17529.5 claims they have asserted.

Moreover, it is of no consequence that Plaintiffs have opted not to quantify the actual damages that they alleged to have suffered and have instead chosen to recover statutory damage. To be sure, the scenario in which plaintiffs choose to recover the more lucrative statutory penalties relative to their *de minimis* actual damages have routinely been permitted to proceed with their claims in federal court. *See e.g., Romero v. Dep't Stores Nat'l Bank*, 2018 U.S. App. LEXIS 5266 (9th Cir. Feb 28, 2018) (reversing district court's holding that *de minimis* irritation would not support Article III standing). Finally, and perhaps most importantly, the California Legislature specifically provided for inflated statutory damages as an alternative recovery for email recipients because it recognized that actual damages are likely to be small in the vast majority of suits involving allegations of violation of 17529.5 and in recognition of the fact that claimants seeking redress under 17529.5 may have difficulty proving actual damages, notwithstanding suffering them. *See* Assemb. Comm. on Judiciary, Analysis of S. Bill No. 186

(2003-2004 Reg. Sess.) as amended June 26, 2033 (providing statutory damages because "actual damages are likely to be small in many such suits").

Finally, to the extent that Plaintiffs submit argument relative to Defendant's pending Motion to Dismiss (Dkt. No. 9), any such argument should not be received by the Court and Defendant reserves its right to address those arguments within the context of the future briefing of that motion, as appropriate.

For the foregoing reasons, as detailed further below, Defendant respectfully requests that the Court deny Plaintiffs' Motion.

## II.  LEGAL STANDARD

Standing is an essential component of the case or controversy requirement of Article III, § 2 of the United States Constitution. *Am. Civil. Liberties Union of Nevada v. Lomax*, 471 F.3d 1010, 1015 (9th Cir. 2006) (internal quotation marks and citations omitted). "To satisfy Article III standing, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042 (9th Cir. 2017). "A plaintiff establishes injury in fact, if he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. (citing *Spokeo, Inc. v. Robbins*, 136 S. Ct 1540, 1548 (2016)). "To establish such an injury, the plaintiff must allege a statutory violation that caused him to suffer some harm that actually exists in the world; there must be an injury that is real and not abstract or merely procedural." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 982 (9th Cir. 2017).

## III.  ARGUMENT

### A.  The California Legislature Codified Substantive Rights by Enacting Cal. Bus. & Prof. Code § 17529

Plaintiffs allege that their statutory rights were violated as a result of their receipt of commercial email comprised of header information containing material misrepresentations and

subject lines containing falsified or deceptive information, against the prohibitions contained in 17529.5.

Oftentimes, in determining whether an intangible harm is sufficiently concrete for standing purposes, such as the intangible harm suffered here with respect to Plaintiffs' receipt of the subject commercial email, courts are tasked with the difficult assignment of analyzing both the history and judgment of the legislature. *See Eisenberger,* 876 F.3d at 982. Such a tortured and laborious analysis is not required as it relates to the intangible harms that may be borne by plaintiffs alleging violation of 17529.5, however. This is due to the fact that the state legislature specifically identified their legislative findings at Cal. Bus. & Prof. Code § 17529. Those findings demonstrate that the statute was enacted in order to codify a substantive right rather than to proscribe mere procedural protections.

Contrary to Plaintiffs' repeated assertions that the legislature merely referred to spam as annoying, the legislature actually went above and beyond in order to make plain that such email represented a far more insidious problem than a mere annoyance. In fact, subsection (b) of the statute states that "[t]he increase in spam is not only an annoyance but is also an increasing drain on corporate budgets and possibly a threat to the continued usefulness of the most successful tool of the computer age." The concern was repeated in subsection (h), in which an analogy was made between spam and junk mail, which the legislature found both "can be annoying and waste time, but it also causes many additional problems because it is inexpensive to create, but difficult and costly to eliminate." Other injuries to consumers, aside from annoyance, identified by the legislature in the findings can be found at subsections (d) and (e) of 17529 and include " lost productivity" and "additional equipment, software, and manpower to combat the problem," and other "cost[s] on users, using up valuable storage space in e-mail inboxes, as well as costly band width," costs on "networks and computer servers." Finally, the legislature found that "spam is responsible for virus proliferation that can cause tremendous damage both to individual computers and to business systems." Cal. Bus. & Prof. Code § 17529(l).

Through enactment of 17529.5, based upon the catalog of harms identified in connection with receipt of unsolicited commercial email, California's legislature sought to protect consumers against such harms and created a substantive right to not receive email containing materially misleading or fraudulent header information or deceptive subject lines. The legislature did not leave it a mystery as to the reason that it believed that such email required prohibition, it expressly identified the myriad harms in its legislative findings. Providing a private right of action, the legislature further reinforced these findings by permitting recipients of such email to seek recourse when their statutory right to be free of same had been violated.

### B.  Case Law Supports a Finding of Standing

Plaintiffs cite to two cases, *Soriano v. Lending Tree LLC et al.*, 3:17-cv-07078-MMC (Dkt. No. 31) and *Blanchard v. Fluent LLC et al.*, 2017 U.S. Dist. LEXIS 88415 (N.D. Cal. June 8, 2017), for the proposition that similar cases to the instant matter have been remanded upon like circumstances. However, both such cases were decided by the same judge, demonstrating a lack of judicial consensus on the whether 17529.5 claims must be remanded after being brought in federal court. Moreover, neither case is binding precedent on this Court.

By contrast, *Silverstein v. Keynetics, Inc. et al*. 2018 U.S. Dist. LEXIS 189114 (C.D. Cal. Nov. 5, 2018), although also not binding, offers the Court a much more persuasive guide with which to analyze standing issues pertaining to Plaintiffs' 17529.5 claims. *Silverstein* was decided subsequent to both *Soriano* and *Blanchard*. To this point, the *Silverstein* Court granted the request made by the plaintiff that judicial notice be taken of the *Blanchard* decision prior to ruling on the motion to remand pending before it in a case involving identical claims to those asserted by Plaintiffs. Notwithstanding taking judicial notice of the *Blanchard* ruling and its attempt to distinguish claims brought pursuant to 17529.5 to those brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), *Silverstein* ultimately determined that the 17529.5 claims had been properly removed by the defendant because plaintiffs' allegations that their statutory rights had been violated sufficiently demonstrated a concrete injury for purposes of establishing Article III standing. *Silverstein* implicitly rejected

the reasoning of *Blanchard*, which had reached the conclusion that receipt of a prohibited email fundamentally differs from receipt of a prohibit phone call, and that the latter is sufficient to confer Article III standing while seeking statutory liquidated damages while the former is not under identical circumstances.

*Silverstein's* reasoned conclusion that the substantive protections codified by 17529.5 closely resemble those substantive protections provided by the TCPA is correct and should be appropriately followed the Court. The parallels between the TCPA and 17529.5 are apparent. Both statutes prohibit the transmission of certain unsolicited communication. Both statutes provide aggrieved recipients of those unsolicited communication the option of recovering statutory liquidated damages or actual damages. In recognition that the actual damages incurred by virtue of receipt of the respective prohibited communication, both statutes established a level of statutory damages that do not otherwise correspond to the actual injury suffered by the person seeking redress in order to be punitive and to provide powerful disincentives in furtherance of the goal of achieving the policy goal of prohibition. Finally, both statutes represent the respective legislature's efforts to give statutory rights to consumers to pursue strict liability recourse against those that both directly transmit the prohibited communication as well as those entities whose goods or services are advertised in the prohibited communication. This is because both statutes also recognize the difficulty that consumers may have in determining the identity of the dialer, in the context of the TCPA, or the sender in the context of 17529.5. Finally, were the foregoing not enough, the legislative findings also make a direct tie to the TCPA, explicitly analogizing unwanted spam email to junk faxes prohibited by the TCPA while identifying the concrete intangible harm suffered by recipients of spam.

The Ninth Circuit in *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) undertook the standing analysis in the context of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA". *Van Patten* held that the TCPA establishes the substantive right to be free from certain types of phone calls and text messages and that plaintiffs allegation a violation of the TCPA need not allege any *additional* harm beyond the one that Congress had

identified in enacting the statute. *Silverstein* followed the *Van Patten* analysis in determining that, when combined with the legislative findings detailing the harms suffered by spam recipients, the close similarities between call recipients alleging TCPA claims and email recipients alleging 17529.5 mandate a like result for the purposes of establishing standing.

When examining whether recipients of prohibited phone calls possess the necessary Article III standing to bring claims asserting violation of the TCPA, courts nationwide have concluded that such claimants do have such standing, even in the absence of alleging any additional harm beyond receipt of an unsolicited phone call placed by an autodialer. *See also Booth v. Appstack, Inc.*, 2016 U.S. Dist. LEXIS 68886 (W.D. Wash. May 25, 2016) (alleged TCPA violations "required Plaintiffs to waste time answering or otherwise addressing widespread robocalls . . . such an injury is sufficiently concrete to confer standing.); *LaVigne v. First Cmty. Bancshares, Inc.*, 215 F.Supp. 3d 1138 , 1144 (D.N.M. Oct. 19, 2016) (finding a violation of the TCPA constitutes a "concrete" harm for an Article III injury-in-fact requirement, noting "the TCPA contains a congressionally-identified concrete injury in its language prohibiting certain kinds of telephone calls.). Given the close parallels between the TCPA and 17529.5, combined with the fact that the California Legislature, in its language prohibiting certain kinds of unsolicited commercial email identified concrete injuries suffered by spam recipients, there is little reason to deviate from the universal conclusion that receipt of statutorily-prohibited communication alone is sufficient to give rise to Article III standing. Accordingly, the Court should find that Plaintiffs have Article III standing and deny their motion to remand.

Finally, Plaintiffs' reliance on *Hypertouch v. ValueClick, Inc.*, 192 Cal. App. 4th 805 (2d Dist. 2011) for the notion that 17529.5's allowance of liquidated damages undermines their standing is misplaced. There, the Court analyzed whether the nature of liquidated damages under pursuant to 17529.5 rendered claims seeking such damages subject to the three-year statute of limitations provided by Code of Civil Procedure 338(a) or the one-year statute of limitations of Code of Civil Procedure § 340(a). That *Hypertouch* determined that 17529.5's liquidated

damages are penal in nature does not ultimately determinative of the absence of a concrete injury that aggrieved parties suffer when the statute is violated. Notably, the *Hypertouch* court did not undertake an analysis into whether alleging a substantive violation of 17529.5 sufficiently confers standing on the claimant. In fact, as noted above, the TCPA also includes the option for claimants to seek recovery of damages that are disproportionate to the harm suffered. *See* 47 U.S.C. 227(b)(3)(B) and (C) providing for recovery of $500 in statutory damages for each violation for $1,500 if the court finds a violation to be willful or knowing. As a result, the TCPA, like 17529.5, codifies the legislature's goal of including a remedial and disproportional recovery in order to address a public harm and to redress harms to individuals who are forced to absorb the costs that have been shifted onto them by email senders and/or call dialers. *See* Cal. Bus. & Prof. Code § 17529(e) and (h).

### IV. CONCLUSION

For the foregoing reasons, Defendant respectfully request that the Court find that Plaintiffs have Article III standing and deny their Motion to remand this matter accordingly.

Dated: March 5, 2019         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By         */s/ Jay T. Ramsey*
                JAY T. RAMSEY

KLEIN MOYNIHAN TURCO LLP
Neil Asnen (*pro hac vice* to be filed)

Attorneys for Defendants
DIGITAL MEDIA SOLUTIONS LLC